UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

STEVE KNOX                                                                      PETITIONER

V.                                              CIVIL ACTION NO. 5:13-CV-241-KHJ

BURL CAIN, et al.                                                          RESPONDENTS

ORDER

Before the Court is Petitioner Steve Knox's [62] Motion to Stay the

proceedings so that he may exhaust his state-court remedies on certain claims by

pursuing a third petition for post-conviction relief in the Mississippi Supreme

Court. For the following reasons, the Court denies the motion.

I.      Background

In September 1999, a jury convicted Knox of murdering Ella Mae Spears and

sentenced him to death. *Knox v. State ("Knox I")*, 805 So. 2d 527, 529 (Miss. 2002).

The Mississippi Supreme Court affirmed Knox's conviction and death sentence in

2002. *Id.* at 529, 534-35. The United States Supreme Court denied Knox's petition

for a writ of certiorari. *Knox v. Mississippi*, 536 U.S. 965 (2002).

In February 2003, Knox filed his first petition for post-conviction relief in the

Mississippi Supreme Court. Mot. Leave Proceed in Trial Ct. with Pet. Post-

Conviction Relief, *Knox v. State ("Knox II")*, No. 2002-DR-00912-SCT (Miss. Feb. 14,

2003). It denied the petition. *Knox II*, 901 So. 2d 1257, 1271 (Miss. 2005).

On June 9, 2005, Knox initiated this capital habeas case. He filed his initial [9] Petition on October 13, 2005. On March 19, 2013, the Court stayed the case pending the outcome of potentially relevant cases before the United States Supreme Court and the Mississippi Supreme Court. Order [44]. A few months later, the Court directed Knox to provide notice of whether he intended to raise claims of ineffective assistance of post-conviction counsel in the Mississippi Supreme Court pursuant to *Grayson v. State*, 118 So. 3d 118 (Miss. 2013). Order [45]. Knox responded affirmatively, and the Court ordered that the case remain stayed until the completion of Knox's successive post-conviction proceeding. Order [47].

On June 24, 2014, Knox sought leave to file a second post-conviction petition in the Mississippi Supreme Court. Mot. Leave to File Successive Pet. Post-Conviction Relief, *Knox v. State ("Knox III")*, No. 2014-DR-849-SCT (Miss. June 24, 2014). He eventually amended the motion, Am. Mot. Leave to File Successor Pet. Post-Conviction Relief, *Knox III*, No. 2014-DR-849-SCT (Miss. Nov. 14, 2018), and again nearly two years later, Second Am. Mot., *Knox III*, No. 2014-DR-849-SCT (Miss. July 10, 2020). The Mississippi Supreme Court denied the motion on March 10, 2022. En Banc Order, *Knox III*, No. 2014-DR-849-SCT (Miss. Mar. 10, 2022). It found the petition was barred pursuant to Miss. Code § 99-39-5(2)(b), *id.* at 2; as a successive writ pursuant to Miss. Code § 99-39-37(9), *id.*; by res judicata, *id.* at 2–3, and by Miss. Code §§ 99-39-21(2)-(3) because he could have presented the claims at trial or on direct appeal, *id.* at 3. It also found Knox had demonstrated no exception to those bars applied. *Id.*

On July 14, 2022, Knox notified the Court that his successive post-conviction proceeding had terminated. [52]. On September 13, 2022, the Court lifted the stay on the case, appointed habeas counsel, and entered a scheduling order. Order [56]. On March 20, 2023—over 23 years after Knox's conviction and just one year after the termination of his second post-conviction proceeding—Knox again moved to stay so that he can pursue a third post-conviction petition. Mot. Stay [62].

II.    Standard

One purpose of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1] "is to require prisoners first to exhaust state-court remedies before seeking federal relief . . . ." *Broadnax v. Lumpkin*, 987 F.3d 400, 406 (5th Cir. 2021); 28 U.S.C. § 2254(b)(1)(A). Accordingly, a federal habeas petitioner "must exhaust all claims in state court prior to requesting federal collateral relief." *Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Smith*, 515 F.3d at 400 (citation omitted).

Generally, district courts should dismiss "mixed petitions"—those that include both exhausted and unexhausted claims. *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012). But "because exhaustion is based on comity rather than jurisdiction, there is no absolute bar to federal consideration of unexhausted habeas

---

[1] AEDPA limits district courts' ability to grant habeas relief. *See* 28 U.S.C. § 2254. AEDPA was designed to "curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases," *Graham v. Johnson*, 168 F.3d 762, 764 (5th Cir. 1999), and to "further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

applications." *Id.* (citation omitted). A district court may deny an unexhausted claim on the merits even if the petitioner does not exhaust his state-court remedies. *Id.*

District courts also may stay a habeas case involving a mixed petition to allow the petitioner to present his unexhausted claims to the state court before he returns to federal court for review of the perfected petition. *See Rhines v. Weber*, 544 U.S. 269, 274–79 (2005). Such stays should only be available in "limited circumstances" involving the petitioner's "good cause for [his] failure to exhaust his claims first in state court." *Id.* at 277. "[E]ven if a petitioner ha[s] good cause for that failure, the district court abuse[s] its discretion if it grant[s] him a stay when his unexhausted claims are plainly meritless." *Id.* Finally, mixed petitions "should not be stayed indefinitely." *Id.* The Court should impose "reasonable time limits" on exhausting the claims in state court and "condition the stay" on the petitioner pursuing the unexhausted claims briefly after the stay is entered. *Id.* at 278.

In sum, the district court should stay a mixed petition "if the petitioner ha[s] good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* If the Court decides a stay is inappropriate, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.*

III.    Analysis

Knox argues the Court should stay this case pursuant to *Rhines* so he can return to state court and exhaust certain claims. In his [67] Amended Petition, he asserts several claims, organizing them under five broad headings, each of which has numerous sub-parts: 1) ineffective assistance of post-conviction counsel; 2) guilt-phase ineffective assistance of trial counsel; 3) penalty-phase ineffective assistance of trial counsel; 4) *Batson*[2] claims; and 5) defective jury instructions and insufficiency of evidence. Am. Pet. [67] at 16–17. Knox specifies the claims he has not exhausted. *Id.* at 97–103. He contends new evidence previously unavailable to him supplies good cause for his failure to exhaust—namely, documents contained in his trial counsel's files which his previous post-conviction counsel did not possess and certain filings in parallel legal proceedings. *See id.* at 98. He also argues his initial post-conviction counsel's ineffective assistance provides good cause for his failure to exhaust. *Id.* at 100–101.

The State responds that Knox's claims are technically exhausted and therefore procedurally defaulted because Knox has no available state-court remedy. Mem. Supp. Resp. Opp'n. Mot. Stay [69] at 10. It also argues he cannot demonstrate good cause for a second *Rhines* stay, and none of the unexhausted claims are potentially meritorious. *Id.* at 11–12. Finally, the State contends Knox is engaging in abusive litigation tactics to create delay. *Id.* at 17–23. The Court need only address Knox's cause for a stay and the potential merit of his claims.

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

A.  Good Cause

"There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014). The Supreme Court has suggested "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). The Ninth Circuit has held that "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust. *Blake*, 745 F.3d at 982 (citing *Pace*, 544 U.S. at 416). "An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust." *Id.* And both the Fifth and Ninth Circuits have described "good cause" as an "equitable" standard. *See Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007); *Blake*, 745 F.3d at 982.[3]

District courts in the Fifth Circuit have found "good cause" for failing to exhaust when (1) a petitioner received "inadequate assistance from his retained attorney," *Chandler v. Epps*, No. 1:08-CV-93, 2008 WL 4683421, at *1 (N.D. Miss. Oct. 22, 2008); (2) a pro se petitioner did not know about his obligation to exhaust claims, and a dismissal would have prevented him from returning to federal court because of AEDPA's statute of limitations, *Walker v. Lumpkin*, No. H-20-3501, 2022

---

[3] The Fifth Circuit has also noted that, in the context of reviving a procedurally defaulted habeas claim, "[c]ause exists when some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *Prible v. Lumpkin*, 43 F.4th 501, 513 (5th Cir. 2022). "A factor is external to the defense if it cannot fairly be attributed to the prisoner." *Id.*

WL 2239851, at *7 (S.D. Tex. June 22, 2022) (noting respondent did not oppose request); (3) a pro se petitioner alleged difficulty in hiring an attorney and AEDPA's statute of limitations would preclude refiling, *Brown v. Davis*, No. 3:18-CV-174, 2021 WL 2907889, at *4 (N.D. Miss. July 9, 2021) (noting court staff's difficulty to contact petitioner's counsel); (4) a petitioner's unexhausted claim arose from a retroactively applied change in applicable law, *Folse v. Kent*, No. 18-121, 2020 WL 7753075, at *1–2 (M.D. La. Dec. 29, 2020); (5) the "legal landscape" surrounding a petitioner's claim was "confusing and ambiguous" when the petitioner pursued his initial state post-conviction relief, *Cade v. Lumpkin*, No. 3:17-CV-3396, 2020 WL 4877586, at *1 (N.D. Tex. Aug. 19, 2020); (6) the state appellate court effectively instructed a petitioner to raise claims of ineffective assistance of trial counsel on post-conviction, *Maize v. Louisiana*, No. 18-9393, 2019 WL 2469678, at *4 (E.D. La. June 13, 2019); and (7) the state appellate court would not consider claims of ineffective assistance of trial counsel on direct appeal, *Thompson v. Hooper*, No. 17-11674, 2018 WL 2013105, at *4 (E.D. La. Apr. 30, 2018); *Quinn v. Hooper*, No. 21-1779, 2022 WL 671846, at *3 (E.D. La. Mar. 7, 2022).

Other jurisdictions have found "good cause" when (1) the petitioner provided evidence of ineffective assistance of state post-conviction counsel, *Blake*, 745 F.3d at 983; *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D.S.D. 2005); (2) the petitioner had no counsel in his state post-conviction proceeding, *Dixon v. Baker*, 847 F.3d 714, 720–21 (9th Cir. 2017); (3) a dismissal would jeopardize the timeliness of the petitioner's habeas petition as to the unexhausted claims, *Randall v.*

*Superintendent Mahanoy SCI*, 835 F. App'x 675, 677 (3d Cir. 2020); (4) the petitioner's counsel discovered undisclosed *Brady* material after the petitioner had filed his federal habeas petition, *Eakes v. Sexton*, 592 F. App'x 422, 431 (6th Cir. 2014); (5) the petitioner did not learn of the factual basis of a claim until after his state post-conviction proceeding concluded, and he had exercised due diligence in developing the pertinent facts, *Cunningham v. Hudson*, 756 F.3d 477, 486 (6th Cir. 2014); and (6) the prosecution's wrongful withholding of information caused the petitioner's failure to exhaust, *Jalowiec v. Bradshaw*, 657 F.3d 293, 304–05 (6th Cir. 2011).

### 1.  Newly Discovered Evidence

Knox first asserts good cause based on newly discovered, potentially exculpatory evidence. *See* [67] at 35–36. He claims his trial counsel received an anonymous letter seven months before trial claiming someone else murdered Ella Mae Spears. *Id.* He argues the anonymous letter constitutes newly discovered evidence "that could not have been previously discovered through the exercise of due diligence." *Id.* at 36 (quoting 28 U.S.C. § 2254(e)(2)(A)(ii)). But the letter was previously available to Knox's trial counsel, and Knox admitted in briefing that the letter was also "readily available to the Office [of Capital Post-Conviction Counsel] and required only requesting it." [67] at 23. Accordingly, by Knox's own admission, the letter was available to his counsel at trial, on direct appeal, and in his initial post-conviction proceeding.

Accordingly, the letter does not constitute "newly discovered evidence" sufficient for good cause to excuse Knox's failure to exhaust. *Cf. Prible*, 43 F.4th at 517–18 (finding petitioner's post-conviction and initial federal habeas counsel's failure to diligently pursue evidence was chargeable to the petitioner and did not constitute cause to excuse default); *In re Carty*, 824 F. App'x 271, 276–77 (5th Cir. 2020) (per curiam) (reviewing motion for leave to file successive habeas petition and concluding evidence not new if it could have been discovered earlier through due diligence); *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) (rejecting actual innocence gateway claim because petitioner failed to show supporting evidence was unavailable to him or his counsel at trial).

### 2.  Ineffective Assistance of Post-Conviction Counsel

Knox next argues his post-conviction counsel's alleged ineffective assistance provides good cause for his failure to exhaust. He contends his initial post-conviction counsel provided ineffective assistance by failing to obtain his trial counsel's files and assert certain claims [63] at 5.

Ineffective assistance of post-conviction counsel can constitute good cause for failing to exhaust claims in state court before seeking habeas relief. *See Blake*, 745 F.3d at 983; *Chandler*, 2008 WL 4683421, at *1; *Rhines*, 408 F. Supp. 2d at 848. But the Court's review of such claims is "deferential, presuming that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (quotation omitted). "[C]ounsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but

rather may select from among them in order to maximize the likelihood of success . . . ." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (discussing principle as applied to appellate counsel).

Though it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* To overcome the presumption of effective assistance, ignored issues must be "clearly stronger" than presented issues. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval in Smith*, 528 U.S. at 288; *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) ("[T]o show prejudice in regard to a claim that the attorney failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial."). "Ineffective assistance of counsel cannot arise from the failure to raise a legally meritless claim," *United States v. Slape*, 44 F.4th 356, 360 (5th Cir. 2022) (quotation omitted), or conclusory allegations, *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).

As discussed below, Knox's unexhausted claims are plainly meritless. *See supra* Section III.B.  Accordingly, his initial post-conviction counsel's failure to obtain trial counsel's files and assert those claims was not prejudicial. One of Knox's habeas counsel, David Calder, also represented him in the successive post-conviction proceeding. Calder stated in a sworn declaration that he tried to obtain trial counsel's files during the successive post-conviction proceeding, but trial counsel told him that he had not retained them. Ex. B Mot. Stay [62-2]. Knox has supplied no reason to believe that his initial post-conviction counsel would have

10

been able to obtain the files. For these reasons, the Court finds that Knox has not shown good cause for a stay.

    B.  Merits of Unexhausted Claims

        1.  Ineffective Assistance of Post-Conviction Counsel

Knox argues he has not exhausted various claims related to the alleged ineffective assistance of his post-conviction counsel. He contends his initial post-conviction counsel failed to investigate and obtain case files from his trial counsel or the prosecutor and, as a result, many claims were not presented in his initial post-conviction petition. [63] at 5. Knox also claims he has acquired new evidence of "systemic deficiencies" in Mississippi's Office of Capital Post-Conviction Counsel ("OCPCC"), such as understaffing, underfunding, a burdensome case load, the deadlines imposed by the Mississippi Supreme Court, and the office's administrative organization. *Id.* at 5–6. He contends those "systemic deficiencies" deprived him of effective post-conviction representation. *Id.*

Any unexhausted claims premised upon the alleged ineffective assistance of post-conviction counsel are plainly meritless because Knox has no constitutional right to effective post-conviction counsel. *Davila v. Davis*, 582 U.S. 521, 529 (2017). To the extent that he bases those claims on violations of Mississippi law, AEDPA permits this Court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

>  2.  Ineffective Assistance of Trial Counsel: Anonymous Letter

Knox also asserts his trial counsel received an anonymous letter seven months before trial claiming a different person murdered Ella Mae Spears. [67] at 35–36. Knox contends his trial counsel provided ineffective assistance by failing to investigate the letter, identify its author, and find the actual murderer. He represents that his current habeas counsel is working with the OCPCC to compare DNA evidence obtained from the letter's envelope to relevant databases.

The letter's anonymous author stated that he and his cousin were riding on Spears Road when they saw Knox walking along the side of the road. [9-7]; [9-8]. They gave Knox a ride, but he was "out of it" and unresponsive to them. [9-6]; [9-7]. According to the author, his cousin said:

> Ain't this where that school teacher Mrs. Spears lives . . . Man, I hate that b[****] ever since school when she used to pull my ear. She always grabbed the same one. Now she's being a b[****] trying to get a n[****] busted. I oughta run up in her house right now and blow her brain out and make it look like this n[****] did it. I'd put blood on him. Don't nobody know him. . . . This would have been a perfect murder, but that b[****] ain't home.

[9-8] (cleaned up). The author stated he "believe[d his cousin] would have done [it] at that time. The only thing that stopped him [was that] she wasn't home." *Id.*

The author later heard that Spears had been killed. *Id.* He claims he got his cousin drunk and asked about Spears: "He told me he did it and threw her in her car. He didn't say the trunk, but I knew that's where she was found. Then he

started laughing, drunkish, saying[,] 'I put her blood on that n[****] from New York and her car keys in his pocket so it look like he done it.'" [9-9] (cleaned up). The anonymous author claimed that Knox "had nothing to do with murder. It wasn't intended to be a robbery like the papers . . . put it. It was to get her out the way to keep her from ratting cause she spoke a lot against drugs, and [the author's cousin] did business down that road a lot." [9-11] (cleaned up).

The anonymous author explained he would not bring this information to law enforcement because he did not want to "rat on [his] cousin" because they "grew up together" and "blood is thicker than water." [9-9]. He also explained that his cousin was "caught up in the game in New Orleans," and "when it comes to his life, he's all for himself. . . . I'm the only person he told. He'll send his boys after me from New Orleans to kill me just to protect himself. . . . I can't give my right name or address because I will be questioned and end up like Mrs. Spears." [9-10]; [9-11] (cleaned up).

"[A] criminal defendant's Sixth Amendment right to counsel is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Guidry v. Lumpkin*, 2 F.4th 472, 488 (5th Cir. 2021) (per curiam) (quotation omitted). "[T]he court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The Court's analysis must not be distorted by hindsight. *Moore v. Quarterman*, 534 F.3d 454, 468 (5th Cir. 2008). "Conclusory allegations" of prejudice are insufficient;

rather, "the defendant must affirmatively prove prejudice." *Tuesno v. Cain*, No. 97-30480, 1999 WL 824557, at *3 (5th Cir. Oct. 7, 1999) (per curiam) (quotation omitted). "Absent a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, the defendant's claim will fail." *Id.* (quotation omitted).

This ineffective-assistance claim is plainly meritless because Knox has not demonstrated that his trial counsel's failure to investigate the letter prejudiced his defense. "[T]o succeed on a claim for failure to investigate, a defendant must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014) (quotation omitted). "Further, an attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Id.* (quotation and alteration omitted).

Knox does not know who wrote the letter. He does not know whether the representations made in it are true. He does not know whether additional investigation would have revealed anything useful to his defense, much less anything that would have altered the outcome of his trial. Although he represented in his Amended Petition that the "sealed envelope contained DNA material that has now been collected and analyzed," he has not provided the Court with the results of that analysis. [67] at 99. Indeed, he admitted that the testing results had not yet been compared to DNA databases. *Id.*

In sum, as the record currently stands, the letter does not prove Knox's innocence. Rather, it might hold evidence that could lead to its author's identification, who then might provide an affidavit that his cousin once claimed to have framed Knox for the murder of Ella Mae Spears. Even if Knox's trial counsel had investigated the letter, identified its author, and convinced the author to testify at trial, Knox would have had to overcome the State's likely evidentiary objections to the introduction of such evidence, along with the weight of the evidence against him. In short, to conclude the letter would have altered the outcome of Knox's trial, the Court would have to make several tenuous assumptions in his favor. This ineffective-assistance claim is plainly meritless on the grounds that Knox cannot carry his burden of proof on the prejudice prong.

      3.   Ineffective Assistance of Trial Counsel: Mitigation[4]

Knox also argues his trial counsel provided ineffective assistance by failing to conduct an adequate mitigation investigation, to raise certain issues in mitigation, and to call certain witnesses in mitigation. According to Knox, his parents provided his trial counsel with the names and telephone numbers of his siblings who lived in New York, but counsel failed to contact them. [67] at 99. Knox contends his siblings

---

[4] "Upon conviction . . . of capital murder or other capital offense," Mississippi courts "conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment." Miss. Code Ann. § 99-19-101(1). "In the proceeding, evidence may be presented as to any matter that the court deems relevant to the sentence, and shall include matters relating to any of the aggravating or mitigating circumstances" outlined in the statute. *Id.* § 99-19-101(1), (5), (6). "For the jury to impose a sentence of death, it must unanimously find in writing . . . [t]hat sufficient aggravating circumstances exist . . . [and t]hat there are insufficient mitigating circumstances . . . ." *Id.* § 99-19-101(3).

knew about his "traumatic and abusive childhood, . . . history of seizure-like spells, and other relevant information about his personal history that could have been presented in mitigation." *Id.* at 99–100.

Knox also claims that trial counsel failed to obtain his school records, despite being provided with the name of his elementary schools. *Id.* at 100. He contends those records hold "important information about [his] medical issues, and the fact that his childhood was so traumatic that [he] requested . . . to live in a group home, so he would not have to live with his abusive father." *Id.* According to trial counsel's notes, he was following co-counsel's advice that "they only needed to arrange to call witnesses who lived in Amite County." *Id.*

As noted above, "to succeed on a claim for failure to investigate, a defendant must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Bernard*, 762 F.3d at 477 (quotation omitted). "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy[,] and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *see also Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993) (concluding "general allegations and speculation" insufficient to support ineffective assistance claim). Accordingly, "petitioners making claims of ineffective assistance based on counsel's failure to call a witness [must] demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so,

setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense." *Woodfox*, 609 F.3d at 808 (quotation and alterations omitted).

Knox's claim is plainly meritless for at least two reasons. First, his trial counsel did conduct a mitigation investigation and present mitigation evidence at sentencing. In response to Knox's post-conviction petition, the State presented an affidavit in which Knox's trial counsel described his effort to develop a mitigation case. Initial Post-Conviction R. Vol. 2 [73-2] at 140–41. He claims to have met with Knox's parents at their home at least twice to obtain relevant mitigation information. *Id.* Likewise, he visited Knox's grandfather, aunt, and uncle to obtain mitigation information. *Id.* at 141. Finally, he specifically noted that he was unsuccessful in contacting several other relatives who lived out of state. *Id.* At sentencing, counsel called two witnesses: Knox's mother and aunt. *Knox II*, 901 So. 2d at 1264–65; Trial R. Vol. 5 [72-5] at 114–24. Counsel also presented copies of Knox's social security records, which included medical records and evidence that Knox suffered a head injury while on a construction job. *Knox II*, 901 So. 2d at 1264–65; Trial R. Vol. 7 [72-7] at 2, 19–82.

"[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense he has chosen not to employ at trial." *Strickland*, 466 U.S. at 681 (quotation omitted). "Those strategic choices about which lines of defense to pursue are owed deference

commensurate with the reasonableness of the professional judgments on which they are based." *Id.* The Court's review of ineffective-assistance habeas claims "includes layers of deference to both trial counsel and the state court, rendering it 'doubly deferential.'" *Holberg v. Lumpkin*, No. 21-70010, 2023 WL 2474213, at *4 (5th Cir. Mar. 13, 2023) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Knox's trial counsel's mitigation investigation, described above, was reasonable under the circumstances.

Second, additional mitigation evidence likely would not have affected the trial's result, given the evidence against Knox. The State presented evidence that 1) Knox initially attempted to flee from law enforcement officers; 2) when the officers apprehended him, they found the victim's missing keys in Knox's pocket; 3) the victim's blood was on Knox's clothes found in his residence; and 4) Knox's fingerprints were found on the trunk of the car where the victim's body was found. The medical examiner testified that Spears was murdered by manual strangulation: "It was not an immediate death . . . . There were injuries over the face indicating that the struggle did occur . . . . It's not like it appears in the movies or the television. It does take time to strangle a person and kill that person." Trial R. Vol. 4 [72-4] at 28–29, 31. He identified "multiple additional injuries . . . over [her] face," and concluded that she suffered a painful death. *Id.* at 33.

Given the great weight of the evidence against Knox and the brutality of the crime, the jury likely would not have been swayed by any added mitigation evidence.

4.   Inappropriate *Batson* Agreement

Knox next contends one of his trial counsel "had an improper agreement" with the prosecuting attorney "that neither would assert challenges pursuant to *Batson v. Kentucky* concerning how the other exercised peremptory challenges in jury selection." [67] at 101. To support that claim, Knox cites *Wardley v. State*, in which a convicted defendant argued on appeal that he received ineffective assistance of counsel because his attorney failed to object to the State's exercise of peremptory challenges. [67] at 54; *see* 760 So. 2d 774, 777 (Miss. Ct. App. 1999). Knox alleges that Wardley was represented by the same trial counsel and prosecuted by the same district attorney. [67] at 54. In Wardley's case, trial counsel "testified that he did not raise any [*Batson*] objections because of a continuing agreement that he had with the State that neither would object to the other's exercise of its peremptory challenges." Wardley, 760 So. 2d at 777. Wardley was tried around 1995, *id.* at 776, while Knox was tried four years later.

But Knox's counsel did, in fact, assert a *Batson* challenge on the basis of race. Trial R. Vol. 3 [72-3] at 137–45. After voir dire and jury selection, the trial judge met in chambers with counsel and stated that "[t]he defense has raised a *Batson* motion to the Court . . . ." *Id.* at 137. The judge summarized jury selection, noting that the prosecution had used eight of its eleven peremptory strikes to strike African-American jurors. *Id.* at 138. The prosecution provided the following race-neutral reasons for its peremptory strikes:

1) Juror seven had a "drastic reaction" to the Court's announcement that this was a capital case, rolling her eyes and making a "pained"

expression. But she failed to respond to any of the questions regarding the death penalty. *Id.* at 139.

2) Juror eight was related to an individual who had recently been charged with aggravated assault and no-billed by the grand jury, and she did not mention it during *voir dire*. *Id.* at 140.

3) One juror was related to a "somewhat unpopular" former constable in Franklin County, causing "bad feelings between law enforcement . . . and her family." *Id.*

4) Juror seventeen raised her hand as being opposed to the death penalty. *Id.* at 140-41. Although she was rehabilitated in chambers on individual *voir dire*, the prosecutor believes she showed "some strong, strong feelings about not being able to return a death penalty case . . . ." *Id.* at 140–41.

5) One juror "indicated on questioning during voir dire that . . . either himself, a close family member, or a relative had been charged with a crime . . . and he also indicated that he was related to law enforcement." *Id.* at 141.

6) One juror had "approached the bench at the beginning . . . attempting to be excused from the jury as having served on a previously jury. It was obvious to us that she did not want to serve on this jury but because of the time frame . . . she was not allowed to be released." *Id.*

7) One juror was "nonresponsive in questioning" and had "a ponytail, a sort of strange hair design." *Id.* His "age is very much in line with the age of the defendant," and the prosecutor was "concerned that he may identify with him and both have unusual hairstyles." *Id.* at 141–42.

8) Juror eleven was "pretty young," and the prosecution "felt like it would be best based on her age that we exhausted one of our challenges on her." *Id.* at 142. She was also "nonresponsive to the questions, . . . and appeared at some point to be nodding off . . . ." *Id.* at 142.

In response, Knox's counsel stated: "I cannot dispute any of the things . . . set forth. He was pretty weak on identifying with the defendant. Other than that, how the hair fixed up, a whole lot to do with anything." *Id.* The Court ruled:

> [T]he reasons set forth by the State for the challenges in question are race[-]neutral, some of which are very clear. Others are a little closer call for the Court, but the fact remains that they did set out race[-]neutral reasons which are essentially not contested . . . by the defense, and for that reason, the Court is going to accept the reasons and allow the challenges to stand.

*Id.* at 143.

Knox's *Batson* claim is plainly meritless because 1) Knox's factual allegations do not demonstrate that his trial counsel had a *Batson* agreement with the prosecutor, and 2) the record demonstrates that Knox's counsel did assert a *Batson* challenge to the State's exercise of peremptory strikes.

### 5. Actual Innocence

Finally, although Knox did not specifically assert a gateway claim of actual innocence,[5] he asserts the anonymous letter constitutes "evidence of [his] actual innocence." [67] at 22–23. To the extent that he intended to assert an actual-

---

[5] "The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009) (per curiam). Rather, an actual innocence claim functions as a gateway through which a habeas petitioner may pursue otherwise time-barred or procedurally defaulted constitutional claims. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298 (1995). "[A]ctual innocence is established through demonstrating that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018) (per curiam) (quoting *Schlup*, 513 U.S. at 327). "[A] credible [actual innocence] claim must be supported by new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* at 155. "Because such evidence is unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

innocence claim, "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998) (quotation omitted); *see also In re Will*, 970 F.3d 536, 540 n.4 (5th Cir. 2020) (per curiam). Any freestanding actual innocence claim is, therefore, plainly meritless.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons above, Petitioner Steve Knox fails to demonstrate good cause for a stay, and his unexhausted habeas claims are plainly meritless. Accordingly, his [62] Motion to Stay this case while he pursues a third post-conviction petition in state court is DENIED.

"[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to federal relief." *Rhines*, 544 U.S. at 278. The Court ORDERS Knox to file a Second Amended Petition which omits the unexhausted claims within 28 days of the entry of this opinion, or no later than **June 16, 2023**. Knox may not otherwise amend his petition. If Knox fails to timely file a Second Amended Petition omitting the unexhausted claims, then the Court may dismiss the entire Amended Petition without additional notice.

Respondents shall then file an answer within 60 days after the filing of the Second Amended Petition, or no later than **August 15, 2023**. Knox may file a rebuttal pleading within 30 days of the filing of the answer, or no later than **September 14, 2023**.

Knox shall file his memorandum of law in support of the Second Amended Petition within 90 days of the filing of his rebuttal pleading, or no later than **December 13, 2023**. Respondents shall file a memorandum of law in opposition to the Second Amended Petition within 60 days of the filing of Petitioner's memorandum, or no later than **February 12, 2024**. Knox may then file a rebuttal brief within 30 days of the filing of Respondents' brief in response, or no later than **March 13, 2024**.

SO ORDERED, this the 19th day of May, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE