UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

STEVE KNOX                                                                    PETITIONER

V.                                                  CIVIL ACTION NO. 5:13-CV-241-KHJ

BURL CAIN, et al.                                                         RESPONDENTS

ORDER

Before the Court is Petitioner Steve Knox's [80] Motion for Reconsideration of the Court's [79] Order denying his [62] Motion to Stay. For the following reasons, the Court denies the motion.

I.      Background

In September 1999, a jury convicted Knox of murdering Ella Mae Spears and sentenced him to death. *Knox v. State ("Knox I")*, 805 So. 2d 527, 529 (Miss. 2002). The Mississippi Supreme Court affirmed Knox's conviction and death sentence in 2002. *Id.* at 529, 534–35. The United States Supreme Court denied Knox's petition for a writ of certiorari. *Knox v. Mississippi*, 536 U.S. 965 (2002).

In February 2003, Knox filed his first petition for post-conviction relief in the Mississippi Supreme Court. Mot. Leave Proceed in Trial Ct. with Pet. Post-Conviction Relief, *Knox v. State ("Knox II")*, No. 2002-DR-00912-SCT (Miss. Feb. 14, 2003). It denied the petition. *Knox II*, 901 So. 2d 1257, 1271–72 (Miss. 2005).

On June 9, 2005, Knox initiated this capital habeas case. *See* [1], [2]. He filed his initial [9] Petition on October 13, 2005. On March 19, 2013, the Court stayed the

case pending the outcome of potentially relevant cases before the United States Supreme Court and the Mississippi Supreme Court. Order [44]. A few months later, the Court directed Knox to provide notice of whether he intended to raise claims of ineffective assistance of post-conviction counsel in the Mississippi Supreme Court pursuant to *Grayson v. State*, 118 So. 3d 118 (Miss. 2013). Order [45]. Knox responded affirmatively, and the Court ordered that the case remain stayed until the completion of Knox's successive post-conviction proceeding. Order [47].

On June 24, 2014, Knox sought leave to file a second post-conviction petition in the Mississippi Supreme Court. Mot. Leave to File Successive Pet. Post-Conviction Relief, *Knox v. State ("Knox III")*, No. 2014-DR-849-SCT (Miss. June 24, 2014). He eventually amended the motion, Am. Mot., *Knox III*, No. 2014-DR-849-SCT (Miss. Nov. 14, 2018), and again nearly two years later, Second Am. Mot., *Knox III*, No. 2014-DR-849-SCT (Miss. July 10, 2020). The Mississippi Supreme Court denied the motion on March 10, 2022. En Banc Order, *Knox III*, No. 2014-DR-849-SCT (Miss. Mar. 10, 2022). It found the petition was barred pursuant to Miss. Code Ann. § 99-39-5(2)(b), *id.* at 2; as a successive writ pursuant to Miss. Code Ann. § 99-39-37(9), *id.*; by res judicata, *id.* at 2–3, and by Miss. Code Ann. §§ 99-39-21(2)–(3) because he could have presented the claims at trial or on direct appeal, *id.* at 3. It also found no exception to those bars applied. *Id.*

On July 14, 2022, Knox notified the Court that his successive post-conviction proceeding had terminated. [52]. On September 13, 2022, the Court lifted the stay , appointed habeas counsel, and entered a scheduling order. Order [56]. On March 20,

2023—over 23 years after Knox's conviction and just one year after the termination of his second post-conviction proceeding—Knox again moved to stay this habeas case so he could pursue a third post-conviction petition. Mot. Stay [62]. The Court denied the motion on May 19, 2023, and Knox filed a Motion for Reconsideration on May 30, 2023. *See* [79]; [80]

## II.    Standard

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)) (alterations in original). Under that rule, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (citation omitted). Rule 54(b)'s standard of review is "flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). That said, "this power is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Lafayette City-Par. Consol. Gov't v. United States*, 622 F. Supp. 3d 257, 262 (W.D. La. 2022) (citation omitted).

Although Rule 54(b) is "less exacting" than Rules 59(e) and 60(b), courts "still look to the latter rules for guidance." *Id.* (citation omitted). Accordingly, when exercising its broad discretion under Rule 54(b), the Court "should consider whether

there are manifest errors of law or fact upon which judgment is based, whether new evidence is available, whether there is a need to prevent manifest injustice, or whether there has been an intervening change in controlling law." *Id.* (quotations omitted); *see also Hernandez v. Causey*, 2022 WL 4594023, at *10 (S.D. Miss. Sept. 29, 2022) (discussing Rule 54(b) standard).

III.   Analysis

Knox argues the Court should reconsider its previous order based on new information supporting his request for a stay and his clarification of certain arguments made in the initial motion. The Court will address each specific argument in turn.

A.  DNA Evidence

First, Knox argues the Court should reconsider its decision because his counsel obtained DNA evidence from the sealed envelope containing the anonymous letter referred to in the Court's previous [79] Order, including a DNA profile of the party who sealed the envelope. *See* [80] at 2–7. He relies on a report from the Forensic Analytical Crime Lab dated March 22, 2023. *See* [80-1]. According to the report, the envelope contained "[a] mixture of DNA from at least two contributors, including an unknown major male contributor . . . and at least one trace contributor . . . ." *Id.* at 1. The report claims "[t]he trace DNA likely originated from . . . individuals handling the envelope." *Id.* at 4. The DNA specimens extracted from the envelope can be compared to other specimens and "submitted for genetic genealogy testing." *Id.*

Knox contends the DNA evidence constitutes new and exculpatory evidence supporting an unexhausted claim of ineffective assistance of trial counsel. [80] ¶ 15. He claims his trial counsel supplied ineffective assistance by failing to pursue DNA testing of the envelope. *Id.* ¶ 11. He argues earlier testing "would have enabled the identification of the anonymous sender" who claimed that his cousin murdered Ella Mae Spears, and his trial counsel was ineffective for failing to pursue that testing. *Id.* The Court is unconvinced, for the same reasons provided in its initial opinion. *See* [79].

"[A] criminal defendant's Sixth Amendment right to counsel is 'denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense.'" *Guidry v. Lumpkin*, 2 F.4th 472, 488 (5th Cir. 2021) (per curiam) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam)). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689 (1984), and its analysis must not be distorted by hindsight, *Moore v. Quarterman*, 534 F.3d 454, 468 (5th Cir. 2008). "Conclusory allegations" of prejudice are insufficient; rather, "the defendant 'must affirmatively prove prejudice.'" *Tuesno v. Cain*, No. 97-30480, 1999 WL 824557, at *3 (5th Cir. Oct. 7, 1999) (per curiam) (quoting *Strickland*, 466 U.S. at 689). "Absent a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' the defendant's claim will fail." *Id.* (quoting *Strickland*, 466 U.S. at 694).

As the Court held, Knox's unexhausted ineffective-assistance claim is plainly meritless because Knox has not shown that his trial counsel's failure to investigate the letter prejudiced his defense. He failed to "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014) (quotation and emphasis omitted). "[A]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 108 (2011)).

Despite having obtained a new DNA analysis of the letter, Knox still does not know who wrote it. He has not compared the DNA profile obtained from the letter to databases of such profiles. He has articulated no plan to identify the letter's author or demonstrated the likelihood of success of such an effort. He does not know whether the representations made in the letter are true, and he has not independently corroborated them. Accordingly, Knox fails to show additional investigation by his trial counsel would have revealed anything useful to his defense. The letter does not prove his innocence. Rather to conclude it would have altered the outcome of his trial would require tenuous assumptions in his favor. Accordingly, the Court declines to reconsider its previous decision on that basis.

B.  Ineffective Assistance of Trial Counsel – Investigation

Knox also argues the Court should reconsider its decision because his trial counsel's records demonstrate that he failed to conduct adequate investigation before the guilt and sentencing phases of trial. *See e.g.*, [80] ¶¶ 23–25. Knox argues

6

trial counsel's file does not have documentation of investigation into other potential suspects or interviews with potential witnesses. *Id.* ¶ 29. Knox also contends trial counsel's file does not contain documentation of attempts to contact potential witnesses in New York, proving that he did not do so and contradicting the affidavit he provided to the State. *Id.* ¶ 31. Finally, Knox notes that his trial counsel wrote he should obtain school records from New York and request a mental examination, but he never did. *Id.*

Knox's argument is flawed. The absence of evidence is not evidence of absence. Trial counsel's notes attached to Knox's motion are a sparse ten pages of seemingly random handwritten notes. [80-8]. Some notes were written on a different color paper than the others, indicating they were not written sequentially in the same note pad. *See id.* at 2–4. Many pages have at least one date written on them, but they have lengthy gaps in time adding up to almost ten months from the year before trial. *See id.* at 4–5, 7. By Knox's logic, that would mean his trial counsel did nothing during those gaps. But trial counsel's billing records show that he made many investigative trips during those periods of time, indicating that the notes are not a comprehensive record of his trial preparation. [80-9] at 8–10.

In its previous order, the Court described the investigation performed by Knox's trial counsel. [79] at 17–18. Knox's trial counsel stated in an affidavit:

> I obtained information from Knox regarding his family/relatives and their contact information. I met with Knox's mother and father, Mildred and Herbert Knox, at their residence at least two (2) times to obtain case-fact information and any possible mitigating facts or circumstances concerning Steve Knox. I also visited Knox's maternal grandfather, Rev. Alfred Knox, at his residence regarding information about Steve Knox.

7

> Rev. Knox spoke with me at length about his grandson, Steve Knox, and I determined from his comments that he would not be helpful to Knox's case. And I met with J.B. and Pearleen Knox, Knox's uncle and aunt, to seek out any viable factual and/or mitigating information.
>
> I also spoke with other relatives in an effort to find mitigating information. And I was unsuccessful in contacting several other relatives who lived out of state.

[80-6] at 1–2. Portions of that testimony are corroborated by trial counsel's billing records. [80-9] at 8–10. Trial counsel's notes do not contradict his assertion that he tried to contact Knox's out-of-state relatives. Accordingly, the Court declines to reconsider its previous decision on that basis.

### C. Flat-Fee Arrangement

Knox contends the Court should reconsider its previous decision because his trial counsel's files indicate that he had an "improper agreement to represent Mr. Knox at trial . . . on a 'flat fee' basis for a total of $5,000.00," in violation of Mississippi law and ABA guidelines. [80] at 10.

First, the Antiterrorism and Effective Death Penalty Act permits this Court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Knox has no viable habeas claim premised upon his trial counsel's fee arrangement allegedly violating state law.

Second, Knox does not cite any applicable law to support his implicit argument that criminal defense counsel's flat-fee arrangement violates the Constitution or necessarily leads to ineffective representation. When a "theoretical conflict . . . exists between an attorney's personal fisc and his client's interests in [a] pro bono or underfunded appointment case. . . .[,][s]uch arrangements, without more, do not require Sixth Amendment scrutiny." *Williams v. Calderon*, 52 F.3d 1465, 1473 (9th Cir. 1995).[1] Rather, a petitioner claiming that a payment arrangement violated his constitutional right to effective counsel must prove that his counsel's representation fell below an objective standard of reasonableness and the deficiency prejudiced his defense.[2] Knox has not done that here. Accordingly, he has not articulated a potentially meritorious habeas claim arising from the fee arrangement with his trial counsel, and the Court declines to reconsider its previous decision on that basis.

---

[1] *See also Tisius v. Jennings*, No. 4:17-CV-426, 2020 WL 6386874, at *10 (W.D. Mo. Oct. 30, 2020) (flat-fee arrangement did not create a conflict of interest and was insufficient to merit habeas relief); *Miller v. United States*, No. 7:15-CR-44, 2020 WL 4740474, at *3 (E.D.N.C. Aug. 14, 2020) (allegation of flat-fee arrangement was not sufficient to merit § 2255 relief); *Batiste v. Davis*, No. H-15-1258,2017 WL 4155461, at *29 (S.D. Tex. Sept. 19, 2017) (no clearly established federal law requiring particular method of compensating counsel).

[2] *Cf. United States v. Bolton*, 908 F.3d 75, 99 (5th Cir. 2018) (court rejected claims of conflict of interest and ineffective representation arising from payment of defendant's counsel by a third party); *United States v. Barth*, 394 F. App'x 83, 84 (5th Cir. 2010) ("purely hypothetical" conflict arising from fee payment arrangement was not sufficient to merit § 2255 relief); *Yohey v. Collins*, 985 F.2d 222, 227–28 (5th Cir. 1993) (counsel's failure to use his personal funds to hire an expert was not ineffective assistance); *Beets v. Scott*, 65 F.3d 1258, 1273–74 (5th Cir. 1995) (where counsel had entered unethical media-rights agreement with petitioner, petitioner was still required to prove ineffective assistance under *Strickland*).

D.  Alleged *Batson* Agreement

Finally, Knox argues the Court misunderstood the nature of the *Batson* argument in his initial motion. He now claims that he does not complain of his trial counsel's failure to assert a *Batson* challenge to the State's exercise of peremptory strikes, but of the way his counsel litigated the issue. [80] at 13. Specifically, he claims his counsel had an agreement with the prosecutor "that neither would substantively challenge the reasons that the other offered in any *Batson* hearing . . . ." [80] at 13. In other words, he argues his trial counsel must have had an illicit agreement with the prosecutor because, otherwise, he would have vigorously argued the *Batson* challenge. That distinction is irrelevant. The claim is still plainly meritless.

No matter how Knox frames the alleged agreement, he has provided no evidence or alleged any specific facts demonstrating an agreement existed in his case. He assumes that an agreement existed because his counsel had entered one in another case. *See Wardley v. State*, 760 So. 2d 774, 777 (Miss. Ct. App. 1999). In *Wardley*, the same attorney "made no objection at trial to any of the State's peremptory strikes, and never asked that the State articulate race-neutral reasons for those strikes, nor . . . object to the final composition of the jury." *Id.* There, it was undisputed that the attorney "did not raise any objections because of a continuing agreement that he had with the State that neither would object to the other's exercise of its peremptory challenges." *Id.* As noted in the Court's previous order,

Knox's counsel did, in fact, assert a *Batson* challenge based on race in Knox's trial. [79] at 19–21. That challenge distinguishes Knox's case from *Wardley*.

Even if Knox's trial counsel entered into such an agreement, Knox fails to demonstrate that it constituted ineffective assistance. He does not demonstrate that a more vigorous argument on the *Batson* challenge would have led to a different result at jury selection. *See, e.g.*, *Nelson v. Davis*, 952 F.3d 651, 679 (5th Cir. 2020) (noting petitioner could not succeed on ineffective assistance claim arising from the *Batson* challenge where defense counsel responded to race-neutral reasons with "I'll let the record speak for itself"). The Court declines to reconsider its previous decision on that basis.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court DENIES Knox's [80] Motion for Reconsideration of the Court's [79] Order denying his [62] Motion to Stay.

Knox shall file a Second Amended Petition which omits his unexhausted claims, as explained in the Court's previous [79] Order, within 14 days of the entry of this opinion, or no later than **June 30, 2023**. Knox may not otherwise amend his Petition. If Knox fails to timely file a Second Amended Petition omitting the unexhausted claims, then the Court may dismiss the entire Amended Petition without additional notice.

Respondents shall then file an answer within 60 days after the filing of the Second Amended Petition, or no later than **August 29, 2023**. Knox may file a

11

rebuttal pleading within 30 days of the filing of the answer, or no later than

**September 28, 2023**.

Knox shall file his memorandum of law in support of the Second Amended

Petition within 90 days of the filing of his rebuttal pleading, or no later than

**December 27, 2023**. Respondents shall file a memorandum of law in opposition to

the Second Amended Petition within 60 days of the filing of Petitioner's

memorandum, or no later than **February 26, 2024**. Knox may then file a rebuttal

brief within 30 days of the filing of Respondents' brief in response, or no later than

**March 27, 2024**.

SO ORDERED, this the 16th day of June, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE