# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

### No. 5:13–CV–00241–KHJ

---

### STEVE KNOX
*Petitioner*

v.

### BURL CAIN
#### MISSISSIPPI DEPARTMENT OF CORRECTIONS COMMISSIONER

### MARC McCLURE
#### MISSISSIPPI STATE PENITENTIARY SUPERINTENDENT
*Respondents*

---

## ANSWER IN OPPOSITION
## TO SECOND AMENDED PETITION FOR A
## WRIT OF HABEAS CORPUS BY A PRISONER
## IN STATE CUSTODY

---

LYNN FITCH
Attorney General of Mississippi

BRAD A. SMITH
Special Assistant Attorney General
Mississippi Bar No. 104321
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: 601-359-3805
Email: Brad.Smith@ago.ms.gov

*Counsel for Respondents*

# INTRODUCTION

Nearly a quarter century has passed since Petitioner Steve Knox strangled seventy-one-year-old Ella Mae Spears to death during a robbery at her Amite County home. Law enforcement officers (LEOs) found Ms. Spears's bruised and bloodied body stuffed inside the trunk of her car during an October 22, 1998 welfare check. Later that day, LEOs found Knox walking from Ms. Spears's house towards his parents' home that was located less than a quarter mile away on the same road. And when he tried to flee, LEOs subdued Knox and took him into custody. LEOs also obtained a significant amount of damning evidence against Knox, including: (a) Ms. Spears's DNA from his person; (b) her personal property from his person;(c) his fingerprints from the body of her car; and (d) his fingerprints from a magazine found inside the trunk of Ms. Spears's car. In November 1998, the Amite County Grand Jury returned an indictment that charged Knox with one count of capital murder for killing Ms. Spears while committing the felony of robbery at her home. An Amite County petite jury found Knox guilty of the charged offense and recommended he be sentenced to the death.

The Mississippi Department of Corrections holds Knox in its custody and houses him at the Mississippi State Penitentiary in Parchman, Mississippi. He remains under a sentence of death and awaits the execution of his sentence.

Knox initiated this this action on October 13, 2005, by filing his Petition[1] under 28 U.S.C. § 2254. (Doc. 9). Eight years later, this Court stayed these proceedings based on Knox's claims that appointed counsel in *Knox II* and after the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013). (Docs. 41-47). In June 2022, Knox returned to this Court after an unsuccessful[2] and a nearly-decade-long trip to state court. (Doc. 52). The Court lifted the stay in September 2022 and ordered Knox to file an amended petition. (Doc. 56).

In March 2023, Knox filed his First Amended Petition[3] and sought relief for:

**Claim One**: Knox's appointed counsel in his initial state post-conviction proceedings was ineffective for failing to investigate and obtain evidence, file a "legally-sufficient" brief, properly litigate, obtain discovery, retain independent experts, obtain post-conviction relief in the form of an evidentiary hearing, and request adequate funding.

**Claim Two**: Knox's trial counsel was ineffective during the guilt phase of trial for failing to seek and obtain forensic-expert opinions related to inadmissible hearsay, to rebut the State's forensic experts, and to investigate "other perpetrators."

---

[1] Going forward, Respondents will refer to Knox's Petition for a Writ of Habeas Corpus by a Prisoner in State Custody (Doc. 9) simply as his "Petition."

[2] The Mississippi Supreme Court denied Knox's Second Amended PCR Application and claims for relief in *Knox III*, No. 2014–DR–00849–SCT (Miss. Mar. 10, 2022), during Knox's most recent trip to state court. (Doc. 75–10 at 295–99).

[3] "First Amended Petition" in this Answer refers to the Amended Petition for Habeas Corpus Under 28 U.S.C. § 2254 by a Person in State Custody under Sentence of Death Incorporating Authorities Relied Upon in Support Thereof, with Legal Arguments, References to Relevant Record Excerpts and Exhibits (Doc. 67) that Knox filed in this Court in March 2023.

**Claim Three**: Knox's trial counsel was ineffective during the penalty phase for failing to prepare and present the mitigation case that should have been presented.

**Claim Four**: The State exercised peremptory strikes against potential jurors for the discriminatory purpose of preventing blacks and females from serving as jurors and alternates in Knox's capital-murder trial.

**Claim Five**: The trial court erred by giving vague and overbroad jury instructions related to Mississippi's statutory heinous, atrocious, or cruel aggravating circumstance; not quashing Knox's indictment that did not list the aggravating circumstances; and accepting the sentencing verdict that was not returned in proper form or factually supported.

(Doc. 67 at 17–97, ¶¶37–319).

Knox also requested a second *Rhines*[4] stay and leave to initiate another round of state post-conviction proceedings in his First Amended Petition. (Doc. 67 at 97–103). The Court denied his request for a second *Rhines* stay because (1) Knox failed to show good cause for granting another stay, and (2) his unexhausted allegations were plainly meritless. (Doc. 79 at 22). The Court also denied Knox's Motion for Reconsideration. (Doc. 83 at 11).

On both occasions, the Court ordered Knox to amend his First Amended Petition by removing all unexhausted claims from it and to file an amended petition that contained no unexhausted claims. (Docs. 79 at 22; 83 at 11). Each time, it made clear that "Knox may not otherwise amend his Petition." (Docs. 79 at 22; 83 at 11). And each time, it warned: "If Knox fails to timely file a

---

[4] *Rhines v. Weber*, 544 U.S. 269 (2005).

Second Amended Petition omitting the unexhausted claims, then the Court may dismiss the entire Amended Petition without additional notice." (Docs. 79 at 22; 83 at 11).

In June 2023, a year after returning from state court, Knox filed a 249-page Second Amended Petition (Doc. 85) that dwarfed his First Amended Petition (Doc. 67). Aside from the extreme variance in length, his Second Amended Petition included a cumulative-error claim (Doc. 85 at 241–43) that had not been presented in Knox's Petition or First Amended Petition (Docs. 9, 67). He also attached seventy exhibits to his Second Amended Petition—seventy more than the number of exhibits that Knox attached to his First Amended Petition. (Docs. 85-1–85-70).

Respondents moved the Court to dismiss Knox's Second Amended Petition. (Doc. 88). They did so for three reasons. First, they moved to dismiss the Second Amended Petition because it violated clear directives in two of this Court's orders. (Docs. 79 at 22, 83 at 11). Second, Respondents moved to dismiss the Second Amended Petition because the procedural default doctrine barred review of every claim in it. And third, they moved to dismiss the Second Amended Petition because it raised a freestanding claim of racial and gender discrimination in jury selection that Knox did not raise at any point in his state-court proceedings related to his capital-murder conviction and sentence. The Court, however, refused to dismiss the Second Amended Petition.

So Respondents answer the allegations in Knox's Second Amended Petition, which they understand to raise:

Claim One:     The State violated the rule in *Batson v. Kentucky* by peremptorily removing potential jurors from the venire on the bases of race and gender.

Claim Two:     Trial counsel was ineffective during the penalty phase of trial for failing to investigate and discover mitigating evidence that could have been presented to the jury.

Claim Three:   Trial counsel was ineffective during the guilt phase of trial for failing to investigate, seek discovery, and present any defense.

Claim Four:    The penalty phase jury instructions were overbroad and vague; the aggravating circumstances were not listed in the indictment; the form of the sentencing verdict was improper; and the sentencing verdict was based on insufficient evidence.

Claim Five:    The aggregate effect of errors made during the guilt and penalty phases violated Knox's right to a fair trial.

(Doc. 85 at 133–243).

Should the Court read the Second Amended Petition to raise different or additional claims, then Respondents request permission to file a supplemental pleading. Knox has forfeited any claim that he presented in state court but not this Court. *See Gonzales v. Davis*, 924 F.3d 236, 247 (5th Cir. 2019) (finding Gonzales forfeited a challenge to the adequacy of a retrospective competency hearing that was not presented to the district court). Habeas review of abandoned claims is barred.

# ANSWER

Respondents answer the allegations in the Second Amended Petition, beginning with those under the first section entitled, "Jurisdiction, Venue, Required Recitations."

1.    They **ADMIT** the allegations in the first full paragraph. (Doc. 85 at 2).

2.    They **ADMIT** the allegations in the second paragraph. (Doc. 85 at 2).

3.    They **ADMIT** the allegations in the third paragraph. (Doc. 85 at 2).

4.    They **ADMIT** the allegations in the fourth paragraph. (Doc. 85 at 2).

5.    They **ADMIT** the allegations in the fifth paragraph. (Doc. 85 at 2).

6.    They **ADMIT** the allegations in the sixth paragraph. (Doc. 85 at 2–3).

7.    They **ADMIT** the allegations in the seventh, eighth, ninth, tenth, eleventh, and twelfth paragraphs. (Doc. 85 at 3).

8.    They **ADMIT** the allegations in the thirteenth and fourteenth paragraphs. (Doc. 85 at 4).

9.    They **ADMIT**, in part, and **DENY**, in part, the allegations in the fifteenth paragraph. (Doc. 85 at 4). They admit that Gus Sermos was appointed to represent Knox at trial and on direct appeal in *Knox v. State*, 805 So. 2d 527 (Miss. 2002) (*Knox I*). They admit that Mr. Sermos raised the three assignments of error listed in paragraph fifteen but deny the allegation that he failed to file a response or reply brief in *Knox I.*

10.   They **ADMIT**, in part, and **DENY**, in part, the allegations in paragraphs sixteen, seventeen, and eighteen. (Doc. 85 at 4–5). They admit that Knox filed his initial post-conviction relief (PCR) application on February 14, 2003. They deny the allegation that Knox filed a supplemented or amended PCR application on June 19, 2003. He filed a supplemented or amended PCR application in state court on September 7, 2004.

11.   They **ADMIT** the allegations in the nineteenth paragraph. (Doc. 85 at 5–6).

12.   They **ADMIT** the allegation in the twentieth paragraph. (Doc. 85 at 6).

13. They **ADMIT** the allegations in the twenty-first paragraph. (Doc. 85 at 6).

14. They **ADMIT** the allegation in the twenty-second paragraph. (Doc. 85 at 6).

15. They **ADMIT** the allegation in the twenty-third paragraph that the Mississippi Office of Capital Post-Conviction Counsel (CPCC) moved this Court to appoint counsel to represent Knox in his efforts to obtain federal relief. (Doc. 85 at 6–7).

16. They **ADMIT** the allegations in the twenty-fourth paragraph. (Doc. 85 at 7).

17. They **ADMIT** the allegations in the twenty-fifth paragraph. (Doc. 85 at 7). Respondents, however, clarify that Knox's Petition was fully briefed and pending before the Court on July 18, 2008. At the end of March 2012, Knox filed a Notice of Additional Authority concerning *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 42). About one year passed when the Court stayed this case pending the decision in *Trevino v. Thaler*, 569 U.S. 413 (2013). (Doc. 44 at 2). *Trevino's* decision came down about two months later. In July 2013, this Court ordered Knox to file a stipulation of intent to raise PCR IAC[5] claims in state court by the end of September 2013. (Doc. 45). He filed that stipulation with the Court on September 27, 2013. (Doc. 46). Based on that stipulation, the Court stayed this case and ordered the Clerk to administratively close it on October 15, 2013. (Doc. 47).

18. They **ADMIT** the allegations in the twenty-sixth paragraph. (Doc. 85 at 7).

19. They **ADMIT**, in part, and **DENY**, in part, the allegations in the twenty-seventh paragraph. (Doc. 85 at 7–8). They **DENY** the allegation that Knox promptly filed his first successive PCR application in state court. Knox waited more than eight months after the Court stayed this case before filing his first successive PCR application in state court. He waited three more months before moving the state supreme court to stay his successive proceedings in *Knox III*. (Doc. 75-2 at 12–18). The State responded to Knox's first successive PCR application in October 2014. (Doc. 75-2 at 19–76). And Knox replied in December 2014. (Doc. 75-2 at 93–117). The following February, the state supreme court stayed the proceedings to consider Knox's motion to stay. (Doc. 75-2 at 119, 120–21). The state court stayed the proceedings in September 2016, and ordered him to amend or supplement his successive PCR application by March 24, 2017. (Doc. 75-2 at 122–23). But nearly two years passed before Knox filed his first amended

---

[5] PCR IAC is an acronym for Post-Conviction Relief Ineffective Assistance of Counsel.

successive PCR application in November 2018. (Doc. 75-2 at 124–252). He filed his Rebuttal (Doc. 75-5 at 1–120) to the State's Response in October 2019 *and* moved for even more leave to amend his already-amended application (Doc. 75-4 at 93–109). The state supreme court granted Knox more leave to amend in April 2020. (Doc. 74-2 at 23). After receiving several extensions, Knox finally filed his filed a second amended successive PCR application in July 2020. (Doc. 74-2 at 6, 8, 12, 22).

20. They **ADMIT** the allegations in the twenty-eighth paragraph. (Doc. 85 at 8).

21. They **ADMIT**, in part, and **DENY**, in part, the allegations in paragraph twenty-nine. (Doc. 85 at 8). They deny the allegations that these proceedings began when the Mississippi Office of Capital Post-Conviction Counsel (CPCC) first moved this Court to appoint counsel to assist Knox's efforts to obtain federal relief. prior to Knox filing his initial Petition in this Court. This case began on October 13, 2005, the date that Knox filed his initial Petition (Doc. 9). *See Woodford v. Garceau*, 538 U.S. 202, 208 (2003) ("[A] habeas suit begins with the filing of an application for habeas corpus relief- the equivalent of a complaint in an ordinary civil case."). They also deny the allegation that Knox filed a second motion for the appointment of federal habeas counsel on September 26, 2022. Knox filed a second motion for appointment of counsel on September 6, 2022. (Doc. 55).

22. They **DENY** the allegations in paragraph thirty. (Doc. 85 at 8–9).

23. They **DENY** the factual allegations in paragraphs thirty-one through forty-one under the section of the Second Amended Petition entitled, "Factual Background." (Doc. 85 at 9–11). The state-court record of Knox's 1999 capital-murder trial and the information inside the Mississippi Supreme Court's case folders, which have been filed in this case, speak for themselves. The same is true of the factual recitations in the state supreme court's written opinions and orders entered in *Knox I*, 805 So. 2d 527 (Miss. 2002), *Knox v. State*, 901 So. 2d 1257 (Miss. 2005) (*Knox II*), and *Knox v. State*, No. 2014-DR-00849-SCT (Miss. Mar. 10, 2022) (*Knox III*). To Knox's characterization of any fact in any state-court record, state-court case folder, or state-court order or opinion, **DENIED.**

24. They **DENY** the allegations in paragraphs forty-two through forty-four of the section entitled, "Summary of Claims that Warrant Relief." (Doc. 85 at 11–12).

25. They **DENY** the allegations in paragraphs forty-six through fifty-one under part A of the section entitled, "Present Procedural Posture." (Doc. 85 at 14–16).

26. They **DENY** the allegations in paragraph fifty-two under part A of the section entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 16–18).

27. They **DENY** the allegations in paragraphs fifty-three through 108 under part B entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 18–37).

28. They **DENY** the allegations in paragraphs 109–27 under part C of the section entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 38–45).

29. They **DENY** the allegations in paragraphs 128–96 under part D of the section entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 45–63).

30. They **DENY** the allegations in paragraphs 197–262 under the second part D of the section entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 63–97).

31. They **DENY** the allegations in paragraphs 263–389 under part E of the section entitled, "Exhibits in Support of Petitioner's Claims." (Doc. 85 at 97–133).

32. They **DENY** the allegations under Claim One (Doc. 85 at 133–200).

33. They **DENY** the allegations under Claim Two (Doc. 85 at 200–21).

34. They **DENY** the allegations under Claim Three (Doc. 85 at 222–33).

35. They **DENY** the allegations under Claim Four (Doc. 85 at 234–41).

36. They **DENY** the allegations under Claim Five (Doc. 85 at 241–43).

37. They **DENY** all allegations and assertions that Knox is entitled to relief of any kind, leave to amend or supplement his Petitions, leave to conduct discovery, leave to develop facts, or leave to expand the state-court records in any way, including a federal-court evidentiary hearing.

38. And they **DENY** all allegations and assertions that Knox is entitled to equitable relief of any kind.

## STATEMENT OF THE CASE

Having answered the allegations in Knox's Second Amended Petition, Respondents now make the following statements about the facts and history of this case.

## I.    Background Facts

The Mississippi Supreme Court accurately summarized the facts at trial. Its written opinion published in Knox's direct review proceedings states:

> On October 22, 1998, Ella Mae Spears was scheduled to travel from Liberty to Fayette, Mississippi, to babysit the children of her niece, Guy Alice Spears Green. When Ms. Spears failed to arrive in Fayette as scheduled, Green contacted Spears's son, Albert McKnight, who, in turn, contacted Amite County Sheriff Gene McClendon. McKnight and McClendon then went to Spears's residence in Liberty.
>
> When they arrived at around 2 p.m., the back door of the house leading to the garage was closed but unlocked, and Spears could not be found. Her purse was on a table inside the house, and her car was in the carport. McClendon discovered dark stains on the floor of the carport which appeared to be a blood trail leading to the rear of Spears's car. When he could not locate the car keys, McClendon contacted the dealership from which the car was purchased and obtained a duplicate key, which was used to open the trunk. Inside was the deceased body of Spears, covered with a quilt. Autopsy results indicated that Spears's death was consistent with manual strangulation.
>
> After discovering the body, Chief Deputy Sheriff Donald Butler left the scene to interview people in the community to "develop a suspect." Phillip Brown gave him information that Steve Knox was involved in Ms. Spears's death. Butler and McClendon then began searching for Knox based on the description given to them by Brown.
>
> The officers found Knox walking on the side of a road approximately one-quarter of a mile from his parents' house, where Knox lived and which is located across a field from Spears's house. Butler questioned Knox about Spears, and Knox denied knowing her. Butler testified

that he then noticed some small "brownish reddish" spots on Knox's left thigh and decided to take Knox to the sheriff's station. While he was being "frisked," Knox broke away and attempted (unsuccessfully) to flee. In the patrol car Knox proclaimed his innocence and refused to speak to the investigators. At the station, Butler found a set of keys in Knox's back pocket, which were later determined to be Spears's missing house and car keys.

At approximately 6 p.m. on October 22, 1998, investigators went to Knox's parents' house and were given consent to search. There they found clothing belonging to Knox, including a shirt and a pair of jogging pants, which were stained with wet, "reddish brown" spots. The next day, Butler confronted Knox with the clothing.

Knox admitted that he owned the clothes, and he gave the following account. Knox said he woke up at approximately 7 a.m. on October 22 and went outside in a field to relieve himself. He said the next thing he remembered was waking up in the field about mid-morning with blood on his clothes. He then went to his grandfather's house nearby and went to the bathroom, where he became nauseated and then saw blood on his shirt, which he attempted to wash off. Knox said he could not remember how the blood got on his shirt. He then went to his own residence where he changed clothes.

When Butler asked Knox about the keys in his pocket, Knox said he did not remember how he got them, but that the jogging pants did not have pockets. He admitted to remembering putting the keys in the pocket of the blue jeans he was wearing at the time he was taken into custody. He continued to deny knowing Spears.

The Amite County Grand Jury returned an indictment against Knox in October, 1998, charging him with capital murder while in the commission of a robbery pursuant to Miss. Code Ann. § 97–3–19. Following a change of venue, Knox was tried September 27–29, 1999, in the Franklin County Circuit Court. The jury found that Knox killed Ella Mae Spears, without justification, while in the act of robbing her on October 22, 1998, and sentenced him to death.

Franklin County Circuit Judge Forrest A. Johnson entered the sentencing order on the jury verdict on September 29, 1999, and on October 1, 1999, transferred the case back to the Amite County Circuit Court. On October 7, 1999, Knox filed a Motion for a New Trial, or, In the Alternative, for Judgment Notwithstanding the

Verdict. The Amite County Circuit Court denied the motion. Knox timely filed his notice of appeal.

*Knox v. State*, 805 So. 2d 527, 529–30 (Miss. 2002) (*Knox I*).

Its written opinion published in Knox's first PCR proceedings reads:

On October 22, 1998, Ella Mae Spears was scheduled to travel from Liberty to Fayette, Mississippi, to babysit the children of her niece, Guy Alice Spears Green. When she failed to arrive as scheduled, her family contacted the Sheriff's Office. The authorities went to her house, where they found her body locked in the trunk of her car. Autopsy results indicated that her death was consistent with manual strangulation. Later that day Steve Knox was apprehended in the area of Ella Mae Spears's house with her missing house and car keys in his back pocket. A search of Knox's parents' home yielded a shirt and jogging pants which were stained with wet, reddish brown spots. Knox could not remember how he came to be wearing bloody clothing and how the keys came to be in his back pocket. He stated that he woke up on the morning of October 22, went outside to a field, and then woke up in the field some time later with blood on his clothes and no memory of what had happened.

*Knox II*, 901 So. 2d at 1260.

These fact recitations are presumed correct under section 2254(e)(1), and Knox does not show by clear and convincing evidence that either recitation is incorrect. *See Sumner v. Mata*, 449 U.S. 539, 545–47 (1981) (ruling that AEDPA requires deference be given "by federal courts to factual determinations of all state courts" based on their review of state court records); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) (concluding that AEDPA's presumption of correctness applies to express findings and "those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact"). Respondents

expressly oppose any factual assertion that Knox makes that is not directly supported by or consistent with the state court records because he fails to overcome section 2254(e)(1)'s factual standard nd does not try to meet section 2254(e)(2)'s stringent requirements.

## II.   Procedural History

In October 1998, the Amite County Grand Jury returned an indictment that charged Knox with one count of felony capital murder for the killing of Ms. Ella Mae Spears during the commission of a robbery. (Doc. 72–1 at 001). Knox moved for and the Amite County Circuit Court granted a change of venue to Franklin County, Mississippi. (Doc. 72–1 at 018–022; 032). He was tried, convicted, and sentenced to death in September 1999. (Doc. 72–1 at 194–95).

On September 29, 1999, Knox's jury returned its penalty-phase verdict in proper form. The penalty-phase verdict read:

> We, the Jury, unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder:
>
> 1.   That the Defendant actually killed Ella Mae Spears
>
> Next, We, the Jury, unanimously find that the aggravating circumstance(s) of:
>
>> 1.    The capital offense was committed while the Defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, in that Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had in fact taken her car keys from the premises.

2. The capital offense was especially heinous, atrocious or cruel in that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravating before death, or that a lingering or torturous death was suffered by the victim, in that Steve Knox bludgeoned and choked Miss Spears and stuffer her into the trunk of her car while she may have still been alive

exist beyond a reasonable doubt and are sufficient to impose the death penalty, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we further find unanimously that the defendant should suffer death.

(Doc. 72–1 at 195–96). Knox appealed.

In his automatic appeal, the Mississippi Supreme Court considered these assignments of error:

I. The trial court erred in denying Knox's Motion for Directed Verdict or Judgment Notwithstanding the Verdict as to the Capital Murder and the Underlying Felony of Robbery.

II. Whether the trial court erred in granting Instruction S-8 regarding the "Especially Heinous, Atrocious or Cruel" aggravating factor.

*Knox I*, 85 So. 2d at 531–34. The state supreme court also considered the proportionality of Knox's death sentence under Mississippi Code Annotated section 99-19-105(3). *Id.* at 534. Based on its review, the Mississippi Supreme Court affirmed Knox's conviction and sentence. *Id.* Knox then filed a petition for certiorari in the Supreme Court of the United States. The Supreme Court denied his petition on June 28, 2002. *Knox v. Mississippi*, 536 U.S. 965 (2002). His one-year limitations period for filing an application for habeas relief started to run the same day. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("For petitioners

who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari.").

In February 2003, Knox filed his initial PCR application in the Mississippi Supreme Court that raised these six claims:

I. The trial court's limiting instructions on the statutory aggravator especially heinous, atrocious and cruel was not supported by the evidence adduced at trial and further the instruction was constitutionally infirm in that it was vague and overbroad.

II. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel within the meaning of *Strickland v. Washington*.

III. The trial court should have directed a verdict in favor of Knox on the charge of capital murder at the close of the State's case-in-chief and after the State finally rested in the guilt-innocence phase of the trial as the evidence was insufficient to sustain a verdict of guilty to the underlying felony of robbery.

IV. Mississippi's death penalty statutes are unconstitutional as applied to the Petitioner and as a result, his Eighth Amendment rights under the United States Constitution and the corresponding provisions of the Mississippi Constitution were violated.

V. The sentence rendered against Petitioner Steve Knox is disproportionate in violation of the Eighth and Fourteenth Amendments to the United States Constitution and the corresponding portions of the Mississippi Constitution.

VI. Petitioner was denied his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Federal Constitution and Mississippi law due to the cumulative effect of the errors at his capital trial.

*Knox II*, 901 So. 2d at 1259–60. In June 2003, he amended his PCR application by adding these six claims:

> VII. The Petition was denied his Sixth Amendment right to the effective assistance of counsel at the guilt and sentencing phases of the trial within the meaning of *Strickland v. Washington*, and corresponding portions of the Mississippi Constitution.
>
> VIII. The aggravating factors elevating the charge to a capital offense were not included in Knox's indictment and therefore his death penalty must be vacated.
>
> IX. Petitioner's death sentence violates the Sixth and Eighth Amendments as the jury found the aggravating circumstances in the disjunctive.
>
> X. The sentencing jury was improperly instructed.
>
> XI. Admission of the photograph of the deceased taken prior to her death was error.
>
> XII. Petitioner asserts that his death sentence was disproportionately imposed.

*Id.* at 1260.

The Mississippi Supreme Court reviewed his twelve claims and denied his first PCR application. It did so after ruling his claims procedurally barred, without merit, or both. *See id.* at 1260–72. Once again, Knox filed a petition for certiorari in the U.S. Supreme Court. And once again, the Supreme Court denied his petition. *Knox v. Mississippi*, 546 U.S. 1063 (2005).

Before his second petition for certiorari was denied, Knox filed his original Petition (Doc. 9) on October 13, 2005. In it, he claimed that: (1) trial counsel was ineffective during the guilt phase; (2) trial counsel was ineffective for failing to

challenge the prosecutor's race neutral reasons for peremptory strikes; (3) the jury was improperly instructed on the especially heinous, atrocious, or cruel aggravating circumstance; (4) trial counsel was ineffective for failing to conduct an adequate mitigation investigation; (5) the State's failure to include the aggravating factors in the indictment violates due process; (6) his sentence of death is unconstitutional because the jury found the aggravating circumstances in the disjunctive; and, (7) the State's proof of the especially heinous, atrocious, or cruel aggravating circumstance was legally insufficient. (Doc. 9). Knox's one-year limitations period expired on October 21, 2005. *See Gonzalez*, 565 U.S. at 150. And by July 2008, this case was fully briefed.

But then in March 2012, Knox moved to stay the proceedings based on issues of state law. (Doc. 42). The Court first stayed these proceedings the following March. (Doc. 44). One reason was:

> that the Mississippi Supreme Court is considering petitions for leave to file successive post-conviction petitions filed by three people who have capital habeas cases pending before this Court. *Grayson v. State*, 2012-DR-59; *Walker v. State*, 2012-DR-102; and *Le v. State*, 2013-DR-00327. Each of these cases seeks an opportunity to exhaust claims in state court that were defaulted by post-conviction counsel. Grayson has been fully briefed and submitted to the court; the briefing in Walker should be completed shortly. A grant of relief in any of those cases might signal the Mississippi Supreme Court's willingness to consider similar claims in other cases.

(Doc. 44). Then in October 2013, eight years after Knox filed his Initial Petition, the Court granted Knox leave of court and stayed these proceedings until thirty days after Knox's successive state PCR application was adjudicated. (Doc. 47).

In June 2014, about eight months later, Knox filed his second PCR application in the Mississippi Supreme Court. This time Knox claimed appointed counsel in *Knox II* was ineffective for failing to claim: (1) trial counsel was ineffective during the guilt phase for failing to challenge the State's DNA and fingerprint experts' testimony and for failing to investigate and present a defense; (2) trial counsel was ineffective for failing to challenge the prosecutor's race neutral reasons for peremptory strikes; and (3) trial counsel was ineffective at the sentencing phase for failing to conduct an adequate mitigation investigation and for failing to present available mitigating evidence to the jury. (Doc. 75–1). Three more months passed when Knox moved to stay his successive state PCR proceedings and requested leave to conduct discovery. (Doc. 75–2 at 12–17). His requests were granted in September 2016. (Doc. 75–2 at 122–23). Over the next four years, Knox amended his successive PCR application, twice (Docs. 75–2 at 124–252; 75–6 at 332–450, 75–7 at 1–132). Ultimately, he presented five PCR IAC claims that were based these underlying issues:

> CLAIM ONE:  Batson Claim - - Steve Knox was denied his Sixth Amendment right to affective assistance of counsel when counsel failed to challenge the State's proffered nondiscriminatory reasons for using the majority of the prosecution's

peremptory challenges to exclude African-Americans from the jury.

CLAIM TWO: Steve Knox was denied his Sixth Amendment right to effective assistance of counsel at the penalty phase of his trial because is [sic] trial attorneys failed to conduct any meaningful investigation to discover mitigating evidence that could be presented at the sentencing hearing

CLAIM THREE: Steve Knox was denied his Sixth Amendment right to the effective assistance of counsel at the guilt phase of trial because trial counsel failed to investigate, seek discovery, and present any defense at all, when he could have challenged the State's case and created a reasonable doubt that Petitioner committed this crime.

CLAIM FOUR: The State should be barred from seeking the death penalty against individuals such as Steve Knox who suffer from a severe mental disorder or disability, and traumatic brain injuries that have affected their lives and that substantively reduces their culpability.

CLAIM FIVE: Petitioner is entitled to relief in this case based on cumulative error.

(Doc. 75–7 at 3–132).

His Second Amended PCR Application also alleged federal habeas counsel had discovered the information below during these habeas proceedings:

1. A February 23, 1999 letter that was written and sent to one of Knox's trial attorneys by an anonymous author, who claimed another anonymous person murdered Ms. Spears then framed Knox for it;

2. A hearsay affidavit executed by Debra Sabah Press, who, in 1999, was one of the Mississippi Post-Conviction Counsel Project Directors;

3. Twelve pretrial motions that trial counsel drafted with help from the directors of the Mississippi Post-Conviction Project;

4. A newspaper article, which, according to Knox, revealed a third party was arrested for attempting to break and enter into Ms. Spears's home;

5. The DNA test results that the parties possessed months before trial;

6. An affidavit executed Peter D'Eustachio, Ph.D., which contained speculation about missing information from the State's DNA evidence and potentially corrupted blood samples;

7. Knox's Poughkeepsie, New York City School District school records;

8. The CV of Fern Aefsky, Ed.D., an Assistant Superintendent for Pupil Services in the Poughkeepsie, New York City School District, and an affidavit that indicated what she believed Knox's school records indicated;

9. Knox's adult and juvenile probation records;

10. Affidavits executed by five members of Knox's family;

11. Knox's social security records;

12. The CV of Dr. Marc Zimmerman, a psychologist, and an affidavit that stated Knox should be evaluated by a neuropsychologist;

13. Juror questionnaires from trial; and

14. An affidavit executed by Robert Ryan, former Mississippi Office of Capital Post-Conviction Counsel Director, which contained statements about Ryan's performance in another state prisoner's PCR proceedings.

(Doc. 75–6 at 394–400).

On March 10, 2022, the Mississippi Supreme Court denied Knox's Second Amended PCR Application and his requests for relief. (Doc. 75–10 at 295–99). Knox could obtain relief only for claims (a) procedurally alive and (b) substantially showing the denial of a state or federal right. (Doc. 75–10 at 296). But none of the claims were procedurally alive. Mississippi's statutory time and successive-writ bars precluded review of all Knox's claims. (Doc. 75–10 at 296, 297, n. 2, 299). The state's statutory res judicata bar applied to his ineffective assistance of trial counsel claims. (Doc. 75–10 at 297). The statutory waiver, different theories, and res judicata bars precluded review of his cumulative-error and proportionality claims.

(Doc. 75–10 at 298–99). And Knox failed to show any of his claims could be reviewed under an exception to the applicable statutory bars. (Doc. 75–10 at 297, 299). So state law required the state supreme court to deny the Second Amended PCR Application and Knox's requests for relief.

A few months later, in July 2022, Knox returned from state court and informed the Court that his successive PCR proceedings had concluded. (Doc. 52). The Court lifted the stay in September 2022 and ordered Knox to amend his petition by December 12, 2022. (Doc. 56). He did on March 27, 2023. (Doc. 67).

In his Amended Petition, Knox says the Writ should issue for:

Ineffective Assistance of Capital Post-Conviction Counsel, "PCCR-IAC"

Guilt Phase Ineffective Assistance of Trial Counsel, Hereinafter, "GP-IAC"

Penalty Phase Ineffective Assistance of Trial Counsel, "PP-IAC"

Batson/J.E.B. Claims Based on the Improper Exclusion of Potential Jurors on the Basis of Race and Gender

Defective Jury Instructions/Sufficiency of Proof

(Doc. 67 at 17–97).

As in other pleadings, Knox incorporated a motion into this initial Amended Petition. He moved the Court for a second *Rhines*[6] stay. (Doc. 67 at 97–103). The Court denied this request because Knox had not shown good cause to warrant a stay and his allegations about unexhausted claims were plainly meritless.

---

[6] *Rhines v. Weber*, 544 U.S. 269 (2005).

(Doc. 79 at 22). It reached the same conclusion when denying Knox's Motion for Reconsideration. (Doc. 83 at 11).

Both times, the Court expressly ordered Knox to a "Second Amended Petition which omits his unexhausted claims…." (Docs. 79 at 22; 83 at 11). The Court made clear that "Knox may not otherwise amend his Petition." (Docs. 79 at 22; 83 at 11). And it warned: "If Knox fails to timely file a Second Amended Petition omitting the unexhausted claims, then the Court may dismiss the entire Amended Petition without additional notice." (Docs. 79 at 22; 83 at 11).

In June 2023, nearly one year after returning from state court, Knox filed a two hundred, forty-nine-page Second Amended Petition (Doc. 85) that dwarfed his initial Amended Petition (Doc. 67 at 1–97, 103–04). Aside from the extreme variance in length, his Second Amended Petition raised a cumulative-error claim (Doc. 85 at 241–43) that was not presented in his initial Amended Petition (Doc. 67). Knox also attached seventy exhibits (Docs. 85-1–70) to his Second Amended Petition—seventy more than what was attached to his initial Amended Petition.

Respondents have provided the state-court records of Knox's direct and collateral review proceedings (Docs. 72–75), and now answered the allegations in the Second Amended Petition.

## HABEAS RULE 5(b) STATEMENTS

Respondents now make the following statements consistent with Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).

**Statute of Limitations.** The newly asserted Claims One and Five in Knox's Second Amended Petition are untimely. There is no question that AEDPA's one-year time limitations period, *see* 28 U.S.C. § 2244(d)(1), expired long before Knox filed his Second Amended Petition. Claims One and Five do not qualify for relation-back under Federal Rule of Civil Procedure 15(c). So Claims One and Five are time-barred as addressed below.

**Exhaustion.** The newly asserted Claims One, Two, Three, and Five in Knox's Second Amended Petition were presented in *Knox III* as underlying issues to PCR IAC claims. Claims One, Two, Three, and Five do not meet AEDPA's exhaustion requirement because they were not fairly presented in *Knox III*. AEDPA's total exhaustion requirement, *see* 28 U.S.C. § 2254(b), now bars federal review as explained below.

**Procedural Default.** All the claims in the Second Amended Petition are subject to the procedural default doctrine. The procedural default doctrine applies to technically exhausted claims as well as those denied in state court on state-law grounds that are adequate to support the decision and independent of federal law. Knox's newly asserted claims became technically exhausted when the decision in

*Knox II* became final—when Knox no longer had an available state-court remedy for his newly-asserted claims. And in *Knox III*, the state supreme court expressly relied on two, and in one instance three, adequate and independent state law grounds to support its decision to deny Knox post-conviction relief. Knox's defaults bar federal review of his claims as shown below.

**Non-retroactivity Doctrine.** The newly asserted claims in the Second Amended Petition do not appear to be subject to and barred by the non-retroactivity doctrine.

## I.    AEDPA's Standards of Review.

To start, Knox petitions the Court to issue the Writ under 28 U.S.C. § 2254. AEDPA governs review of Knox's Initial and Second Amended Petitions (Docs. 9, 85). *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding habeas petitions filed after AEDPA's effective date are subject to AEDPA's amendments). "'Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, … and "to further the principles of comity, finality, and federalism…."' *Id.* at 206 (internal citations omitted). "'[T]o curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law[,]'" Congress "place[d] 'new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the

merits in state court.'" *Id.* (citing and quoting *Williams v. Taylor*, 529 U.S. 362, 404, 412 (2000)).

AEDPA prevents a federal court from granting a state prisoner habeas relief for any claim "adjudicated on the merits" in state court unless the prisoner establishes that the state court's adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1)'s "contrary to" clause, the prisoner must carry the heavy burden of showing "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or ... decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 569 U.S. 351, 357 n. 2 (2013) (internal quotation marks and citation omitted). A federal court may grant relief under section 2254(d)(1)'s "unreasonable application" clause, "'if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams*, 529 U.S. at 413). A state court's application of clearly established federal law must be objective unreasonable to warrant relief

under section 2254(d)(1)'s "unreasonable application" clause. *Id.* (citing *Williams*, 529 U.S., at 409; *Bell v. Cone*, 535 U.S. 658, 699 (2002); *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002)). "[E]ven 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014). The state court's determinations of law and fact must be "so lacking in justification" that error is "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

And not just any Supreme Court decision will do under section 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (internal quotation marks and citations omitted). If no Supreme Court case addresses "the specific question presented" then "the state court's decision [cannot] be contrary to any holding from th[at] Court." *Woods*, 575 U.S. at 317 (internal quotation marks and citations omitted). What's more, clearly established federal law refers to Supreme Court cases that existed when "the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011); *see Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.").

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely

established by this Court." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 574 U.S. 21, 23 (2014)). Circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see Lopez v. Smith*, 574 U.S. 1, 6 (2014) (explaining that if there is no Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim). And "state court decisions, treatises, or law review articles" do not constitute clearly established federal law. *See Cuero*, 138 S. Ct. at 8.

Under section 2254(d)(2), a state prisoner must shoulder an even heavier burden. "[A] determination of a factual issue made by a state court shall be presumed to be correct," and the prisoner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted).

Besides that, federal courts must presume a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Wiliams*, 568 U.S. 289, 301 (2013); *see, e.g.*, *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits."). And it cannot be forgotten that when a state court has adjudicated the merits of a prisoner's claim, then a federal court's review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

But there's more. "While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction." *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). "Instead, Congress left intact the equitable discretion traditionally invested in federal courts by preexisting habeas statutes." *Id.* So even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." *Id.* (citations omitted). "And whatever else those inquiries involve, they continue to require federal habeas courts to apply th[e] [Supreme] Court's precedents governing the appropriate exercise of equitable discretion—including *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]. *Id.* "Today, then, a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA." *Id.* "But to *grant* relief, a court must find that the petitioner has cleared both tests." *Id.*

Applying AEDPA's standards of review to the newly asserted claims in the Second Amended Petition, Knox is not entitled to federal relief from his capital-murder conviction or sentence of death. Respondents briefly address Knox's newly asserted claims and the reasons for denying Knox relief, below.

## II.     Knox cannot obtain federal relief for Claim One.

To begin, Respondents deny the allegations under Claim One. Knox claims that he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed to challenge the State's nondiscriminatory reasons supporting the peremptory strikes that it used to remove potential jurors from the jury. (Doc. 85 at 133–200). But Knox does not attempt to show the Mississippi Supreme Court's application of *Strickland v. Washington*, 466 U.S. 668 (1984) in *Knox III* was contrary to, or an unreasonable application of, clearly established federal law. Nor does he show the state court's decision was based on an unreasonable determination of the facts based on the information that he presented in *Knox III*.

Rather than do that, Knox attempts to show he is entitled to federal habeas relief for violating *Batson v. Kentucky*, 476 U.S. 79 (1986) and *J.E.B. v. Alabama*, 511 U.S. 127 (1994). In fact, he expressly "contends that the State violated the Equal Protection Clause of the Fourteenth Amendment because black or female jurors were excluded based on 'nondiscriminatory reasons' that were equally applicable to a similarly situated white or male juror who

was not excluded." (Doc. 85 at 135). Even though he never raised a freestanding claim of racial or gender discrimination in jury selection at any time in his state-court proceedings, Knox implicitly asks this Court to consider Claim One in his Second Amended Petition de novo.

But first, the Mississippi Supreme Court ruled Knox's PCR IAC claim that trial counsel was ineffective for failing challenge the State's reasons for the peremptory strikes it used against black and female members of the jury venire under *Batson* and *J.E.B.* was procedurally barred by state law. The state supreme court's March 10, 2022 En Banc Order reads:

> Now before the Court is Steve Knox's Second Amended Motion for Leave to File Successor Petition for Post-Conviction Relief. Knox was convicted of capital murder in Amite Count in 1999 for the strangulation death of Ella Mae Spears committed during the commission of a robbery, and he was sentenced to death. Knox's direct appeal was affirmed in *Knox v. State*, 850 So. 2d 527 (Miss. 2002).[1] Knox sought post-conviction relief, which this Court denied. *Knox v. State*, 901 So. 2d 1257 (Miss. 2005).
>
> In Knox's second petition for post-conviction relief, he asks this Court for leave to proceed in the trial court on the grounds that he received ineffective assistance of trial counsel and ineffective assistance of first post-conviction counsel, that the State should be barred from seeking the death penalty against him due to his sever mental disorder and traumatic brain injury, and that cumulative error warranted relief. In response to Knox's petition, the State argues that Knox's claims are procedurally barred.
>
> While direct appeal is "the principal means of reviewing all criminal convictions and sentences," the purpose of post-conviction proceedings is to provide prisoners with a limited procedure "to review those objections, defenses, claims, questions, issues or errors which in practical reality could not or should not have been raised at trial or on direct appeal." Miss. Code Ann. § 99-39-3(2)

(Rev. 2020). Pursuant to Mississippi Code Section 99-39-27(5) (Rev. 2020), leave to proceed should only be granted if Knox's petition, exhibits, and prior record show that the claims presented are not procedurally barred under Mississippi Code Section 99-29-21 (Rev. 2020), and they "present a substantial showing of the denial of a state or federal right[.]"

Knox must also demonstrate that his claims should be excepted from the procedural bars. First, Mississippi Code Section 99-39-5(2)(b) (Rev. 2020) provides, in part, that motions for post-conviction relief in capital cases must be brought within one year after the conviction. Knox was convicted in 1999, and the mandate from his direct appeal issued in February 2002. Knox's current motion was filed well outside of the one-year period, so he must show that his claims are excepted from the procedural bar. Additionally, as this is Knox's second motion seeking post-conviction relief, this motion is subject to the successive-writ bar unless an applicable exception applies. Miss. Code Ann. § 99-39-27(9) (Rev. 2020). Next, Knox is prohibited by the procedural bar of *res judicata* from raising claims that have been addressed already in prior proceedings. Miss. Code Ann. § 99-39-21(3) (Rev. 2020). Similarly, the litigation of an issue at trial and on direct appeal of a specific legal theory constitutes waiver of all other legal theories "which could have been raised under said factual issue" and will be procedurally barred "absent a showing of cause and actual prejudice." Miss. Code Ann. § 99-39-21(2) (Rev. 2020). Lastly, the failure by a prisoner to raise an objection, defense, claim, question, issue or error "which were capable of determination at trial and/or on direct appeal … shall constitute a waiver … and shall be procedurally barred" unless this Court finds cause and actual prejudice. Miss. Code Ann. § 99-39-21(1).

After a rule review of Knox's motion and supporting documents, we find that the claims he raises are procedurally barred without applicable exceptions.[2]

## I.    Ineffective Assistance of Counsel

Knox raises several claims of ineffective assistance of counsel by his trial counsel and his first post-conviction relief counsel. At trial, Knox was represented by Gus Sermos and Leonard Rosenthal. He claims that they were ineffective for failing to investigate mitigating evidence to present at his sentencing, for

failing to challenge the State's proffered nondiscriminatory reasons for striking Black venire members and female venire members, and for failing to present any defense on Knox's behalf. He also argues that Robert Ryan, his first post-conviction relief counsel, was ineffective for superficially raising a claim of ineffective assistance of trial counsel without conducting any investigation into mitigation evidence and not presenting the Court with any evidence that would have justified granting the first motion for post-conviction relief.

Ineffective-assistance-of-counsel claims in capital cases are subject to the procedural bars unless the claims meet an exception to the procedural bars. *Grayson v. State*, 118 So. 3d 118, 125 (Miss. 2013). Here, Knox's claims of ineffective assistance of counsel do not warrant an exception to the procedural bars. The same ineffective-assistance-of-trial counsel claims were raised by Knox's first post-conviction relief counsel and addressed by this Court in *Knox*, 901 So. 2d at 1262-66. While this Court has recognized the right to effective assistance of post-conviction relief counsel in death-penalty cases, *Grayson*, 118 So. 3d at 126, Knox has failed to demonstrate constitutionally deficient performance by original post-conviction relief counsel.

….

---

n. 1    This Court unanimously found that the elements of robbery were clearly established and proved beyond a reasonable doubt. *Knox* [(*I*)], 805 So. 2d at 532. This Court also found that the proof demonstrated that the victim suffered a slow and painful death prior to being stuffed in the trunk of her car, thereby warranting a jury instruction on the aggravating circumstance that the victim's murder was especially heinous, atrocious, or cruel. *Id.* at 533–34.

n. 2    On June 24, 2014, Knox filed a Motion for Leave to file Successive Petition for Post-Conviction Relief, and on November 14, 2018, he filed a First Amended Motion for Leave to File Successor Petition for Post-Conviction Relief. These prior motions are superseded by the instant motion; therefore, these motions are hereby dismissed.

(Doc. 75–10 at 295–98).

**A.    AEDPA's time bar precludes review of Claim One.**

The relation back doctrine cannot save Claim One from AEDPA's time bar under 28 U.S.C. 2244(d)(1). Amendments qualify for relation back only if the original and amended pleadings both arise out of the same "'conduct, transaction, or occurrence.'" *See Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(c)(2)). That said, the "same 'conduct, transaction, or occurrence'" is not an implicit reference to "the same 'trial, conviction, or sentence.'" *See Mayle*, 545 U.S. at 655, 664. Amendments qualify for relation back only if "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* at 664.

Claim One and a claim in Knox's original Petition must be tied to a common core of objective facts before Claim One may be considered timely. Knox raised all the newly asserted claims in his Second Amended Petition, including Claim One, more than seventeen years after filing his original Petition (Doc. 9) and years after October 21, 2005, when his limitations period expired. So there is no question that Claim One is untimely. Unless it qualifies for relation back under Rule15(c)(2), Claim One is time-barred. *See id.* at 662–63; Habeas R. 12.

Claim One does not qualify for relation back even though Knox raised an IATC claim for failing to challenge the state's race-neutral reasons for peremptory strikes used to remove four black jurors from the venire in his

original Petition. The essential facts that support Claim One differ in time and type from those appearing in three pages of Knox's original Petition and supporting his second claim that alleged trial counsel was ineffective for failing to challenge the prosecutor's race neutral reasons for peremptory strikes. (Doc. 9 at 11–14). Some of the core predicate supporting Claim One did not exist before the proceedings in *Knox II*, years after Knox's capital-murder trial. The Affidavit of Robert Ryan (Doc. 85-32) is a prime example. Besides that, Claim One in Knox's Second Amended Petition rests on facts related to Knox's claim that the State used some peremptory strikes to remove female jurors from venire when Knox did not assert gender discrimination in jury selection in his original Petition. Claim One's essential facts differ in time and type from the core predicate of the claims in Knox's original Petition *See id.* at 659–60 (citing *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 580–81 (1945)). Claim One is not tied to any claim in Knox's Initial Petition by a common core of operative facts.

Claim One should be denied. Knox raised Claim One years after AEDPA's statute of limitations had expired. Claim One asserts a legal theory that was not suggested in Knox's original Petition. Much of the factual basis supporting Claim One did not exist until the proceedings in *Knox II* began. Claim One is not tethered to any claim in Knox's original Petition by a common core of operative facts. And because it is not, Claim One does not qualify for

relation back under Rule 15(c)(2). Section 2244(d)(1) bars review of Claim One. For this reason, the Court should deny Claim One.

## B. Claim One does not meet AEDPA's exhaustion requirement.

Knox did not properly exhaust Claim One in *Knox III* because he did not fairly present that claim to the Mississippi Supreme Court. "The law 'requires a state prisoner to present the state courts with the *same claim* he urges upon the federal courts.'" *See Russell v. Denmark*, 68 F.4th 252, 269 (5th Cir. 2023) (brackets omitted) (quoting *Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971))). To fairly present it, Knox had to present Claim One to the Mississippi Supreme Court in a manner consistent with state law. *See id.* at 269–70 (quoting *Lucio*, 987 F.3d at 464, and citing 28 U.S.C. § 2254(b)(1)(A)). "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation and to do so *consistent with their own procedures....*" *Shinn v. Ramirez*, 596 U.S. 366, 379 (2023) (emphasis added) (internal citations, punctuation, and some brackets omitted).

Knox did not properly exhaust Claim One in *Knox III*. He could not because Knox had no available state-court remedies when the decision in *Knox II* became final. State law required the state supreme court to dismiss Claim One. *See id.* at 378 (quoting *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006)); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982)). Claim

One was technically exhausted and procedurally defaulted before Knox presented

it in *Knox III*. *See id.* (quoting *Davila v. Davis*, 582 U.S. 521, 528 (2017)).

So rather than present Claim One to the state supreme court in *Knox III*,

Knox presented a state-law PCR IAC claim based on an alleged failure to assert

an IATC claim for failing to challenge the state's race-neutral and gender-neutral

reasons supporting its strikes against black and female members of the venire.

But PCR IAC is not a claim for federal habeas relief. 28 U.S.C. § 2254(i); *see*

*Martinez v. Ryan*, 566 U.S. 1, 17 (2012). There is no federal constitutional right to

post-conviction review or to appointed counsel in state PCR proceedings.

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455

U.S. 556 (1982); *Ross v. Moffitt*, 417 U.S. 600 (1974); *Boyd v. Dutton*, 405 U.S. 1, 7,

n. 2 (1972); *Johnson v. Avery*, 393 U.S. 483, 488 (1969)). Post-conviction review "is

not part of the criminal proceeding itself, and it is in fact considered to be civil in

nature." *Id.* at 556–57 (citing *Fay v. Noia*, 372 U.S. 391, 423–24 (1963)).

Knox did not present Claim One to the Mississippi Supreme Court in *Knox*

*III*. Claim exhaustion "require[s] a state prisoner to present the state courts with

the *same claim* he urges upon the federal courts." *Picard*, 404 U.S. at 276

(emphasis added). Knox presented PCR IAC claims to the Mississippi Supreme

Court in *Knox III*. He did not present a freestanding IATC claim based on a failure

to raise a racial–and–gender–bias–in–jury–selection claim. A PCR IAC claim is

different from an IATC claim. A PCR IAC claim is a state-law claim, *see Grayson*, 118 So. 3d at 125–26, not a claim for federal habeas relief, *see* 28 U.S.C. § 2254(i).

PCR IAC claims are based on a different legal theory from IATC claims. Under state law, prisoners who establish PCR IAC claims show their first PCR applications and proceedings were merely a sham. *Grayson*, 118 So. 3d at 126. And PCR IAC claims do not challenge a prisoner's criminal proceedings. PCR IAC claims are a type of claim that attacks a state-court "proceeding collateral to the detention and not the detention itself." *Kelly v. Cockrell*, 72 F. App'x 67, 78 (5th Cir. 2003) (quoting *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); citing *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987)). Besides that, PCR IAC claims are established by facts that differ in time and type from those necessary to establishing IATC claims, in particular, facts that concern appointed counsel's efforts in their clients' first PCR proceedings.

And the fact that Claim One was an underlying issue to one of the five PCR IAC claims that Knox presented in *Knox III* is inconsequential to AEDPA's exhaustion requirement. Clearly established federal law holds that "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Knox was required to present Claim One to the state supreme court before presenting it to this Court. *See Picard*, 404 U.S. at 276. And he needed to fairly present Claim One to the Mississippi Supreme Court. To fairly present it, Knox had to raise Claim One to the state supreme court "in a procedurally correct

manner" according to state law. *See Carty*, 583 F.3d at 254 (quotation marks and citations omitted). But he did not.

Knox presented Claim One as a PCR IAC claim, hoping to avoid the state's statutory bars to post-conviction review. But federal law required him to present the Mississippi Supreme Court with the *same claim* that he now urges on this Court. *See Russell*, 68 F.4th at 269 (brackets omitted) (quoting *Lucio*, 987 F.3d at 464 (quoting *Picard*, 404 U.S. at 276)). It cannot be said that Knox gave the Mississippi Supreme Court a fair opportunity to pass on Claim One when he presented that claim as an underlying issue to a state-law PCR IAC claim. *See id.* Knox may not obtain relief for Claim One because that claim does not meet AEDPA's exhaustion requirement. *See Russell*, 68 F.4th at 269–70 (citing *Nickleson v. Stephens*, 803 F.3d 748, 752 (5th Cir. 2015)). And because he did not properly exhaust Claim One, Knox may not obtain relief for it. So this Court should deny Claim One.

## C.    The procedural default doctrine bars review of Claim One.

Additionally, the Court should deny Claim One because the procedural default doctrine bars review of that claim and Knox does not try to excuse or overcome his defaults. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g.*, *Spicer*

38

*v. Cain*, No. 18–60791, 2021 WL 4465828, *3 (5th Cir. Sept. 29, 2021).'"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Id.* (quoting *Coleman*, 501 U.S. at 731–32). The adequate and independent state-law ground rule prevents state prisoners, like Knox, from "'avoid[ing] the exhaustion requirement by defaulting their federal claims in state court.'" *See Sones*, 61 F.3d at 416, n. 8 (quoting *Coleman*, 501 U.S. at 732).

In *Knox III*, Knox raised several PCR IAC claims. One was based on an alleged failure to assert an IATC claim for failures in challenging the State's race-neutral and gender-neutral reasons for the peremptory strikes it used to remove black and female members from the venire. The state supreme court expressly denied that claim after determining the UPCCRA's statutory bars—including the time, waiver, and successive-writ bars—precluded review. (Doc. 75-10 at 299). Now Knox seeks relief for Claim One, which he presents as a freestanding IATC claim based on failures to challenge the State's use of its peremptory strikes under *Batson v. Maryland* and *J.E.B. v. Alabama*. (Doc. 85 at 133–200).

That said, the adequate and independent state-law ground rule does not absolutely bar federal review. Federal courts may review a habeas claim despite an adequate and independent state-law ground if: (a) overlooking the claim will

result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford v. Georgia*, 498 U.S. 411 423–24 (1991); or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). The burden of overcoming or excusing a procedural default that results from a state court's reliance on an adequate and independent state law ground is a burden that state prisoners must carry. *See Sones*, 61 F.3d at 416–18.

But Knox does not try to overcome or excuse the procedural defaults that bar federal review of Claim One. He does not try to rebut the presumption that Mississippi's time and successive-writ bars are adequate and independent state-law grounds that preclude review of Claim One. Nor does he try excuse any procedural default that bars review of Claim One with a showing of good cause and actual prejudice. And he does not try to show federal review of Claim One is necessary to prevent a fundamental miscarriage of justice.

The Court should deny Claim One because the procedural default doctrine bars review of that claim. Fifth Circuit precedent holds all three bars are adequate and independent state procedural law grounds that will preclude federal review.[7] *See Spicer*, 2021 WL 4465828, at *3 (recognizing and applying

---

[7] The Fifth Circuit expressly ruled the successive-writ bar under Mississippi Code Annotated section 99-39-27(9) is an adequate and independent state-law ground that will

prior circuit precedent that holds Mississippi's time and successive-writ bars are adequate and independent state law grounds that will preclude federal review) (citing *Johnson v. Puckett*, 176 F.3d 809, 815 n. 3 (5th Cir. 1999) (time bar of § 99-39-5(2)(B)); *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998) (successive bar of § 99-39-23(6)); *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) ("§ 99-39-21(1) does contain an independent state procedural bar").[8]

Alternatively, and should the Court disagree that the adequate and independent state-law grounds rule bars review of Claim One, the procedural default doctrine bars review of Claim One for another reason. Claim One is, and has been, a technically exhausted claim since the decision in *Knox II* became final—when Knox exhausted all his available state-court remedies. A claim that would be dismissed in state court for its procedural failures is "'technically exhausted because, in the habeas context, state-court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability.'" *Shinn*, 596 U.S. at 378 (quoting *Ngo*, 548 U.S. at 92–93). Federal

---

preclude federal review in section 2254 actions involving Mississippi prisoners. *See Spicer*, 2021 WL 4465828, at * 3 n. 4 (citing *Lott v. Hargett*, 80 F.3d 161, 164–65 (5th Cir. 1996); *Bell v. Miss. Dep't of Corrs.*, 290 F. App'x 649, 655–56 (5th Cir. 2008); *Chancellor v. Mississippi*, 129 F. App'x 878, 879–80 (5th Cir. 2005)).

[8] Aside from ruling the time and successive-writ bars adequate and independent state law grounds that precluded review of other claims, the Fifth Circuit affirmed this Court's conclusion in *Johnson v. Puckett*, that the procedural default doctrine prohibited review of a *Batson* claim that the Mississippi Supreme Court's denied because it was subject to section 99-39-21(1)'s waiver bar. *Johnson*, 176 F.3d at 823.

courts must apply the procedural default doctrine to technically exhausted claims like Claim One. *See id.* (quoting *Davila*, 582 U.S. at 528).

There is no question that the procedural default doctrine bars review of Claim One. The state supreme court's decision to deny relief in *Knox III* for the state-law PCR IAC claim based on trial counsel's alleged failure to challenge the State's reasons for peremptory strikes against black and female venire members, like Claim One, rests on adequate and independent state-law grounds. And Claim One was technically exhausted and procedurally defaulted years before Knox even tried to raise it in state court. Either way, the Court should deny Claim One because Knox's defaults bar federal review.

Knox does argue that the state's res judicata bar under section 99-39-21(3) is no impediment to federal review. (Doc. 85 at 153). It is true that the state supreme court applied the statutory res judicata bar to Knox's claim that post-conviction counsel was ineffective for failing to present an IATC claim, which was based on an alleged failure to challenge the State's nondiscriminatory reasons for the peremptory strikes it used at trial. (Doc. 75-10 at 297). Knox cites and relies on *Foster v. Chatman*, 136 S. Ct. 1737, 1745–46 (2016), as authority for the proposition that a state procedural law, which codifies the judicial doctrine of res judicata, is not an impediment to federal review in a habeas proceeding. (Doc. 85 at 153). Respondents agree. Supreme Court precedent makes clear, and has for some time now, that "[w]hen a state court declines to review the merits of a petitioner's claim

on the ground that it has done so already, it creates no bar to federal review." *Cone v. Bell*, 556 U.S. 449, 466–67 (2009) (citing *Ylst*, 501 U.S. at 804, n. 3).

But there is a problem with Knox's argument. The state's res judicata bar is not the only state-law procedural law ground supporting the Mississippi Supreme Court's decision to deny relief in *Knox III*. And Respondents do not hold the res judicata bar out as an adequate and independent state law ground. They rely on the UPCCRA's time, waiver, and successive-writ bars as the adequate and independent state law grounds that preclude federal review of Claim One. Knox's argument simply does not address the state supreme court's reliance on those three state-law bars, which now bars on federal review.

In any event, the procedural default doctrine bars federal review of Claim One in Knox's Second Amended Petition. And Knox does not try to show any state statutory bar is inadequate to support the state supreme court's decision in *Knox III* or dependent on federal law. Nor does he try to show good cause for considering Claim One despite any procedural default. Because he does not, federal law bars Knox "from asserting … [Claim One] in a federal habeas proceeding." *See Ngo*, 548 U.S. at 92 (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744–51). So for this alternative reason, Knox cannot obtain relief for Claim One. The Court should dismiss it.

**D.    Section 2254(d)'s re-litigation bar stops Knox from obtaining relief for Claim One.**

Without waiving the previous defenses and to be cautious, Respondents submit that Knox cannot obtain relief for Claim One because he cannot overcome AEDPA's re-litigation bar at section 2254(d) even if the Court applies the "look through" presumption that attends unexplained state-court summary decisions on the merits. The Mississippi Supreme Court's decision in *Knox III* is not an unexplained state-court summary decision on the merits. The En Banc Order entered in *Knox III explains* the state supreme court's rationale for its decision to deny Knox relief for his PCR IAC claim that trial counsel was ineffective for failing to challenge the State's reasons for exercising peremptory strikes against black and female members of the jury venire. The "look through" presumption applies when a state court has issued one reasoned judgment that rejects a federal claim and later unexplained decisions that uphold the earlier judgment or reject the same claim on the same ground. *Ylst*, 501 U.S. at 803. In those instances, a federal court presumes that no procedural default is invoked by a later unexplained decision that leaves the earlier judgment or its consequences in place, provided the earlier judgment "'fairly appears to rest primarily upon federal law[.]" *Id.* (quoting *Coleman*, 501 U.S. at 740). This is not one of those instances.

As stated in the previous section, the En Banc Order entered in *Knox III* shows the state supreme court clearly and expressly relied on the UPCCRA's statutory bars as grounds to support its decision to deny Knox relief for the claims

that he presented. (Doc. 75-10 at 298). Three of those bars are, according to the Fifth Circuit, adequate and independent state law grounds that preclude federal habeas review—the UPCCRA's time, waiver, and successive-writ bars. And where, as here, the last state court to consider that claim clearly and expressly relies on an adequate and independent state procedural law ground as the basis for denying relief, the state court's denial results in a procedural default that bars federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). So the En Banc Order entered in *Knox III* is not an unexplained state-court summary decision that upholds an earlier judgment or rejects the same claim on the same ground.

That said, and even if the "look through" presumption is available for Claim One and allows the Court to "look through" the En Banc Order entered in *Knox III* and consider the Mississippi Supreme Court's judgment in *Knox II*, AEDPA's re-litigation bar at 28 U.S.C. 2254(d) precludes Knox from relitigating Claim One and obtaining federal relief for it. AEDPA's re-litigation bar applies to federal claims that were adjudicated on the merits in state court. *See Pinholster*, 563 U.S. at 181. Looking to the Opinion entered in *Knox II*, it shows that the Mississippi Supreme Court adjudicated Knox's IATC claim based on an alleged failure to raise a *Batson* challenge. The *Knox II* Opinion reads:

**II. and VII. INEFFECTIVE ASSISTANCE OF COUNSEL.**

Knox argues that he received ineffective assistance of counsel at trial. He raises this claim under Issue II, in his Petition for Post–

Conviction Relief, and under Issue VII, in the Supplement/Amendment to Petition.

This Court described review of a claim of on ineffective assistance of counsel and the standard provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

"The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Stringer*, 454 So.2d at 477 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Defense counsel is presumed competent. *Id.*

> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991). This means a

"probability sufficient to undermine the confidence in the outcome." *Id.* The question here is:

> whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss. 1991).

*Davis v. State*, 743 So.2d 326, 334 (Miss. 1999) (citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss. 1996)).

*Brown v. State*, 798 So.2d 481, 493–94 (Miss. 2001).

## A. *Batson v. Kentucky*

Knox's jury was comprised of three African–Americans and nine Caucasians. The State used eleven peremptory challenges in all, eight against African–Americans on the venire. Knox's trial counsel objected based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The circuit court required the State to provide race-neutral reasons for the peremptory strikes. The race-neutral reasons may be summarized as follows: (1) Schneider showed a drastic reaction when the death penalty status of case was announced, rolled her eyes, became pained in her appearance, and did not raise her hand on any question pertaining to the death penalty; (2) Higgonbottham also reacted to the death penalty status announcement and was related to a woman who recently had been charged with aggravated assault but the grand jury refused to indict; (3) Jenkins was related to an unpopular constable who had problems with law enforcement during his term in office; (4) Williams had strong feelings against imposition of the death penalty; (5) McCoy or

someone in his family had been charged with a crime; (6) Richardson attempted to have herself excused because of previous jury service; (7) Jones was non-responsive and wore a ponytail; (8) Williams was young and non-responsive and appeared to be nodding off at times. Defense counsel responded: "I cannot dispute any of the things that Ronnie [the District Attorney] has set forth. He was pretty weak on identifying with the defendant. Other than that, how the hair fixed up, a whole lot to do with anything." The circuit court found some of the State's reasons were a close call but accepted them and allowed the challenges to stand.

Knox argues that "the trial court clearly indicated that trial counsel could have challenged some of the prosecution's race-neutral reasons in light of *Batson*." We disagree that the circuit court's comments amounted to such an indication. Knox does not cite any of this Court's decisions construing *Batson*.

The State cites *Brown v. State*, 749 So.2d 82 (Miss. 1999), where Brown alleged that his trial counsel had been ineffective for failure to offer rebuttal argument to the State's allegedly race-neutral reasons for peremptory strikes. Brown did not say what information his trial counsel should have offered in rebuttal. Brown also argued that allegations against the jurors supplied by police was hearsay. This Court found that the State gave legitimate race-neutral reasons for the peremptory strikes and absent some showing of a different outcome had the *Batson* objections been sustained, trial counsel was not ineffective on this issue. Knox has failed to make a showing of ineffective assistance on this issue.

*Knox II*, 901 So. 2d at 1261–63.

Knox cannot relitigate Claim One or obtain relief for it unless he shows that claim meets one of the exceptions under section 2254(d). *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir. 2002). An IATC claim, like Claim One, raises a mixed question of law and fact, *see Strickland*, 466 U.S. at 698, that is subject to section 2254(d)(1), s*ee Ladd*, 311 F.3d at 352. Under section 2254(d)(1), Knox overcomes AEDPA's re-litigation bar only if he shows the state supreme court's adjudication

of his IATC claim resulted in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *See Pinholster*, 563 U.S. at 181.

Here, the clearly established federal law is *Strickland v. Washington. See id.* at 189. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. This is not a question of "whether defense counsel's performance fell below *Strickland's* standard." *Id.* "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court litigation of claims already rejected in state proceedings." *Id.* at 102.

To obtain relief from the Mississippi Supreme Court for his IATC claim based on a failure to assert a *Batson* violation, Knox had to show trial counsel's performance was constitutionally deficient and prejudicial to his defense. *Id.* at 104. As it concerns counsel's performance, the Mississippi Supreme Court was required to "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466

49

U.S. at 689). Knox's "burden [wa]s to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed [him] by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

As to prejudice, Knox had to "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

"'Surmounting *Strickland's* high bar is never an easy task.'" *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Id.* "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' … and when the two apply in tandem, review is 'doubly' so…." *Id.* (internal citations omitted). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). But what is unreasonable under *Strickland* must not be equated with

what is unreasonable under § 2254(d). *See id.* Determining the reasonableness of a state court's application of *Strickland* when § 2254(d) applies requires a federal court to decide "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

And two additional points cannot be forgotten. First, the scope of review under section 2254(d)(1) is limited to the record that was before the state supreme court in *Knox II. See Pinholster*, 563 U.S. at 181. The second is that AEDPA requires the Court to presume the state supreme court's factual findings are correct unless Knox rebuts that presumption by clear and convincing evidence that shows the state court's findings were erroneous. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence." (internal quotation marks omitted)).

Turning to his Second Amended Petition, Knox does not try to show the Mississippi Supreme Court's decision in *Knox II* or *Knox III* amounted to an unreasonable application of *Strickland v. Washington* at any point under Claim One. (Doc. 85 at 133–200). Even if he had, Knox could not carry his burden under section 2254(d)(1). The *Knox II* Opinion shows that Knox's IATC claim for failing to assert a *Batson* violation was based entirely on a comment the trial court made in rejecting Knox's *Batson* objection—that it found some of the

51

State's reasons were a close call. *See Knox II*, 901 So. 2d at 1263. Knox interpreted that comment as an indication that trial counsel could have challenged some of the State's reasons and relied on that interpretation to support his IATC claim. *See Knox II*, 901 So. 2d at 1263.

In denying Knox relief, the state supreme court correctly identified and applied *Strickland's* standard when adjudicating this IATC claim. *See id.* at 1261–62. It refused to accept his interpretation of the trial court's comment as such an indication and noted that Knox failed to cite legal authority to support his argument. *Id.* The state supreme court then relied on its decision in *Brown v. State*, 749 So. 2d 82, 87–88 (Miss. 1999), where it denied an IATC claim based on a failure to rebut the State's reasons for exercising peremptory strikes. The state supreme court rejected Knox's IATC claim for the same reasons it denied the IATC claim in *Brown*. *See id.* at 1263. Like Brown, Knox did not state what information trial counsel should have offered to rebut the State's reasons and did not show there was a reasonable probability of a different outcome of trial had Knox's *Batson* objection been sustained. *See id.*

Knox does not try to meet either exception under section 2254(d)(2) by demonstrating the state supreme court's adjudication of his IATC claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *White v.*

*Woodall*, 572 U.S. 415, 419–20 (2014); *Richter*, 562 U.S. at 103). He does not for good reason: There is nothing unreasonable about the Mississippi Supreme Court's adjudication of Knox's IATC claim for failing to rebut the State's reasons for the eight peremptory strikes it used at trial. Knox simply failed to carry his burden of proving trial counsel was ineffective.

In sum, the state supreme court's adjudication of Knox's IATC claim for failing to challenge the State's reasons for eight peremptory strikes in *Knox II* is neither contrary to nor an unreasonable application of *Strickland v. Washington*. And because that adjudication is reasonable, Knox cannot overcome AEDPA's re-litigation bar. AEDPA's re-litigation bar precludes Knox from relitigating Claim One and obtaining relief for it. For this reason, the Court should refuse to grant Knox relief for Claim One.

### E.    Claim One has no merit.

Finally, and without waiving the previous arguments, the Court should deny Claim One because it lacks merit. The allegations under Claim One do not show trial counsel's performance was deficient or that any specific error that trial counsel made was prejudicial to Knox's defense even when reviewed *de novo*. First, the allegations under Claim One do not show trial counsel committed any specific error during jury selection that no reasonable attorney would have made. For example, Knox faults trial counsel for failing to obtain and present the prosecution team's jury selection notes as evidence of pretext

under Claim One. (Doc. 85 at 137). But Knox either overlooks or ignores state law that holds the prosecution's jury selection notes are attorney work product, which is not subject to compelled disclosure.[9] *See Thorson v. State*, 721 So. 2d 590, 596 (Miss. 1998). Trial counsel was not deficient for failing to obtain the prosecution team's attorney work product.

Knox's contention that trial counsel should have challenged the State's reasons for the peremptory strikes provides another example that shows Claim One fails to allege deficient performance. According to Knox, "[t]rial counsel failed to challenge the merits of the State's reasons for excluding black jurors,

---

[9] Knox obtained the prosecution's jury notes from the District Attorney long after the proceedings in *Knox II* had concluded. (Doc. 85-56). He did so after filing his successive PCR application in *Knox III* without notifying counsel for the State under Mississippi Rule of Appellate Procedure 22(c)(4)(ii). This is significant for two reasons. *First*, Rule 22(c), including its discovery provisions, was inapplicable when Knox cited it as legal authority when requesting the District Attorney made available his Office's files related to Knox's capital-murder trial. *See Brown v. State*, 255 So. 3d 141, 144 (Miss. 2017) (holding Miss. R. App. P. 22(c) inapplicable in successive PCR proceedings); *see also Brown v. State*, 88 So. 3d 726, 733 (Miss. 2012). And the Mississippi Attorney General's Office served as counsel for the State in *Knox I*, *Knox II*, and *Knox III* as it does in all cases involving prisoners under sentence of death in post-conviction proceedings. *See* Miss. Code Ann. § 99-39-27(1), (3), (5). *Second*, and assuming its provisions applied when Knox obtained the jury notes, Rule 22(c)(4)(ii) concerns mandatory discovery the State must provide prisoners during the preliminary proceedings that begin when direct appeal proceedings conclude and end when a petitioner files his *first* PCR application. Rule 22(c)(4)(ii) states, in part, that:

> If the State has a reasonable belief that allowing inspection of any portion of the files by post-conviction counsel for the petitioner would not be in the interest of justice, the State may submit for inspection by the convicting court those portions of the files so identified. If upon examination of the files, the court finds that such portions of the files could not assist the capital petitioner in investigating, preparing, or presenting a motion for post-conviction relief, the court in its discretion may allow the State to withhold that portion of the files.

Miss. R. App. P. 22(c)(4)(ii). Knox denied counsel for the State an opportunity to obtain a ruling on whether the State was required to disclose the prosecution's jury notes as the Rule's mandatory discovery provision provides.

and failed to include a gender discrimination claim, even though the facts in the jury selection process provided evidence that the prosecutor was excluding black and female panelists for reasons that applied equally to white male panelists." (Doc. 85 at 138). But Knox does not explain how trial counsel could have reasonably known which venire members the State would strike until the *Batson* hearing or how trial counsel could have scoured a non-existent transcript of voir dire during this *Batson* hearing. Nor does he explain how trial counsel would find information that *federal habeas counsel*, decades later, believes to be evidence of racial and gender discrimination. Neither clairvoyance nor omniscience is a Sixth Amendment requirement of effective assistance. *See United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009); *Sharp v. Johnson*, 107 F.3d 282, 289 n. 28 (5th Cir. 1997). And Knox cannot show *Strickland* prejudice based on the allegations under Claim One. The one instance where he mentions *Strickland* under Claim One, Knox urges the Court to assume actual prejudice. (Doc. 85 at 160–62). In other words, Knox mentions *Strickland* just once under Claim One when trying to convince this Court that *Strickland's* standard should not apply to the merits of his *Strickland* claim.

If anything, the assertions under Claim One show Knox trying to litigate the merits of freestanding *Batson* and *J.E.B.* claims in this Court under the guise of ineffective assistance. Those assertions and the exhibits supporting

them do not set out deficient performance or even address prejudice under *Strickland*. Claim One fails under both prongs of *Strickland's* standard. Claim One has no merit. It should be denied.

## III. Knox cannot obtain relief for Claim Two.

Respondents deny the allegations under Claim Two. Here, Knox claims that he was denied his Sixth Amendment right to the effective assistance of counsel for errors that he says trial counsel made during the penalty phase of his capital-murder trial. (Doc. 85 at 200–21). In particular, Knox says trial counsel failed to (1) perform conduct "a meaningful investigation" for mitigating evidence despite being aware of a need to conduct a mitigation investigation; (2) retain an expert to review medical records and test Knox's mental health and status; or (3) consult and tender a psychologist as a witness qualified to testify to Knox's mental impairment and "chronic brain trauma" to the penalty-phase jury. Trial counsel was not ineffective during the penalty-phase of trial. And this Court should refuse to grant Knox relief for Claim Two for the reasons below.

The Mississippi Supreme Court ruled trial counsel was not ineffective during the penalty phase in *Knox II*. And it applied every statutory bar that could be applied to Claim Two when denying it in *Knox III*. The *Knox II* Opinion reads:

### C. Failure to Investigate and Present Mitigating Evidence Concerning Mental Health

This issue was raised in both Knox's original Petition for Post–Conviction Relief, as his sole claim for ineffective assistance, and his Supplement/Amendment to Petition for Post–Conviction Relief, under Issue C.

Knox argues that trial counsel failed to adequately investigate mitigation factors and interview potential mitigation witnesses. Knox notes that trial counsel called no witnesses during the guilt phase of his trial and only two witnesses during the sentencing phase, Knox's mother and aunt. Trial counsel also introduced copies of Knox's Social Security records during the sentencing. Knox suffered a head injury while doing construction work in 1998. Knox claimed that he suffered from headaches because of this injury. In October 1998 he applied for SSI disability due to his head injury. His application was denied.

Knox also attaches two affidavits from Deidre Jackson, a paralegal, and Tomika Harris, an investigator, both with the Mississippi Office of Capital Post Conviction Counsel. Each affidavit states that Jackson and Harris conducted a phone interview with Mildred Knox, mother of Steve Knox, on January 30, 2003. The affidavit states that Steve Knox was a slow child who didn't talk much until the age of seven and that she believed he had learning disabilities, but she couldn't afford to take him to a doctor; that he wet his pants until his was ten, but medication helped that problem; that Steve would wake up on some days and complain that he could not see, and would stay in bed until his vision returned; that Steve's favorite hobby growing up was boxing; that Steve couldn't hold a job for a long period of time; and that he seemed to have mental problems but the problems worsened when Steve was struck in the head with a backhoe bucket at a construction job in North Carolina. Knox states that this information could have been presented at trial or should have led to further investigation as to mitigating evidence or even as to possible mental retardation.

Knox also states that he "had a prior history of substance abuse beginning at the age of fourteen," that he was "a heavy user of crack and occasionally marijuana," and as a result of his drug use, he "was often homeless." Knox cites no authority for these assertions.

Knox cites *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), where the United States Supreme Court found that counsel had been ineffective at the sentencing phase of trial

because of counsel's failure to investigate and uncover proof of Williams's tragic childhood because counsel thought that state law barred access to certain relevant records. The Court said counsel could have discovered that Williams's parents had been imprisoned for criminal neglect of their children, that Williams had been beaten by his father, that Williams had spent time in an abusive foster home, that Williams was borderline mentally retarded and did not advance past the sixth grade in school, and that Williams had helped authorities during his stay in prison.

Knox also cites *Jackson v. Calderon*, 211 F.3d 1148 (9th Cir. 2000), where Jackson's attorney was found to be ineffective in the sentencing phase for spending about two hours investigating in preparation for sentencing and calling only Jackson's estranged wife and mother as witnesses. In invalidating the death sentence, the Ninth Circuit stated that Jackson's attorney never investigated beyond the mother and wife because he never expected the case to reach the sentencing phase, and he never investigated or presented evidence concerning Jackson's addiction to PCP or his PCP intoxication at the time of the murder, never investigated a separate aggravating factor, and never investigated beatings Jackson had endured as a child or signs that Jackson was mentally ill. *See also Smith v. Stewart*, 140 F.3d 1263 (9th Cir. 1998) (death sentence vacated where counsel presented no mitigating evidence when evidence concerning mental problems, drug abuse and family ties was available).

The State answers by first stating that the affidavits of the Office of Capital Post–Conviction Counsel staff contain hearsay, and when Mildred Knox purports to convey what other people have stated, they contain double hearsay. The State cites *Bishop v. State*, 882 So.2d 135, 156 nn. 11 & 12 (Miss. 2004), where this Court found that similar affidavits would not be considered in post-conviction proceedings.

The State then discusses the Social Security documents attached by Knox to his Petition, noting that the same documents were admitted as an exhibit during the sentencing phase of Knox's trial. Defense counsel was allowed to give a short explanation to the jury concerning Knox's injury and his attempt to be declared disabled by the Social Security Administration.

The State also cites the affidavit from trial counsel Gus Sermos, which states that Sermos and co-counsel Rosenthal met with Knox

on numerous occasions, and trial counsel concluded that "neither Knox's sanity nor his competency to assist counsel and go forward with the case were issues in question." Sermos further states in the affidavit that he spoke to or attempted to speak to numerous members of the Knox family and the way in which he evaluated the information they gave him.

The State points out that Knox managed to hold certain menial jobs and was never declared disabled by the Social Security Administration. The State points out that Knox has supplied little or nothing as to what an effective attorney performing a proper investigation would or should have found in the way of mitigating testimony. The State argues that the accusation that trial counsel failed to properly investigate is merely an unfounded allegation. We agree with the State. This issue is without merit.

## D. Failure to determine competency to stand trial.

Knox next argues that, considering his head injury and his attempt to obtain Social Security disability benefits, trial counsel should have asked that the circuit court make a determination as to Knox's competency before trial. Knox states that failure to ask for such a determination despite the warning signs available to counsel amounts to ineffective assistance. Knox cites *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994); *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990); *Jackson v. State*, 857 S.W.2d 678 (Tex. Ct. App. 1993); and *State v. Green*, 632 So.2d 1187 (La. Ct. App.1994). In all of these cases counsel was found to ineffective for failure to investigate competency or some other aspect of the client's mental state or failure to object when the statutory means for determining competency was not followed. There was also medical evidence of mental illness, insanity, retardation and substance abuse presented in each of these cases. Knox has presented no such evidence in this case. He has not supplied an affidavit from any doctor or mental health professional which states that he is incompetent now or that he was incompetent at the time of his trial. Absent some evidence of this type, the case law cited by Knox is irrelevant.

Knox next argues that appellate counsel was ineffective for failure to raise as error on appeal the circuit court's failure to order a competency examination even where none requested. Neither Knox nor the State cite authority from this Court stating that the failure to ask for a competency hearing, by itself, amounts to ineffective

assistance of counsel. Absent some substantial evidence, in addition to the medical and Social Security records already produced, which raises a legitimate question concerning Knox's competence, we find that trial counsel was not ineffective here.

**E. Failure to Investigate and Present Mitigating Evidence**

This is a restatement of subsection C of this issue. Nothing presented here changes this Court's earlier finding, that Knox has failed to show ineffective assistance of counsel on the failure to investigate and find mitigating evidence, mostly in the area of mental health.

*Knox II*, 901 So. 2d at 1264–66.

And the Mississippi Supreme Court's En Banc Order entered in *Knox III*

makes clear that,

> Ineffective-assistance-of-counsel claims in capital cases are subject to the procedural bars, unless the claims meets an exception to the procedural bars. *Grayson v. State*, 118 So. 3d 118, 125 (Miss. 2013). Here, Knox's claims of ineffective assistance of counsel do not warrant an exception to the procedural bars. The same ineffective-assistance-of-trial counsel claims were raised by Knox's first post-conviction relief counsel and addressed by this Court in *Knox*, 901 So. 2d at 1262-66. While this Court has recognized the right to effective assistance of post-conviction relief counsel in death-penalty cases, *Grayson*, 118 So. 3d at 126, Knox has failed to demonstrate constitutionally deficient performance by original post-conviction relief counsel.

(Doc. 75-10 at 298).

**A.     Claim Two does not meet AEDPA's exhaustion requirement.**

Knox did not properly exhaust Claim Two when he presented it to the state supreme court in *Knox III*. The portion of the state supreme court's En Banc Order, which is quoted immediately above, is proof that Knox failed to present Claim Two in *Knox II* in a manner consistent with state law. The same En Banc

Order also serves as proof that shows Knox presented the IATC claims under Claim Two as PCR IAC claims in *Knox III*.

To fairly present it, Knox had to present Claim Two to the Mississippi Supreme Court in a manner consistent with state law. *See Russell*, 68 F.4th at 269–70 (quoting *Lucio*, 987 F.3d at 464, and citing 28 U.S.C. § 2254(b)(1)(A)). "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation and to do so consistent with their own procedures…." *Shinn*, 596 U.S. at 379. Knox could not properly exhaust Claim Two in *Knox III* because he had no available state-court remedies when the decision in *Knox II* became final. State law required the state supreme court to dismiss Claim Three. *See id*. at 378 (quoting *Ngo*, 548 U.S. at 92–93; *Sones*, 61 F.3d at 416 (citing *Engle*, 456 U.S. at 125 n. 28). Claim Three was technically exhausted and procedurally defaulted before Knox presented it in *Knox III*. *See id*. (quoting *Davila*, 582 U.S. at 528).

So rather than present Claim Three to the state supreme court in *Knox III*, Knox presented a state-law PCR IAC claim based on an alleged failure to assert an IATC claim based on allegations that trial counsel failed to present a defense. PCR IAC is not a claim for federal habeas relief. 28 U.S.C. § 2254(i); *see Martinez v. Ryan*, 566 U.S. 1, 17 (2012). There is no federal constitutional right to post-conviction review or to appointed counsel in state PCR proceedings. *Finley*, 481

U.S. at 555 (citing *Torna*, 455 U.S. 556; *Ross*, 417 U.S. 600; *Boyd*, 405 U.S. at 7, n. 2; *Johnson*, 393 U.S. at 488). Post-conviction review "is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Id*. at 556–57 (citing *Fay*, 372 U.S. at 423–24).

PCR IAC claims are based on a different legal theory from IATC claims. Under state law, prisoners who establish a PCR IAC claim shows their first PCR applications were merely a sham. *Grayson*, 118 So. 3d at 126. And PCR IAC claims do not challenge a prisoner's criminal proceedings. They attack a state-court "proceeding collateral to the detention and not the detention itself." *Kelly*, 72 F. App'x at 78 (quoting *Nichols*, 69 F.3d at 1275; citing *Millard*, 810 F.2d at 1410). Besides that, PCR IAC claims are established by facts that differ in time and type from those necessary to establishing IATC claims. Those claims are proven by facts that concern appointed counsel's efforts in those petitioners' initial state PCR proceedings.

And the fact that Claim Three was an underlying issue to one of the five PCR IAC claims that Knox presented in *Knox III* is inconsequential to AEDPA's exhaustion requirement. Clearly established federal law holds that "mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366. Knox was required to present Claim Three to the state supreme court before presenting it to this Court. *See Picard*, 404 U.S. at 276. And he needed to fairly present Claim Three to the Mississippi Supreme Court "in a procedurally correct manner"

according to state law. *See Carty*, 583 F.3d at 254 (quotation marks and citations omitted). Knox did neither.

Federal law required Knox to present the Mississippi Supreme Court with the same claim that he now urges on this Court. Because Knox did not do what federal law required, he did not give the Mississippi Supreme Court a fair opportunity to pass on Claim Two when he presented that claim as an underlying issue to a state-law PCR IAC claim in *Knox III*. So now, Knox may not obtain relief for Claim Two because that claim does not meet AEDPA's exhaustion requirement. Therefore, this Court should deny Claim Two.

## B. The procedural default doctrine bars review of Claim Two.

Additionally, the Court should deny Claim Two because the procedural default doctrine bars review of that claim and Knox does not try to excuse or overcome his defaults. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g., Spicer*, 2021 WL 4465828, at *3. "'Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Id*. (quoting *Coleman*, 501 U.S. at 731–32).

The adequate and independent state-law ground rule, however, does not completely bar federal review. A federal court may review a federal constitutional claim that a state court denied, which relied on an adequate and independent state-law ground to support its decision, if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden of overcoming or excusing the procedural default that results from a state court's reliance on an adequate and independent state law ground belongs to the prisoner asserting that claim. *See Sones*, 61 F.3d at 416–18.

Knox does not try to overcome or excuse any default that bars review of Claim Three. He does not try to rebut the presumption that Mississippi's time, waiver, and successive-writ bars are adequate and independent state-law grounds. And Fifth Circuit precedent holds all three bars are adequate and independent state procedural law grounds that will preclude federal review. *See Spicer*, 2021 WL 4465828, at *3 (citing *Johnson*, 176 F.3d at 815 n. 3; *Moawad*, 143 F.3d at 947; *Stokes*, 123 F.3d at 860. He does he try excuse any default by showing of good cause and actual prejudice. Nor does not try to show federal review of Claim Two is necessary to prevent a fundamental miscarriage of justice.

Even if the Court disagrees that the adequate and independent state-law ground rule bars review of Claim Two, the procedural default doctrine applies for another reason. Claim Two is, and has been, technically exhausted since the decision in *Knox II* became final—when Knox exhausted all his available state-court remedies. A claim that would be dismissed in state court for its procedural failures, like Claim Two, is "'technically exhausted because, in the habeas context, state-court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability.'" *Shinn*, 596 U.S. at 378 (quoting *Ngo*, 548 U.S. at 92–93). The procedural default doctrine applies to technically exhausted claims like Claim Two. *See id.* (quoting *Davila*, 582 U.S. at 528).

Either way, there is no question that the procedural default doctrine applies to Claim Two. And there is no question that Knox does not try to excuse any default that bars review of Claim Two. So there is no question that the Court should apply the procedural default doctrine and deny Claim Two.

### C.   AEDPA's re-litigation bar stops Knox from relitigating Claim Two.

Without waiving the previous arguments, AEDPA's re-litigation bar applies to Claim Two and bars Knox from relitigating and obtaining relief for it. The "look through" doctrine is inapplicable to the claims in the Second Amended Petition. But even if the "look through" doctrine applied and this Court looked through the *Knox III* En Banc Order to consider the state court's reasoning in

*Knox II*, the Court will find AEDPA's re-litigation bar blocks Knox from relitigating and obtaining relief for Claim Two.

*Strickland's* two-pronged standard is the clearly established federal law that controls Claim Two, just as it controls Claim One. This Court's review is doubly deferential. But Knox chooses to not address AEDPA's re-litigation bar or its exceptions at any point under Claim Two. As a result, he fails to show fairminded jurists would agree that the Mississippi Supreme Court applied *Strickland's* standard in an objectively unreasonable manner when it adjudicated this IATC claim on the merits in *Knox II*. See Richter, 562 U.S. at 103. So Knox fails to show Claim Two may be reviewed under section 2254(d)(1)'s exceptions. Thus, AEDPA's re-litigation bar stops Knox from relitigating Claim Two or obtaining relief for it.

**D.  Claim Two lacks merit.**

Assuming that none of the previous defenses applied, Knox cannot obtain relief for Claim Two because the claim has no merit. First, Knox does not try to show *Strickland* prejudice for any one of the above-alleged errors. Unless Knox shows deficient performance and actual prejudice, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. At no point under Claim Two does Knox show a reasonable probability exists that, but for trial counsel's above-alleged errors, the outcome of the penalty phase would have been

different. Claim Two fails on the merits because Knox does not try to show *Strickland* prejudice.

To succeed on Claim Two, Knox "'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial.'" *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Rather than allege what the mitigation investigation that trial counsel should have conducted, Knox attacks the actual mitigation investigation that trial counsel conducted. Simply put, Knox says trial counsel lied about conducting a mitigation investigation. (Doc. 85 at 207). And what proof does he offer to support that contention? He offers one of the affidavits that his mother executed and one of the affidavits that an aunt signed many, many years after trial. Neither affidavit shows trial counsel (Gus Sermos *and* Leonard Rosenthal)[10] failed to contact or interview Knox's siblings, investigate his "life history," or determine if Knox had any mental limitations. Knox fails to show deficient performance under Claim Two.

Aside from that, Knox does not address *Strickland* prejudice at any point under Claim Two. To succeed on an IATC claim, Knox must establish both prongs

---

[10] A glaring flaw in all Knox's ineffective assistance claims (Claims One through Three) is that they do not address Mr. Rosenthal's conduct. These claims and Knox's ire are focused almost exclusively on what Gus Sermos did or did not do. Knox had two attorneys, not one. And when a defendant is represented by multiple attorneys, IATC claims are hard to demonstrate. *U.S. v. Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016) (citing *Lopez-Nieves v. U.S.*, 917 F.2d 645, 647 (1st Cir. 1990)).

of *Strickland's* standard. *See Strickland*, 466 U.S. at 687. But Knox does not state what mitigating evidence that trial counsel should have found *or* how that evidence would probably have resulted in a sentence less than death. So Claim Two must fail for lack of merit.

Knox fails to establish deficient performance under Claim Two. And he simply does not address actual prejudice at any point under Claim Two. Claim Two does not show deficient performance or even allege actual prejudice. Because it does not, Knox could not obtain relief for Claim Two even if this Court could consider the merits of that claim de novo.

The Court should deny Claim Two. Claim Two does not meet AEDPA's exhaustion requirement. It is subject to the procedural default doctrine for several reasons. It is subject to AEDPA's re-litigation bar. And Claim Two has no merit. It should be denied.

## IV. Knox cannot obtain relief for Claim Three.

Respondents deny the allegations under Claim Three of Knox's Second Amended Petition. (Doc. 85 at 222–33). Looking there, Knox insists trial counsel was ineffective for failing to present a defense during the guilt phase of his capital-murder trial. The Court should deny Claim Three for several reasons, which are discussed below.

Before addressing those reasons, Respondents point out the Mississippi Supreme Court's decisions in *Knox II* and *Knox III* where that court rejected

Knox's contention that trial counsel was ineffective for failing to present a defense. The state supreme court's *Knox II* Opinion reads,

## B. Failure to present any defense

Knox next argues that his trial counsel "failed to present an adequate and sufficient defense" and "failed to provide any meaningful adversarial testing of the prosecution's case." Knox argues that "the non-existence defense resulted in deficient performance." Knox cites *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), as authority. Knox points out that trial counsel failed to call any witnesses during the guilt phase of the trial, and presumably this sub-issue is confined only to counsel's performance in the guilt phase of the trial.

Knox told Deputy Sheriff Donald Butler that he woke up on the morning of the murder of Ella Mae Spears, went outside to a field, and the next thing he remembered was waking up in the field several hours later with blood on his clothes and no memory of how the blood got on his clothes. Knox now does not say how his trial counsel were supposed to fashion a defense out of this version of events.

The State cites *Branch v. State*, 882 So.2d 36 (Miss. 2004), where this Court discussed the difference between an ineffective assistance of counsel claim under *Strickland v. Washington* and a claim under *Cronic*:

> The Supreme Court has recognized a limited exception to the prejudice requirement when (1) assistance of counsel has been denied completely, (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel is denied during a critical stage of the proceedings. *Cronic*, 466 U.S. at 658–59, 104 S.Ct. 2039; *see Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 1240–41, 152 L.Ed.2d 291 (2002).

> *Freeman v. Graves*, 317 F.3d at 900. In this case, because the errors were committed by his own counsel, Branch argues that there was no meaningful adversarial testing of prosecutor's case. *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (discussing egregious trial conduct necessary to remove a case from *Strickland* analysis and apply a *Cronic* analysis).

When applying *Strickland* or *Cronic*, the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a "difference ... not of degree but of kind." [*Bell*, 122 S.Ct. at 1851 (quoting *Cronic*, 466 U.S. at 659, 104 S.Ct. 2039) ]. Under this rationale, when counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. *Id*. at 1851–52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution's case. Under the Court's reasoning, then, *Cronic* is reserved only for those extreme cases in which counsel fails to present any defense. We presume prejudice in such cases because it is as if the defendant had no representation at all. In contrast, strategic or tactical decisions are evaluated under *Strickland's* traditional two-pronged test for deficiency and prejudice.

*Haynes v. Cain*, 298 F.3d 375, 381 (5th Cir. 2002).

A defendant is not entitled to errorless counsel. *Hansen v. State*, 649 So.2d 1256, 1259 (Miss. 1994), *Johnson v. State*, 511 So.2d 1333, 1339–40 (Miss. 1987). This Court must look to the entire performance of counsel to determine whether he or she was competent and conscientiously fulfilled the role as advocate.

*Branch*, 882 So.2d at 65–66. This Court found that a review of the record showed that Branch was "represented by competent and zealous counsel" who "challenged the State's evidence at all stages of this case," and there was no merit to the issue. *Branch*, 882 So.2d at 66.

The State contends that Knox's trial counsel challenged the State's case and there was no violation under *Cronic*. The State points out that defense counsel filed numerous pre-trial motions; cross-examined nine out of eleven prosecution witnesses; points out a long colloquy between the circuit court and defense counsel on whether one defense witness might be located and called (the witness ultimately was not called because he would have corroborated the State's witnesses as to what happened when Knox was taken into custody); notes that Knox was thoroughly examined on whether or

not he wanted to take the stand; and that the physical evidence in the case was overwhelming in favor of the State. The State attaches to its Response an affidavit from Gus Sermos, one of Knox's trial attorneys, wherein Sermos states that he met with Knox on numerous occasions and even discussed a plea offer from the State with Knox, which Knox ultimately rejected. The terms of the plea offer are not supplied.

As Knox has not suggested any new evidence or testimony which should have been offered by his trial counsel, we find that there was no violation of Knox's right to counsel under *Cronic* or *Strickland*.

*Knox II*, 901 So. 2d at 1263–64.

The Mississippi Supreme Court's En Banc Order entered in *Knox III* makes

clear that,

> Ineffective-assistance-of-counsel claims in capital cases are subject to the procedural bars, unless the claims meets an exception to the procedural bars. *Grayson v. State*, 118 So. 3d 118, 125 (Miss. 2013). Here, Knox's claims of ineffective assistance of counsel do not warrant an exception to the procedural bars. The same ineffective-assistance-of-trial counsel claims were raised by Knox's first post-conviction relief counsel and addressed by this Court in *Knox*, 901 So. 2d at 1262-66. While this Court has recognized the right to effective assistance of post-conviction relief counsel in death-penalty cases, *Grayson*, 118 So. 3d at 126, Knox has failed to demonstrate constitutionally deficient performance by original post-conviction relief counsel.

(Doc. 75-10 at 298).

## A. Claim Three does not meet AEDPA's exhaustion requirement.

Knox did not properly exhaust Claim Three in *Knox III* as evidenced by the

state supreme court's En Banc Order. "The law 'requires a state prisoner to present

the state courts with the *same claim* he urges upon the federal courts.'" *See Russell*,

68 F.4th at 269 (brackets omitted) (quoting *Lucio*, 987 F.3d at 464 (quoting *Picard*,

404 U.S. at 276)). Knox did not fairly present that claim to the Mississippi Supreme Court. He presented Claim Three as an underlying issue to a PCR IAC claim in *Knox III*.

To fairly present it, Knox had to present Claim Three to the Mississippi Supreme Court in a manner consistent with state law. *See id.* at 269–70 (quoting *Lucio*, 987 F.3d at 464, and citing 28 U.S.C. § 2254(b)(1)(A)). "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation and to do so *consistent with their own procedures….*" *Shinn*, 596 U.S. at 379 (emphasis added). Knox did not properly exhaust Claim Three in *Knox III* because he had no available state-court remedies when the decision in *Knox II* became final. State law required the state supreme court to dismiss Claim Three. *See id.* at 378 (quoting *Ngo*, 548 U.S. at 92–93; *Sones*, 61 F.3d at 416 (citing *Engle*, 456 U.S. at 125 n. 28). Claim Three was technically exhausted and procedurally defaulted before Knox presented it in *Knox III. See id.* (quoting *Davila*, 582 U.S. at 528).

So rather than present Claim Three to the state supreme court in *Knox III*, Knox presented a state-law PCR IAC claim based on an alleged failure to assert an IATC claim based on allegations that trial counsel failed to present a defense. But PCR IAC is not a claim for federal habeas relief. 28 U.S.C. § 2254(i); *see Martinez*, 566 U.S. at 17. There is no federal constitutional right to post-conviction

review or to appointed counsel in state PCR proceedings. *Finley*, 481 U.S. at 555 (citing *Torna*, 455 U.S. 556; *Ross*, 417 U.S. 600; *Boyd*, 405 U.S. at 7, n. 2 ; *Johnson*, 393 U.S. at 488). Post-conviction review "is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Id.* at 556–57 (citing *Fay*, 372 U.S. at 423–24).

PCR IAC claims are based on a different legal theory from IATC claims. Under state law, prisoners who establish a PCR IAC claim shows their first PCR applications were merely a sham. *Grayson*, 118 So. 3d at 126. And PCR IAC claims do not challenge a prisoner's criminal proceedings. They attack a state-court "proceeding collateral to the detention and not the detention itself." *Kelly*, 72 F. App'x at 78 (quoting *Nichols*, 69 F.3d at 1275; citing *Millard*, 810 F.2d at 1410). Besides that, PCR IAC claims are established by facts that differ in time and type from those necessary to establishing IATC claims. Those claims are proven by facts that concern appointed counsel's efforts in those petitioners' initial state PCR proceedings.

And the fact that Claim Three was an underlying issue to one of the five PCR IAC claims that Knox presented in *Knox III* is inconsequential to AEDPA's exhaustion requirement. Clearly established federal law holds that "mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366. Knox was required to present Claim Three to the state supreme court before presenting it to this Court. *See Picard*, 404 U.S. at 276. And he needed to fairly present Claim

Three to the Mississippi Supreme Court "in a procedurally correct manner" according to state law. *See Carty*, 583 F.3d at 254 (quotation marks and citations omitted). He did neither.

Federal law required him to present the Mississippi Supreme Court with the *same claim* that he urges on this Court. *See Russell*, 68 F.4th at 269 (brackets omitted) (quoting *Lucio*, 987 F.3d at 464 (quoting *Picard*, 404 U.S. at 276)). Because Knox did not do what federal law required, he did not give the Mississippi Supreme Court a fair opportunity to pass on Claim Three when he presented that claim as an underlying issue to a state-law PCR IAC claim in *Knox III. See id.* So now, Knox may not obtain relief for Claim Three because that claim does not meet AEDPA's exhaustion requirement. Therefore, this Court should deny Claim Three.

### B.     The procedural default doctrine bars review of Claim Three.

Additionally, the Court should deny Claim Three because the procedural default doctrine bars review of that claim and Knox does not try to excuse or overcome his defaults. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g.*, *Spicer*, 2021 WL 4465828, at *3. "'Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's

procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Id.* (quoting *Coleman*, 501 U.S. at 731–32). The adequate and independent state-law ground rule prevents Knox from "'avoid[ing] the exhaustion requirement by defaulting their federal claims in state court.'" *See Sones*, 61 F.3d at 416, n. 8 (quoting *Coleman*, 501 U.S. at 732).

That said, the adequate and independent state-law ground rule does not completely bar federal review. A federal courts may review a federal constitutional claim that a state court denied, which relied on an adequate and independent state-law ground to support its decision, if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden of overcoming or excusing the procedural default that results from a state court's reliance on an adequate and independent state law ground belongs to the prisoner asserting that claim. *See Sones*, 61 F.3d at 416–18.

Knox does not try to overcome or excuse any default that bars review of Claim Three. He does not try to rebut the presumption that Mississippi's time, waiver, and successive-writ bars are adequate and independent state-law grounds. And Fifth Circuit precedent holds the UPCCRA's time, waiver, and

successive-writ bars are adequate and independent state procedural law grounds that will preclude federal review. *See Spicer*, 2021 WL 4465828, at *3 (citing *Johnson*, 176 F.3d at 815 n. 3; *Moawad*, 143 F.3d at 947; *Stokes*, 123 F.3d at 860. Nor does he try excuse any default by showing of good cause and actual prejudice. He does not try to show federal review of Claim Three is necessary to prevent a fundamental miscarriage of justice.

If the Court disagrees that the adequate and independent state-law ground rule bars review of Claim Three, the procedural default doctrine applies for another reason. Claim Three is, and has been, technically exhausted since the decision in *Knox II* became final—when Knox exhausted all his available state-court remedies. A claim that would be dismissed in state court for its procedural failures, like Claim Three, is "'technically exhausted because, in the habeas context, state-court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability.'" *Shinn*, 596 U.S. at 378 (quoting *Ngo*, 548 U.S. at 92–93). The procedural default doctrine applies to technically exhausted claims like Claim Three. *See id.* (quoting *Davila*, 582 U.S. at 528).

Either way, there is no question that the procedural default doctrine applies to Claim Three. And there is no question that Knox does not try to excuse any default that bars review of Claim Three. So there is no question that the Court should apply the procedural default doctrine and deny Claim Three.

### C. AEDPA's re-litigation bar stops Knox from relitigating Claim Three.

Without waiving the previous arguments, AEDPA's re-litigation bar applies to Claim Three and bars Knox from relitigating and obtaining relief for that claim. The "look through" doctrine is inapplicable to the claims in the Second Amended Petition. But even if the "look through" doctrine applied and this Court looked through the *Knox III* En Banc Order to consider the state court's reasoning in *Knox II*, the Court will find AEDPA's re-litigation bar blocks Knox from relitigating and obtaining relief for Claim Three.

*Strickland's* two-pronged standard is the clearly established federal law that controls Claim Three—the same standard that controls Claims One and Two in the Second Amended Petition. Knox chooses to not address AEDPA's re-litigation bar or its exceptions under Claim Three. As a result, he fails to show fairminded jurists would agree that the Mississippi Supreme Court applied *Strickland's* standard in an objectively unreasonable manner when it adjudicated this IATC claim on the merits in *Knox II*. *See Richter*, 562 U.S. at 103. So Knox fails to show Claim Three may be reviewed under section 2254(d)(1)'s exceptions. AEDPA's re-litigation bar stops Knox from relitigating Claim Three or obtaining relief for it.

**D.     Claim Three lacks merit.**

Even if none of the previous defenses applied, Knox cannot obtain relief for Claim Three because that claim lacks merit. Under Claim Three, Knox maintains that trial counsel was ineffective for failing to obtain funds to conduct an investigation, retain a handwriting expert, a DNA expert, a fingerprint expert, and adequately cross-examine the State's witnesses. (Doc. 85 at 222–33). He is mistaken.

First, Knox does not try to show *Strickland* prejudice for any one of the above-alleged errors. Unless Knox shows deficient performance and actual prejudice, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. At no point under Claim Three does Knox show a reasonable probability exists that, but for trial counsel's above-alleged errors, the outcome of his capital-murder trial would have been different. Because Knox does not try to show *Strickland* prejudice, Claim Three must fail on the merits.

To succeed on Claim Three, Knox "'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial.'" *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Complaints of uncalled witnesses are disfavored because they are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir.

2001)). Knox's allegations of ineffectiveness about retaining experts concern deficiencies in the expert testimony and evidence that the State presented at trial. Knox's assertions about failures in retaining fingerprint and handwriting experts are unsupported and therefore entirely speculative.

As for his assertions about trial counsel's failure to retain a DNA expert, Knox relies on sworn statements in the affidavit of Dr. Peter D'Eustachio. But Dr. D'Eustachio's sworn statements, like Knox's allegations, only point out alleged deficiencies in the testimony and report of the State's DNA expert. For that reason, Dr. D'Eustachio's statements, like the allegations under Claim Three, do not alter the outcome of trial. *See Vasquez v. Thaler*, 505 F. App'x 319, 328 (5th Cir. 2013) (affirming district court's determination that habeas petitioner's newly-retained DNA expert's observations, "which relate[d] to deficiencies in the prosecution's DNA testimony d[id] not alter the outcome of trial"). Dr. D'Eustachio's affidavit (Doc. 85–15) does not state that Dr. D'Eustachio (a) was available to testify at Knox's capital-murder trial; (b) would have testified consistent with the statements in his affidavit (Doc. 85-15); and (c) would have given favorable testimony to a particular defense. "Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence stating the witness's willingness to testify and the substance of the proposed testimony. *Gregory*, 601 F.3d at 352 (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)).

The same is true of Knox's bald allegations about trial counsel being ineffective for failing to effectively cross-examine the State's witnesses. Merely alleging deficient performance during cross-examination is conclusory, speculative, and prevents this Court from examining whether trial counsel's examination caused Knox to suffer prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009) (citing *U.S. v. Irby*, 103 F.3d 126 (5th Cir. 1996); *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992)). Knox cannot establish *Strickland* prejudice based on the allegations under Claim Three and the factual basis supporting it. And because he cannot, Claim Three has no merit.

Knox also fails to establish deficient performance under Claim Three. For example, he faults trial counsel for failing to investigate an alleged lead about an unidentified third-party as the party responsible for Ms. Spears's murder. But for all his complaints about this unknown third-party *and* multiple decades of time to find this person, Knox does not mention what exactly trial counsel would have found had trial counsel investigated (a) an anonymous letter or (b) a newspaper article about a breaking and entering of Ms. Spears's home. What Knox's alleges here is that trial counsel was ineffective for failing to go on some wild goose chase. But those allegations only confirm the fact that trial counsel was not deficient for failing to conduct a fruitless investigation into an unknown and unidentified third-party. What's more, the allegations under Claim Three ignore all the evidence supporting Knox's guilt that the jury heard.

And trial counsel cross-examined most of the State's witnesses at trial. This fact also shows the allegations under Claim Three have no merit. Knox offers merely speculative conclusions, which do not say what the possible affect that his new and improved cross-examinations would have had on any State's witness. He simply does not identify a single error in trial counsel's cross-examination of any State's witness, much less an error that no reasonable attorney would have made. Because he does not, Knox does not allege (much less show) deficient performance.

Claim Three has absolutely no merit. Knox wholly fails to show deficient performance under Claim Three. And he simply does not address actual prejudice at any point under Claim Three. So because Claim Three does not show deficient performance or even allege actual prejudice, Knox could not obtain relief for Claim Three even if the merits of that claim could be reviewed by the Court. For this reason, the Court should deny Claim Three.

The Court should deny Claim Three. Claim Three does not meet AEDPA's exhaustion requirement. Claim Three is subject to the procedural default doctrine for several reasons. Claim Three is subject to AEDPA's re-litigation bar. And Claim Three has no merit. It should be denied.

## V.     Knox cannot obtain relief for Claim Four.

Respondents deny the allegations under Knox's Fourth Claim. Here, Knox seeks relief for claims that (1) two penalty phase jury instructions were

unconstitutionally overbroad or vague (Doc. 85 at 234–38); (2) his capital-murder indictment was deficient because it did not state the aggravating circumstances that the State intended to prove (Doc. 85 at 238); (3) the jury failed to return a penalty-phase verdict in proper form (Doc. 85 at 238–40); and (4) the jury's penalty-phase verdict is based on insufficient evidence (Doc. 85 at 240–41). As demonstrated below, Knox cannot obtain relief for any of the issues that he asserts under Claim Four.

### A. Knox cannot obtain relief for his limiting instructions issue under Claim Four.

To begin with, Knox cannot obtain relief for his vague and overbroad issue with Sentencing Instructions 2 and 12 under Claim Four. The procedural default doctrine bars review of this issue because it is subject to the adequate and independent state-law ground rule. AEDPA's re-litigation bar at section 2254(d) bars review of this issue because Knox does not show this issue meets an exception under section 2254(d)(1) and does not try to rebut section 2254(e)(1)'s presumption of correctness that applies to the state supreme court's factual findings. But even if this issue were not procedurally defaulted and met one of section 2254(d)(1)'s exceptions, this issue has no merit.

First things first, the trial court granted two limiting instructions related to the HAC[11] aggravating circumstances near the end of the penalty phase. The first limiting instruction was embedded within Sentencing Instruction Number 2. It reads:

> Whether the capital offense was especially heinous, atrocious, cruel in that the defendant inflicted physical or mental pain before death, or that a lingering or tortuous death was suffered by the victim, in that Steve Knox bludgeoned and choked Miss Spears and stuffed her into the trunk of her car while she may have still been alive.

(Doc. 72-2 at 5). Sentencing Instruction Number 12 was the second limiting instruction given. And it reads

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious, or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.
>
> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders -- the conscienceless or pitiless crime which is unnecessarily tortuous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

---

[11] The "HAC" aggravating circumstances refers to the especially heinous, atrocious, or cruel aggravating circumstance

(Doc. 72-2 at 8).

The Mississippi Supreme Court denied Knox's challenges to the limiting instructions above in *Knox I* and *Knox II*.[12] The Opinion that court entered in *Knox I* reads:

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S–8 REGARDING THE "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL" AGGRAVATING FACTOR.

Knox contends the language of Sentencing Instruction S–8 is constitutionally inadequate and also that the State failed to introduce sufficient evidence at the sentencing hearing to support the instruction. Instruction S–8 states:

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders-the conscienceless or pitiless crime which is unnecessarily torturous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

Knox maintains that language identical to the first paragraph of the above instruction was held unconstitutional by the United

---

[12] Sentencing Instruction Number 12 was presented to the trial court as S-8 but given to the jury as Sentencing Instruction Number 12.

States Supreme Court in *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). In *Shell*, the Supreme Court found that, used alone, language identical to that used in the first paragraph of instruction S 8 was not constitutionally sufficient. *Id.* at 2, 111 S.Ct. at 314. However, the language used in the first sentence of the second paragraph was determined by the Supreme Court to be a proper limiting instruction to the *Shell* language in *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). This Court has repeatedly held this instruction to be constitutionally sufficient. *See, e.g., Puckett v. State*, 737 So.2d 322, 359–60 (Miss. 1999); *Jackson v. State*, 684 So.2d 1213, 1236–37 (Miss. 1996). This argument is wholly without merit.

*Knox I*, 805 So. 2d at 533.

Knox challenged Sentencing Instruction Number 12 *and* Sentencing Instruction Number 2 in *Knox II*. Besides ruling the UPCCRA's waiver bar precluded review of it, the state supreme court held Knox's limiting instruction claim lacked merit. Its *Knox II* Opinion states:

## I. INSTRUCTIONS 2 AND 12.

Knox first argues that portions of Sentencing Instructions 2 and 12 were vague and overbroad. The State answers that this issue was considered and found to be without merit on direct appeal. *See Knox*, 805 So.2d at 533–35. A review of this Court's opinion shows that only Instruction 12 was considered by this Court during Knox's direct appeal. Most of the argument based on Instruction 2 is not barred by res judicata, but Knox is procedurally barred from raising here any objections to Instruction 2 at this time under Miss. Code Ann. § 99–39–21(1). This Court has stated that

> [p]rocedural bars of waiver, different theories, and res judicata and exception thereto as defined in the post-conviction relief statute are applicable in death penalty post conviction relief applications. *Cole v. State*, 666 So.2d 767, 773 (Miss. 1995). Also, although this Court need not look

further after finding procedural bar, it may review the merits of the underlying claim knowing that any subsequent review will stand on the bar alone. *Blue v. State*, 674 So.2d 1184, 1191–92 (Miss. 1996).

*Brewer v. State*, 819 So.2d 1165, 1167–68 (Miss. 2000).

Knox complains about his portion of Instruction 2:

Whether the capital offense was especially heinous, atrocious or cruel in that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, in that Steve Knox bludgeoned and choked Miss Spears and stuffed her into the trunk of her car while she may have still been alive.

Knox argues first that Instruction 2 was the "functional equivalent of a directed verdict" on the heinous, atrocious or cruel issue. We disagree. Instruction 2 asks the jury to find whether the offense was heinous, atrocious or cruel in the context of acts it had already found that Knox had committed.

Knox next argues that his death sentence was based on speculation because the jury was instructed that Knox may have committed certain acts "while she may have still been alive." Though not in relation to this instruction, this Court, in discussing the circumstances of Ella Mae Spears's death on direct appeal, found that "the jury was not required to so speculate" as to whether her death was especially heinous. *Knox*, 805 So.2d at 534.

Last, Knox cites an Alabama case, *Barksdale v. State*, 788 So.2d 898 (Ala. Crim. App. 2000). Knox argues that *Barksdale* sets a higher standard for the heinous, atrocious and cruel aggravator. Whether it does or not is irrelevant, as *Barksdale* has not been adopted by this Court. This issue is without merit.

*Knox II*, 901 So. 2d at 1260–61.

### 1.  The procedural default doctrine bars review of Knox's limiting instructions issue.

Review of Knox's issue with Sentencing Instruction Numbers 2 and 12 is

barred by the procedural default doctrine because the state supreme court based

its decision to deny relief for this issue on the UPCCRA's waiver bar—an adequate and independent state-law ground. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g.*, *Spicer*, 2021 WL 4465828, at *3. A federal court may review a habeas claim that is subject to the adequate and independent state-law ground rule if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden to overcome or excuse a procedural default that results when a state court relies on an adequate and independent state law ground to deny relief for a claim is one that state prisoners must carry. *See Sones*, 61 F.3d at 416–18.

Knox does not try to overcome or excuse the procedural default that bars review of Knox's limiting instruction issue under Claim Four. He does not try to rebut the presumption that the UPCCRA's waiver bar is an adequate and independent state-law ground. He does not try to excuse this default with a showing of good cause and actual prejudice. *See Sones*, 61 F.3d at 418 (quoting *Coleman*, 501 U.S. at 750, then citing *Engle*, 456 U.S. at 128–31; *Sykes*, 433 U.S.

at 85–93). And he does not try to show federal review of this limiting instruction issue is necessary to prevent a fundamental miscarriage of justice.

The Court should refuse to grant Knox relief for the limiting instruction issue under Claim Four because that claim is procedurally defaulted without exception. Under Fifth Circuit precedent, Mississippi's time, waiver, and successive-writ bars are adequate and independent state procedural law grounds that will preclude federal review. *See Stokes*, 123 F.3d at 860. Review of this issue is barred. And because it is, Knox cannot obtain relief for it.

### 2. AEDPA's re-litigation bar prevents Knox from obtaining relief for his limiting instructions issue.

Even if the procedural default doctrine did not apply to Knox's limiting instruction issue, AEDPA's re-litigation bar does. Knox chooses to not address AEDPA's re-litigation bar or its exceptions under Claim Four. So the allegations under this issue do not state how the Mississippi Supreme Court unreasonably applied clearly established U.S. Supreme Court precedent when adjudicating this issue. This necessarily means that Knox could not show this issue would meet an exception under section 2554(d)(1) had he tried. For that reason, AEDPA's re-litigation bar stops him from relitigating and obtaining relief for it.

*Bell v. Cone*, 543 U.S. 447 (2005) provides the clearly established federal law that controls the resolution of Knox's limiting instruction issue. The *Bell* Opinion states

The only remaining question is whether the narrowing construction that the Tennessee Supreme Court applied was itself unconstitutionally vague. *See Walton*, 487 U.S., at 654; *Godfrey, supra*, at 428. It was not. In *State v. Dicks*, 615 S.W.2d 126 (Tenn. 1981), the state court adopted the exact construction of the aggravator that we approved in *Proffit*, 428 U.S., at 255: that the aggravator was "directed at '*the conscienceless or pitiless crime which is unnecessarily torturous to the victim.*'" *Dicks, supra, at 132. See also Sochor v. Florida, 504 U.S. 527, 536 (1992). In light of Proffitt, we think this interpretation of the aggravator, standing alone, would be sufficient to overcome the claim that the aggravating circumstance applied by the state court was "contrary to" clearly established federal law* under 28 U.S.C. § 2254(d)(1).

*Bell*, 543 U.S. at 457–58 (emphasis added). Sentencing Instruction Number 12 contains additional language just as the instruction that was at issue in *Bell* contained additional language.[13] The *Bell* Court also addressed the additional language in the Tennessee instruction. The *Bell* Opinion adds that

> even assuming that the Court of Appeals was correct to conclude that the State's statutory aggravating circumstance was facially vague, the court erred in presuming that the State Supreme Court failed to cure this vagueness by applying a narrowing construction on direct appeal. The state court did apply such a narrowing construction, and that construction satisfied constitutional demands by ensuring that respondent was not sentenced to death in an arbitrary or capricious manner. *See Godfrey*, 446 U.S., at 428, 100 S.Ct. 1759. The state court's affirmance of respondent's sentence on this ground was therefore not "contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), and the Court of Appeals was without power to issue a writ of habeas corpus. We reverse the judgment of the Sixth

---

[13] The Fifth Circuit, in a direct appeal case, rejected the claim that additional language almost identical to that contained in Sentencing Instruction Number S-2 renders an instruction on the HAV aggravating circumstance unconstitutional. *U.S. v. Hall*, 152 F.3d 381, 414–15 (5th Cir. 1998), *abrogated on other grounds by U.S. v. Martinez-Salazar*, 528 U.S. 304 (2000); *see U.S. v. Jones*, 132 F.3d 232, 249–50 (5th Cir. 1998).

Circuit and remand the case for further proceedings consistent with this opinion.

*Id.* at 459–60.

*Bell* forecloses any argument that the state supreme court's decision to deny Knox relief for his limiting instruction issue is contrary to or an unreasonable application of clearly established federal law. Sentencing Instruction Number 12 stated that the HAC aggravating circumstance was directed at "the conscienceless or pitiless crime which is necessarily torturous to the victim." (Doc. 72-2 at 8). And the Mississippi Supreme Court affirmed a decision that applied "a narrowing construction, and that construction satisfied constitutional demands by ensuring that [Knox] was not sentenced to death in an arbitrary or capricious manner." *See Bell*, 543 U.S. at 459–60 (citing *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)). The state court's affirmance of [Knox's] sentence on this ground was therefore not "'contrary to clearly established Federal law[.]'" *See id.* at 460 (quoting 28 U.S.C. § 2254(d)(1)). The state supreme court's affirmation of the state trial court's decision to give Sentencing Instruction Number 12 is entirely consistent with and a reasonable application of clearly established federal law. AEDPA's re-litigation bar stops Knox from relitigating and obtaining relief for his limiting instruction issue under Claim Four.

### 3. Knox's limiting instruction issue has no merit.

What's more, *Bell* addresses this exact issue and makes clear that this issue lacks merit. So even if this issue had not been defaulted and were not subject to AEDPA's re-litigation bar, Knox still could not obtain relief for it. This issue fails because it is based entirely on Knox's selective reading of Sentencing Instruction Number 2. Challenges like this one require the jury instructions given at trial to be read as a whole. And when the penalty-phase instructions that were given are read as a whole, including Sentencing Instruction Numbers 2 and 12, *Bell* makes clear that the Mississippi Supreme Court affirmed a decision that applied "a narrowing construction, and that construction satisfied constitutional demands by ensuring that [Knox] was not sentenced to death in an arbitrary or capricious manner." *See Bell*, 543 U.S. at 459–60 (citing *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).

### B. Knox cannot obtain relief for his issue with the sufficiency of his capital-murder indictment.

Knox's second issue under Claim Four challenges the legal sufficiency of his capital murder indictment. (Doc. 85 at 238). Relying on *Ring v. Arizona*, 535 U.S. 584 (2002), Knox argues his capital-murder indictment was constitutionally deficient because it did not include the aggravating circumstances that the State intended to rely on at trial. As shown below, Knox cannot obtain relief for his sufficiency-of-the-indictment issue under Claim Four.

But first, the Mississippi Supreme Court adjudicated this claim on the merits and refused to grant Knox relief for it in *Knox II*. The *Knox II* Opinion reads:

## VIII. SUFFICIENCY OF THE INDICTMENT.

Knox next argues that his indictment was defective because the aggravating factors were not included in the indictment. He cites *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); and *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001).

The State answers that this issue was raised, considered and found to be without merit by this Court in *Simmons v. State*, 869 So.2d 995 (Miss. 2004), *Puckett v. State*, 879 So.2d 920 (Miss. 2004) and *Berry v. State*, 882 So.2d 157 (Miss. 2004). This Court found that *Ring's* holding was that juries must find aggravating factors; that in Mississippi, only juries can find aggravating factors in capital cases; and that none of the cases cited by Petitioners mandated that indictments for state capital defendants include all aggravating factors. This issue is without merit.

*Knox II*, 901 So. 2d at 1269.

> 1. **AEDPA's re-litigation bar prevents Knox from obtaining relief for his sufficiency-of-the-indictment issue.**

The Court should refuse to grant Knox relief for his issue with the sufficiency of his capital-murder indictment because AEDPA's re-litigation bars Knox from relitigating this issue and obtaining relief for it. The *Knox II* Opinion shows that the Mississippi Supreme Court relied on its holdings in *Simmons v. State*, 869 So. 2d 995 (Miss. 2004), *Puckett v. State*, 879 So. 2d 920 (Miss. 2004), and *Berry v. State*, 882 So. 2d 157 (Miss. 2004), as the basis for its decision to deny

Knox relief for this issue. In those cases, the state supreme court relied on the

*Ring's* teachings as the basis for denying those defendants requests for relief.

Looking to the *Simmons* Opinion, it says,

> Simmons's argument is that because *Ring* found the *Apprendi*
> decision persuasive on the issue of Arizona's enumerated
> aggravating factors operating as "the functional equivalent of an
> element of a greater offense," the Supreme Court necessarily adopted
> every other rule stated in *Apprendi* for state capital sentencing
> proceedings, specifically the rule first cited in *Jones v. United States*,
> that the Constitution requires that aggravating factors be listed in
> indictments. We find this argument is incorrect. *Ring* only found
> juries must find aggravating factors: "*Ring's* claim is tightly
> delineated: He contends only that the Sixth Amendment required
> jury findings on the aggravating circumstances asserted against
> him. . . . ." Finally, *Ring* does not contend that his indictment was
> constitutionally defective. *See Apprendi*, 530 U.S. at 477 n. 3, 120
> S.Ct. 2348 (Fourteenth Amendment "has not . . . been construed to
> include the Fifth Amendment right to 'presentment or indictment of
> a Grand Jury'"). *Ring*, 536 U.S. at 597 n. 4, 122 S.Ct. 2428.

*Simmons*, 869 So. 2d at 1010.

And the *Puckett* Opinion echoes *Simmons* where it states,

> Puckett argues that because *Ring* found the *Apprendi* decision
> persuasive on the issue of Arizona's enumerated aggravating factors
> operating as "the functional equivalent of an element of a greater
> offense," the Supreme Court necessarily adopted every other rule
> stated in *Apprendi* for state capital sentencing proceedings,
> specifically the rule first cited in *Jones v. United States*, that the
> Constitution requires that aggravating factors be listed in
> indictments. We find this argument is incorrect. *Ring* only found that
> juries must find aggravating factors: "*Ring's* claim is tightly
> delineated: He contends only that the Sixth Amendment required
> jury findings on the aggravating circumstances asserted against
> him. . . . ." Finally, *Ring* does not contend that his indictment was
> constitutionally defective. *See Apprendi*, 530 U.S. at 477 n. 3, 120
> S.Ct. 2348 (Fourteenth Amendment "has not . . . been construed to

include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'"). *Ring*, 536 U.S. at 597 n. 4, 122 S.Ct. 2428.

*Puckett*, 879 So. 2d at 945–46.

Finally, the *Berry* Opinion gives the most complete explanation of the state supreme court's reasoning for rejecting issues like Knox's sufficiency-of-the-indictment issue. The *Berry* Opinion states that,

> The decisions in *Ring* and *Apprendi* did not address state indictments, and *Jones* was based on a federal criminal statute and the Fifth Amendment, which is not applicable to the states. Berry argues that his indictment was unconstitutional because it failed to include and specify the aggravating factors used to sentence him to death. For support, he relies on *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Because *Ring* is an intervening decision, this issue avoids the procedural bar.

> In *Jones*, the Supreme Court was asked to decide whether the federal carjacking statute provided for three distinct offenses or a single crime with a choice of three maximum penalties, two of which were dependent on sentencing factors exempt from the requirements of charge and jury verdict. *Jones*, 526 U.S. at 229, 119 S.Ct. 1215. Finding that it provided for three distinct offenses with differing punishments based on the degree of violence employed or physical harm inflicted, the Court held that the aggravating factors necessary to trigger the escalating penalties fell within the province of the jury. *Id.* at 251-52, 119 S.Ct. 1215. Succinctly, the Court stated:

>> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt.

> *Id.*, at 243 n. 6, 119 S.Ct. 1215 (emphasis added).

> In *Apprendi*, the defendant was arrested after he fired several shots into the New Jersey home of an African-American family. *Apprendi*,

530 U.S. at 469-70, 120 S.Ct. 2348. Subsequently, he was indicted on numerous state charges, including second-degree possession of a firearm. *Id.* He then was convicted of, inter alia, second-degree possession of a firearm, an offense carrying a maximum penalty of ten years. On the prosecutor's motion, the sentencing judge found by a preponderance of the evidence that the crime had been motivated by racial animus. As such, it triggered the state "hate crime enhancement" resulting in the judge sentencing the defendant to twelve years, two years over the maximum but for the enhancement. *Id.*

On certiorari, *Apprendi* argued, inter alia, that due process required that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt. Relying in part on *Jones*, the Supreme Court agreed, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

Relevant to the instant appeal, the *Apprendi* Court noted, "*Apprendi* has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Id.* at 477 n. 3, 120 S.Ct. 2348.

Finally, in *Ring v. Arizona*, the Supreme Court considered whether the Arizona capital sentencing regime was still constitutional following its holding from *Apprendi*. Arizona law provided that after the defendant was convicted by a jury, the trial judge was required to conduct a hearing and make the final determination by a preponderance of evidence as to the presence of aggravating factors required for the imposition of the death penalty. *Ring*, 536 U.S. at 587, 122 S.Ct. 2428.[6] Finding it unconstitutional, the Court stated:

> [W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S. at 647-649, 110 S.Ct. at 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

....

> "The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. . . . If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it."

>> The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death. We hold that the Sixth Amendment applies to both.

*Ring*, 536 U.S. at 609, 122 S.Ct. 2428 (citation omitted).

The practical function of the *Ring* decision was only to clarify the fact that in the "functional equivalent" doctrine, there was no distinction in capital matters and that under the Sixth Amendment any fact that is such must be found by a jury.

In the instant appeal, Berry argues that, because the *Ring* relied in part on the reasoning from *Jones*, which was subsequently relied on in *Apprendi*, states are now obligated to comply with its holding with the indictment requirement. We disagree for two reasons, which the *Ring* Court conveniently noted in footnote number four of the majority opinion. In it, the Supreme Court stated:

> Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. . . . *Finally, Ring does not contend that his indictment was constitutionally defective. See Apprendi, 530 U.S., at 477, n. 3, 120 S.Ct. 2348 (Fourteenth Amendment "has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'").*

*Ring*, 536 U.S. at 597 n. 4, 122 S.Ct. 2428 (emphasis added).

First, like *Apprendi*, the *Ring* Court specifically noted that its opinion did not address the constitutionality of the indictment; and therefore, it never spoke to whether states are required provide such charges in their indictments.

Second, Berry's argument requires reading together the decisions from *Jones*, *Apprendi*, and *Ring*. However, *Apprendi* and *Ring* were

based on the guarantees contained in the Sixth Amendment. *Jones* addressed a federal statute and was based on, in addition to the Sixth Amendment's notice and jury trial guarantees, the due process clause of the Fifth Amendment, which does not apply to the states. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). Thus, Berry's argument is without merit.

The State cites the same reasons why we should reject Berry's argument. In addition, the State argues that even if the *Apprendi* and *Ring* cases were applicable, they could not be applied retroactively. Because Berry's argument is without merit, analysis of potential retroactivity is omitted.

---

[6] As recently as 1990, the Supreme Court reviewed Arizona's sentencing scheme in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and held that the sentencing scheme was compatible with the Sixth Amendment because additional facts found by the judge qualified as sentencing considerations, not as elements of the offense of capital murder. *Walton*, 497 U.S. at 649, 110 S.Ct. 3047.

However, the Court's reasoning in *Apprendi* was irreconcilable with the holding from *Walton* and because the Court did not expressly overrule *Walton* in its decision from *Apprendi*, the Court granted certiorari to address the conflict. *Ring*, 536 U.S. at 588-89, 122 S.Ct. 2428.

*Berry*, 882 So. 2d at 170-73.

The *Ring* and *Apprendi* Opinions contradict Knox's argument. In each case, the U.S. Supreme Court specifically held that it was not addressing the question of whether aggravating circumstances must be included in a capital-murder indictment. To reiterate, the *Ring* Opinion notes: "Ring does not contend that his indictment was constitutionally defective. *See Apprendi*, 530 U.S., at 477, n. 3, 120 S.Ct. 2348 (*Fourteenth Amendment "has not . . . been construed to include the*

*Fifth Amendment right to 'presentment or indictment of a Grand Jury'"). Ring*,

530 U.S. at 584, n. 4 (emphasis added). And the *Apprendi* Opinion states,

> Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crimes encompasses the right to a trial by jury, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the right to have every element of the offense proved beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury" that was implicated in our recent decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *We thus do not address the indictment question separately today.*

*Apprendi*, 530 U.S. at 477, n. 3 (emphasis added).

Knox incorrectly reads *Ring* and relies on his incorrect reading as the basis of his sufficiency-of-the-indictment issue. Neither *Ring* nor *Apprendi*, or any other U.S. Supreme Court decision, holds a capital murder indictment must set out the aggravating circumstances that the State intends to present to a penalty-phase jury in a case in which the State is pursuing a sentence of death. There is no clearly established federal law that requires the states to set out the aggravating circumstances in a capital-murder indictment. So Knox cannot show the Mississippi Supreme Court's adjudication of his sufficiency-of-the-indictment issue is contrary to or an unreasonable application of clearly established federal law. And because he cannot make that showing, AEDPA's re-litigation bar

precludes Knox from relitigating or obtaining relief for his sufficiency-of-the-indictment issue under Claim Four.

### 2. Knox's sufficiency-of-the-indictment issue lacks merit.

Even if AEDPA's re-litigation bar were inapplicable, Knox would not be entitled to relief for his sufficiency-of-the-indictment issue. The Fifth Amendment's presentment by indictment provision does not apply to the states. *See Bartkus v. Illinois*, 359 U.S. 121 (1959); *Hurtado v. California*, 110 U.S. 516 (1884). And both *Ring* and *Apprendi state* that the Fifth Amendment's provision concerning the right to presentment or indictment of a Grand Jury has never been applied to the States through the Fourteenth Amendment.

In *Knox II*, Knox insisted that the aggravating circumstances had to appear in his capital-murder indictment because the U.S. Supreme Court vacated the Eighth Circuit's judgment in *U.S. v. Allen*, 247 F.3d 741 (8th Cir. 2001) and remanded for reconsideration in light of *Ring*. *Allen v. United States*, 536 U.S. 953 (2002). *Allen* was a federal case where the federal government was seeking to impose the death penalty. Under those facts and given the footnotes in *Ring* and *Apprendi*, the Court concluded that the Fifth Amendment's right to presentment provision pertaining applied. What's more, the Eight Circuit, on remand, ruled the failure to include the aggravating circumstances in Allen's indictment was harmless. *See U.S. v. Allen*, 406 F.3d 940 (8th Cir. 2004).

So even if *Ring's* holding applied (it does not), Knox would not be entitled to relief under the reasoning of the remand opinion in *Allen*. The indictment charged Knox with one count of capital murder committed during the commission of a robbery. That Knox committed the capital offense during the commission of a robbery was one of the aggravating circumstances that the State relied on at trial. In other words, Knox's capital-murder indictment set out one of the aggravating circumstances. So even if *Ring's* holding made the Fifth Amendment's right to presentment applicable to the states through the Fourteenth Amendment, Knox still would not be entitled to relief for his sufficiency-of-the-indictment issue because his alleged deficiency would, at best, amount to harmless error.

C.    **Knox cannot obtain relief for his form-of-the-verdict issue.**

Knox's next issue under Claim Four concerns the form of the penalty-phase verdict. (Doc. 85 at 238–40). He contends that, because Sentencing Instruction Number 2 was worded in the disjunctive, the jury found the aggravating circumstances in the disjunctive and failed to return a penalty-phase verdict in proper form. Knox cannot obtain relief for this issue as demonstrated below.

To start, the Mississippi Supreme Court ruled the UPCCRA's waiver bar precluded review of this issue and alternatively ruled it to lack merit. The modified Opinion[14] entered in *Knox II* states:

> Knox argues that a portion of Sentencing Instruction 2 was improperly worded and allowed for an improper finding by the jury. Instruction 2 stated in part:
>
>> Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>>
>> 1. Whether the capital offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a robbery, in that Steven Knox was attempting to rob Miss Ella Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises.
>
> Knox argues that the jury's verdict did not establish that the jury found the existence of aggravating circumstances beyond a reasonable doubt, as some jurors could have found that a robbery occurred, others could have found that attempt to rob occurred, and still others could have found that flight after a robbery occurred.
>
> The State argues first that there was no objection to this instruction at trial and its submission was not raised as an error on direct appeal, and Knox is procedurally barred from raising it here for the first time. See MISS. CODE ANN. § 99-39-21(1). The Court agrees that Knox is procedurally barred from raising this issue.
>
> As to the merits, the State argues that Knox only quotes part of the instruction, and when Instruction 2 is read in its entirety

---

[14] Respondents attached a copy of the modified Opinion in *Knox II* as Exhibit A to their original Memorandum in support of their original Answer. (Doc. 40-1). They did so because the modified Opinion was not published in the Southern Reporter at 901 So. 2d 1257. The state supreme court modified its *Knox II* Opinion to correctly reflect its resolution of Knox's form-of-the-verdict issue and substituted its original Opinion in *Knox II* with its modified Opinion in June 2002. (Doc. 73-2 at 3). But for unknown reasons, the modified Opinion was not published by West Publishing. So Respondents attached the modified Opinion in *Knox II* to their Memo in Support of their Original Answer as Exhibit A (Doc. 40-1). The portion of this Answer to Knox's Second Amended Petition that responds to Knox's form-of-the-verdict issue quotes from and relies on the modified Opinion entered in *Knox II*.

there is no error or danger of alternative findings. The part of the instruction Knox quotes is taken from MISS. CODE ANN. § 99-19-101(5)(d), and is stated in the disjunctive. However, the factual portion of the instruction which follows narrows the aggravating circumstance so that the jury, in its decision on the aggravator in question, was finding only that Knox was attempting to rob Ella Mae Spears when he killed her. This issue is procedurally barred and, alternatively without merit.

(Doc. 40-1 at 21–22).

### 1. The procedural default doctrine bars review of Knox's form-of-the-verdict issue.

Review of Knox's form-of-the-verdict issue is barred by the procedural default doctrine because the state supreme court based its decision to deny relief for this issue on the UPCCRA's waiver bar—an adequate and independent state-law ground. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g., Spicer*, 2021 WL 4465828, at *3. A federal court may review a habeas claim that is subject to the adequate and independent state-law ground rule if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden to overcome or excuse a procedural default that results

when a state court relies on an adequate and independent state law ground to deny relief for a claim is one that state prisoners must carry. *See Sones*, 61 F.3d at 416–18.

Knox does not try to overcome or excuse the procedural default that bars review of his form-of-the-verdict issue under Claim Four. He does not try to rebut the presumption that the UPCCRA's waiver bar is an adequate and independent state-law ground. He does not try to excuse this default with a showing of good cause and actual prejudice. *See Sones*, 61 F.3d at 418 (quoting *Coleman*, 501 U.S. at 750, then citing *Engle*, 456 U.S. at 128–31; *Wainwright*, 433 U.S. at 85–93). And he does not try to show federal review of his form-of-the-verdict issue is necessary to prevent a fundamental miscarriage of justice.

The Court should refuse to grant Knox relief for his form-of-the-verdict issue under Claim Four because that claim is procedurally defaulted without exception. Again, Fifth Circuit precedent holds the UPCCRA's waiver bar is an adequate and independent state law ground that will preclude federal review. *See Stokes*, 123 F.3d at 860 (ruling the state's waiver bar at Mississippi Code Annotated section 99-39-21(1) is an adequate and independent state procedural law ground that will preclude federal review). This issue is procedurally defaulted and Knox does not try to excuse or avoid his default. So review of this issue is barred. And because it is, Knox cannot obtain relief for it.

## 2. AEDPA's re-litigation bar prevents Knox from obtaining relief for his form-of-the-verdict issue.

Even if the procedural default doctrine did not bar review, AEDPA's re-litigation bar does. Knox chooses to not address AEDPA's re-litigation bar or its exceptions under his form-of-the-verdict issue. As a result, the allegations under this issue do not state how the Mississippi Supreme Court supposedly applied clearly established U.S. Supreme Court precedent when adjudicating this issue in an unreasonable manner. Nor does Knox rebut section 2254(e)(1)'s presumption of correctness, which is owed to the Mississippi Supreme Court's factual findings. In any event, AEDPA's re-litigation bar blocks Knox him from relitigating and obtaining relief for his form-of-the-verdict issue under Claim Four.

What Knox argues here is that Sentencing Instruction Number 2 violates the federal constitution because that instruction prevented the jury from finding at least one aggravating circumstance existed beyond a reasonable doubt. (Doc. 85 at 238–39). He supports this position by selectively quoting from the portion of Sentencing Instruction Number 2 where it lists the first of two aggravating circumstances. He says the portion of Sentencing Instruction Number 2 that reads, "[t]he capital offense was committed while the defendant was engaged in the commission, of, or an attempt to commit, or flight after committing or attempting to commit, a robbery…[,]" allowed individuals jurors to find one of two facts. (Doc. 85 at 239). The instruction's disjunctive wording, he contends, makes it impossible

to determine whether the jury found Knox committed the capital offense while committing a robbery *or* attempting to commit a robbery *or* while fleeing the scene of a robbery or an attempted robbery beyond a reasonable doubt. And because *Apprendi v. New Jersey* holds the rule that any fact increasing the penalty of a crime that exceeds the statutory maximum, save a prior conviction, must be presented to a jury and proven beyond a reasonable doubt, *see* 530 U.S. at 476, Knox says he is entitled to relief.

Not so. Knox's form-of-the-verdict issue is based on an incorrect reading of *Apprendi. Death* is the *statutory maximum* sentence for a capital murder conviction in Mississippi. *Bennett v. State*, 933 So. 2d 930, 952 (Miss. 2006). *Apprendi's* rule does not, and did not, apply in Knox's case. So Knox does not, and cannot, show the decision to deny relief for this issue in *Knox II* rests on an unreasonable application of *Apprendi* "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. AEDPA's re-litigation bar stops Knox from relitigating and obtaining relief for his form-of-the-verdict issue.

### 3.    Knox's form-of-the-verdict issue lacks merit.

Even if the procedural default doctrine and AEDPA's re-litigation bar were inapplicable, Knox cannot obtain relief for his form-of-the-verdict issue under Claim Four. He cannot because this issue lacks merit. The portion of Sentencing Instruction Number 2 that Knox challenges and selectively quotes from, states:

Consider only the following elements of aggravation in determining whether the death penalty should be imposed:

1. Whether the capital offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a robbery, *in that Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises.*

(Doc. 72-2 at 5) (emphasis added). The penalty-phase verdict states that the jury unanimously found the aggravating circumstances of:

1. The capital offense was committed while the defendant was engaged in the commission, of, or an attempt to commit, or flight after committing or attempting to commit, a robbery, *in that Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises.*

2. The capital offense was especially heinous, atrocious, or cruel in that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, in that Steve Knox bludgeoned and choked Miss Spears and stuffed her into the truck of her car while she may have still been alive

Exist beyond a reasonable doubt and are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we further find unanimously that the defendant should suffer death.

(Doc. 72-2 at 53, 55) (emphasis added).

When read in its entirety, Sentencing Instruction Number 2 instructed the jury to consider as an aggravating factor whether "Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises" (Doc. 72-2 at 5). And the penalty-phase

verdict makes clear that the jury found both aggravating circumstances in Sentencing Instruction Number 2 existed beyond a reasonable doubt. (Doc. 72-2 at 53, 55). In particular, the penalty-phase verdict makes clear that the jury found the first aggravating circumstance existed and that the State proved beyond a reasonable doubt that "Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises" (Doc. 72-2 at 53).

Knox's form-of-the-verdict issue lacks merit. The sentencers unanimously found Knox "Steve Knox was attempting to rob Mis [sic] Ella Mae Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises" beyond a reasonable doubt. (Doc. 72-2 at 53). Knox is not entitled to relief for his form-of-the-verdict issue. And because he is not, the Court should refuse to issue the Writ for this issue.

### D. Knox cannot obtain relief for his issue with the evidence supporting the penalty-phase verdict under Claim Four.

Knox raises a fourth issue under Claim Four that challenges the sufficiency of the evidence supporting the second aggravating circumstance, the HAC aggravating circumstance, in Sentencing Instruction 2. (Doc. 85 at 240–41). As Knox sees it, Sentencing Instruction Number 2 required the jury to speculate because no rational juror could have found he bludgeoned and choked Ms. Spears and stuffed her into the trunk of her car while she may have still be alive. (Doc. 85

at 241). And yet, he readily admits that there was "proof about [Ms. Spears's] cause of death" presented to the jury "via the medical examiner who testified for the State, Dr. Steven Hayne, who testified that the victim had died by manual strangulation." (Doc. 85 at 241). The Court should deny this issue for the reasons below.

To start, the Mississippi Supreme Court adjudicated this issue on the merits and denied relief for it in *Knox II* based on its determination of a related claim that the state court adjudicated in *Knox I*. The *Knox II* Opinion says:

> Knox next argues that his death sentence was based on speculation because the jury was instructed that Knox may have committed certain acts "while she may have still been alive." Though not in relation to this instruction, this Court, in discussing the circumstances of Ella Mae Spears's death on direct appeal, found that "the jury was not required to so speculate" as to whether her death was especially heinous. *Knox*, 805 So.2d at 534.

*Knox II*, 901 So. 2d at 1261. And as it relates to this issue, the *Knox I* Opinion states:

> Knox also argues that the State failed to offer evidence sufficient to support the instruction. Again, when reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. *Evans v. State*, 725 So.2d 613, 691 (Miss. 1997) (reviewing sufficiency of evidence to support aggravating circumstance). This Court finds that there was sufficient evidence in the record to warrant the instruction.
>
> This Court has stated that the number of wounds and the fact that death was not immediate, but prolonged may be properly considered as evidence supporting a jury's finding of the aggravating factor at issue. *Davis v. State*, 684 So.2d 643, 662 (Miss. 1996). Dr. Steven Hayne, who performed the autopsy on Spears, testified that the

cause of death was manual strangulation. The proof demonstrates that the strangulation caused large amounts of blood to accumulate in Spears's lungs, which would have resulted in a slow, heinous death, taking anywhere from one to three minutes. Dr. Hayne testified that death by manual strangulation is painful and that Spears's body showed that she had struggled against her attacker. Spears suffered extensive bruising on the face, chest, and neck as well as cuts and abrasions on those areas. Dr. Hayne testified that there was extensive bleeding from by cuts on the forehead as well as from the nose and mouth. Dr. Hayne explained that Spears's blood had escaped from the blood vessels, travelled up the airway, mixed with air forming bloody froth, and eventually left the nose and mouth and flowed over the external surface of her body.

Knox relies on *Taylor v. State*, 672 So.2d 1246 (Miss. 1996), for the proposition that death by strangulation cannot be an "especially heinous" manner of death. *Taylor* is distinguishable from the case sub judice. In *Taylor*, the victim's badly decomposed body was found nearly two months after her disappearance. There was no evidence before the jury as to how the crime was actually committed or that the victim was even conscious or aware of her impending death at the time of the murder. *Id.* at 1276 (majority), 1278 (Lee, C.J., concurring). This Court concluded that whether the victim's death was "especially heinous" was purely a matter of speculation. *Id.* at 1276.

In the case sub judice, the jury was not required to so speculate. The proof demonstrated that Spears was conscious at the time of her death, that her death was slow and painful, that she struggled against her attacker, and that she suffered numerous injuries to her body, all prior to being stuffed into the trunk of her car. This assignment of error is without merit.

*Knox I*, 805 So. 2d at 533–34.

### 1. The procedural default doctrine bars review of Knox's sufficiency-of-the-evidence issue.

Review of Knox's sufficiency-of-the-evidence issue is barred by the

procedural default doctrine because the state supreme court clearly and expressly

based its decision to deny relief for this issue on the UPCCRA's waiver bar, which

is an adequate and independent state-law ground. *Knox II*, 901 So. 2d at 1260–61 (quoting *Brewer v. State*, 819 So. 2d 1165, 1167–68 (Miss. 2000)). "[A] federal court may not review federal claims that were procedurally defaulted in state court— that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g.*, *Spicer*, 2021 WL 4465828, at *3. A federal court may review a habeas claim that is subject to the adequate and independent state-law ground rule if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden to overcome or excuse a procedural default that results when a state court relies on an adequate and independent state law ground to deny relief for a claim is one that state prisoners must carry. *See Sones*, 61 F.3d at 416–18.

Knox does not try to overcome or excuse the default that bars review of his sufficiency-of-the-evidence issue under Claim Four. He does not try to rebut the presumption that the UPCCRA's waiver bar is an adequate and independent state-law ground. He does not try to excuse this default with a showing of good cause and actual prejudice. And he does not try to show federal review of his form-of-the-verdict issue is necessary to prevent a fundamental miscarriage of justice.

The Court should refuse to grant Knox relief for his sufficiency-of-the-evidence issue because it is procedurally defaulted and no exception applies. To reiterate, Fifth Circuit precedent holds the UPCCRA's waiver bar is an adequate and independent state law ground that will preclude federal review. *See Stokes*, 123 F.3d at 860. This issue is procedurally defaulted and Knox does not try to excuse or avoid his default. So review of this issue is barred. And because it is, Knox cannot obtain relief for it.

### 2. AEDPA's re-litigation bar prevents Knox from obtaining relief for his sufficiency-of-the-evidence issue.

The procedural default doctrine bars review of this issue. But assuming it that did not, AEDPA's re-litigation bar does. Knox cites no legal authority under his sufficiency-of-the-evidence issue, much less address AEDPA's re-litigation bar or its exceptions. As a result, the allegations under this issue do not give the slightest hint that might suggest what clearly established federal law the Mississippi Supreme Court supposedly applied in an objectively unreasonable manner. Nor does Knox try rebutting section 2254(e)(1)'s presumption of correctness that accompanies the state supreme court's factual findings. There is no question that AEDPA's re-litigation bar blocks Knox from relitigating and obtaining relief for this issue under Claim Four. So even if the procedural default doctrine did not bar review of Knox's sufficiency-of-the-evidence issue, AEDPA's re-litigation bar stops Knox from relitigating this issue and obtaining relief for it.

### 3. Knox's sufficiency-of-the-evidence issue lacks merit.

Even if the procedural default doctrine and AEDPA's re-litigation bar were inapplicable, Knox cannot obtain relief for his sufficiency-of-the-evidence issue because it lacks merit. Again, he argues there's no evidence supporting the jury's determination that his crime was heinous, atrocious, or cruel one, but admits that the State presented evidence at trial to support this aggravating circumstance. (Doc. 85 at 240–41). Knox does not seriously contest the sufficiency of the evidence supporting the jury's finding that Ms. Spears's murder was especially heinous, atrocious, or cruel. He merely speculates that Ms. Spears "must have been dead before she was placed in the trunk of her automobile." (Doc. 85 at 241).

Knox's bald speculation amounts to biased conjecture that proves absolutely nothing. As the Mississippi Supreme Court explained, the State's evidence "demonstrated that Spears *was conscious at the time of her death, that her death was slow and painful, that she struggled against her attacker, and that she suffered numerous injuries to her body, all prior to being stuffed into the trunk of her car.*" *Knox I*, 805 So. 2d at 534 (emphasis added). Knox's sufficiency-of-the-evidence lacks merit and should be denied.

In sum, Knox is simply not entitled to federal habeas relief for any issue under Claim Four in his Second Amended Petition. All four issues under Claim Four are procedurally defaulted, subject to AEDPA's re-litigation bar, and completely without merit. There is no question that Claim Four must be denied.

## VI.    Knox cannot obtain relief for Claim Five.

Last, and perhaps least, Knox argues the aggregate effect of trial counsel's errors denied him due process and a fair trial. (Doc. 85 at 241–43). He says trial counsel failed to: (1) preserve "the *Batson* issues"; (2) conduct an investigation as to "whether some other person committed this murder"; (3) secure funding for "necessary experts" for an "effective defense"; and, (4) conduct a mitigation investigation that would have yield "highly relevant" mitigating evidence and testimony. (Doc. 85 at 241–42). But Knox does not try to show the Mississippi Supreme Court's decision to deny Knox's cumulative-error claim in *Knox III*, in *Knox I*, or in *Knox II* was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts based on the information that he presented in *Knox III*. Here too, Knox implicitly asks this Court to consider Claim Five de novo.

To begin, the Mississippi Supreme Court denied both cumulative-error claims that Knox raised during his state-court proceedings. The state supreme court denied Knox's first cumulative-error claim in the written opinion entered in *Knox II* that reads:

> **II. CUMULATIVE ERROR.**
>
> Knox next argues that he is entitled to relief based on cumulative error, though he does not name any specific issues. Considering the issues he has raised previously, along with those not yet discussed,

we find no error sufficient to allow him to proceed in the trial court, cumulative or otherwise.

Knox argues that a reviewing court must also consider the cumulative effect of counsel's deficient performance. This Court did so under discussion of Issues II and VII, and found no cumulative error.

*Knox II*, 901 So. 2d at 1269.[15]

The Mississippi Supreme Court denied Knox's second cumulative-error claim eighteen years later in *Knox III*. Its unpublished En Banc Order states:

Lastly, Knox argues that cumulative error warrants that he receive a new sentencing hearing. When individual errors standing alone do not constitute reversible error, there is an avenue to obtain relief through applying the cumulative-error standard. There, we look to whether the cumulative effect of all errors deprived a defendant of a fundamentally fair and impartial trial. *McFee v. State*, 511 So. 2d 130 (Miss. 1987). Knox presented no argument as to why this claim should be excepted from the procedural bars.

(Doc. 75-10 at 298–99).

## A.  AEDPA's time bar precludes review of Claim Five.

Knox raised all the newly asserted claims in his Second Amended Petition, including Claim Five, more than seventeen years after filing his original Petition (Doc. 9) and years after October 21, 2005, the last day of his one-year limitations

---

[15] The claims addressed before Knox's first cumulative-error claim were: (1) sentencing instructions 2 and 12 are vague and overbroad, (2) IATC for failing to make a *Batson* objection, present a defense, investigate and present mitigation evidence, and investigate competency to stand trial; (3) insufficient evidence supports the underlying felony conviction; (4) the State's death penalty statutes are unconstitutional; and, (5) Knox's sentence is disproportionate. *Knox II*, 901 So. 2d at 1261–69. The claims addressed after Knox's first cumulative-error claim in *Knox II* were: (1) the indictment is deficient; (2) sentencing instruction 2 permits an improper finding; (3) sentencing instruction 11 does not define "a preponderance of the evidence"; (4) admitting photos of Ms. Spears is error; and (5) Knox's sentence is disproportionate. *Id.* at 1269–71.

period for filing a habeas petition. There is no question that Claim Five is untimely. It must qualify for relation-back under Rule 15(c)(2) to avoid section 2244(d)(1)'s time bar. *See Mayle*, 545 U.S. at 662–63; *see also* Habeas R. 12.

To qualify for relation-back, Claim Five and a claim in Knox's original Petition must arise out of the same "'conduct, transaction, or occurrence.'" *See id.* at 655 (quoting Fed. R. Civ. P. 15(c)(2)). Claim Five and a claim in Knox's original Petition arise out of the same conduct, transaction, or occurrence only if both claims "are tied to a common core of operative facts." *See id.* at 664. Knox's original Petition does not assert a cumulative-error claim. (Doc. 9). So Claim Five operates under a different and distinct legal theory from the claims in Knox's original Petition. More importantly, Claim Five operates under a set of operative facts that differs from those supporting the claims in the twenty-seven pages of Knox's original Petition.

For example, the second claim in Knox's original Petition asserts that counsel was ineffective for failing to object to the State's peremptory strikes at trial. (Doc. 9 at 11–14). The entire claim appears in just over three pages. Claim Five in Knox's Second Amended Petition alleges a due process violation based on the cumulative effect of trial counsel's errors, including those alleged under Claim One. Claim One, like the second claim in Knox's original Petition, asserts discrimination in jury selection. But unlike the second claim in Knox's original Petition, Claim One spans ninety pages and asserts IATC for failing

to object to the State's use of peremptory strikes against black and female venire members.

Section 2244(d)(1)'s time bar precludes review of Claim Five in the Second Amended Petition. Knox raised Claim Five years after his one-year time limitations period expired. And Claim Five does not qualify for relation-back under Federal Rule of Civil Procedure 15(c)(2). Claim Five and the claims in Knox's original Petition are not tied together by a common core of operative facts and, sometimes, assert different legal theories. So Rule 15(c)(2)'s relation-back provision cannot save Claim Five from section 2244(d)(1)'s time bar. Knox cannot obtain relief for Claim Five because it is untimely.

### B.   Claim Five does not meet AEDPA's exhaustion requirement.

Knox did not properly exhaust Claim Five in *Knox III* because he did not fairly present that claim to the Mississippi Supreme Court. "The law 'requires a state prisoner to present the state courts with the *same claim* he urges upon the federal courts.'" *See Russell*, 68 F.4th at 269 (brackets omitted) (quoting *Lucio*, 987 F.3d at 464 (quoting *Picard*, 404 U.S. at 276)). To fairly present it, Knox had to present Claim Five to the Mississippi Supreme Court in a manner consistent with state law. *See id.* at 269–70 (quoting *Lucio*, 987 F.3d at 464, and citing 28 U.S.C. § 2254(b)(1)(A)). "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation and to do so *consistent with*

*their own procedures….*" *Shinn*, 596 U.S. at 379 (emphasis added) (internal citations, punctuation, and some brackets omitted).

Knox did not properly exhaust Claim Five in *Knox III*. He had no available state-court remedies when the decision in *Knox II* became final. State law required the state supreme court to dismiss Claim Five and the other claims in his Second Amended Petition for several procedural failures. *See id.* at 378 (quoting *Ngo*, 548 U.S. at 92–93); *Sones*, 61 F.3d at 416 (citing *Engle*, 456 U.S. at 125 n. 28). The claims in Knox's Second Amended Petition, including Claim Five, were technically exhausted and procedurally defaulted. *See id.* (quoting *Davila*, 582 U.S. at 528). So rather than present those claims to the state supreme court, Knox presented five state-law PCR IAC claims, including one based on an alleged failure to assert a cumulative-error claim like Claim Five.

That said, Knox did not properly exhaust the cumulative-error claim under Claim Five in state court. "The law 'requires a state prisoner to present the state courts with the *same claim* he urges upon the federal courts.'" *Russell*, 68 F.4th at 269 (brackets omitted) (quoting *Lucio*, 987 F.3d at 464 (quoting *Picard*, 404 U.S. at 276)). Knox presented five PCR IAC claims, hoping to avoid the state's statutory bars to post-conviction review. Doing so effectively denied the Mississippi Supreme Court of a fair opportunity to pass on Claim Five. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). It cannot be said that Knox gave the Mississippi Supreme Court a fair opportunity to pass on Claim Five by

presenting that claim when the supreme court could not consider it consistent with state procedural law. *See id.* Because he did not fairly present it in *Knox III*, Knox has not properly exhausted Claim Five and may not obtain relief for it. *See Russell*, 68 F.4th at 269–70 (citing *Nickleson*, 803 F.3d at 752).

The Court should deny Claim Five without reviewing it. It should refuse to review Claim Five because Knox did not fairly present it to the state supreme court. And it should deny Claim Five because Knox cannot obtain federal relief for it.

## C.     The procedural default doctrine bars review of Claim Five.

The Court should deny Claim Five because the procedural default doctrine bars review of that claim and Knox does not try to excuse or overcome his defaults. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527; *Sones*, 61 F.3d at 416 (quoting *Coleman*, 501 U.S. at 735 n. 1); *see, e.g.*, *Spicer*, 2021 WL 4465828, at *3.*"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Id.* (quoting *Coleman*, 501 U.S. at 731–32). The adequate and independent state-law ground rule prevents state prisoners, like Knox, from "'avoid[ing] the exhaustion requirement

by defaulting their federal claims in state court.'" *See Sones*, 61 F.3d at 416, n. 8 (quoting *Coleman*, 501 U.S. at 732).

That said, the rule is not an absolute bar on federal review. Federal courts may review a habeas claim despite an adequate and independent state-law ground if: (a) failing to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; (b) the state procedural ground in question was not "firmly established and regularly followed" in state court, *Ford*, 498 U.S. at 423–24; or (c) the prisoner shows good cause for not following the state law and resulting prejudice, *Sykes*, 433 U.S. at 87. The burden of overcoming or excusing a procedural default that results from a state court's reliance on an adequate and independent state law ground is burden that state prisoners must carry. *See Sones*, 61 F.3d at 416–18.

In *Knox III*, Knox raised five PCR IAC claims. One was based on an alleged failure to raise a cumulative-error claim like the cumulative-error claim under Claim Five. The state supreme court expressly denied that claim based on its determination that the UPCCRA's statutory bars—including the UPCCRA's time, waiver, and successive-writ bars—precluded review. (Doc. 87-10 at 299). Now Knox presents a freestanding cumulative-error claim under Claim Five as one that entitles him to relief. (Doc. 85 at 241–43).

But Knox does not try to overcome or excuse the procedural defaults that bar federal review of Claim Five. He does not try to rebut the presumption that

Mississippi's time, waiver, or successive-writ bars are adequate and independent state-law grounds that preclude review of Claim Five. He does not try excuse any procedural default with a showing of good cause and actual prejudice. And he does not try to show federal review of Claim Five is necessary to prevent a fundamental miscarriage of justice. Thus, the Court should deny Claim Five because the procedural default doctrine bars review of that claim. Under Fifth Circuit precedent, Mississippi's time, waiver, and successive-writ bars are adequate and independent state procedural law grounds that will preclude federal review. *See Spicer*, 2021 WL 4465828, at *3 (citing *Johnson*, 176 F.3d at 815 n. 3, and *Moawad*, 143 F.3d at 947); *Stokes*, 123 F.3d at 860.

Alternatively, and aside from the adequate and independent state-law grounds rule, the procedural default doctrine bars review of Claim Five for another reason. Claim Five is, and has been, a technically exhausted claim since the decision in *Knox II* became final—when Knox had exhausted all his available state-court remedies. A claim that would be dismissed in state court for its procedural failures is "'technically exhausted because, in the habeas context, state-court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability.'" *Shinn*, 596 U.S. at 378 (quoting *Ngo*, 548 U.S. at 92–93). Federal courts must apply the procedural default doctrine to technically exhausted claims like Claim Five. *See id.* (quoting *Davila*, 582 U.S. at 528).

There is no question that the procedural default doctrine bars review of Claim Five. The state supreme court's decision to deny relief in *Knox III* relief for a state-law PCR IAC claim based on an alleged failure to raise a cumulative-error claim like Claim Five rests on three adequate and independent state-law grounds. And Claim Five became technically exhausted and procedurally defaulted years before Knox even tried to raise it in state court. Knox cannot obtain relief for Claim Five because his defaults preclude federal review. Claim Five should be denied.

### D. AEDPA's re-litigation bar prevents Knox from obtaining relief for Claim Five.

Even if none of the defenses asserted above applied (and all do), the Court should deny Claim Five because AEDPA's re-litigation bar at 28 U.S.C. § 2254(d) precludes Knox from relitigating Claim Five and obtaining relief for it. Knox does not address AEDPA's re-litigation bar under Claim Five. But even if he had, AEDPA's re-litigation bar would preclude Knox from obtaining federal review and relief for Claim Five. Knox does not identify any clearly established federal law that the Mississippi Supreme Court unreasonably applied in deciding Claim Five. Knox cannot overcome AEDPA's re-litigation bar because there is no clearly established federal law that recognizes violations of due process claims based on the aggregate effect of trial errors as a federal constitutional ground for relief.

In *Knox II*, the state supreme court reviewed Knox's first cumulative-error claim and rejected it on the merits. The Mississippi Supreme Court's *Knox II* opinion provides the only reasoned opinion for denying Knox relief for a cumulative-error claim. Under the look-through doctrine, the Court may review the state supreme court's decision when determining whether Claim Five entitles Knox to federal relief. That said, Knox cannot meet any exception to AEDPA's re-litigation bar at section 2254(d) because there is no clearly established federal law that squarely addresses the cumulative-error doctrine or its application in habeas cases brought by state prisoners under 28 U.S.C. 2254(d). And because he cannot meet one of the exceptions under section 2254(d), AEDPA's re-litigation bar precludes Knox from obtaining relief for Claim Five. For that reason, the Court should deny Claim Five.

## E.    Claim Five has no merit.

Alternatively, and along with the reasons above, the Court should deny Claim Five because the claim lacks merit. The Fifth Circuit precedent holds

> federal habeas corpus relief may only be granted for cumulative error in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The Court must also "review the record as

a whole to determine whether the errors more likely than not caused a suspect verdict." *Id.* at 1458.

A review of the entire record reveals that Knox cannot obtain relief for Claim Five because the cumulative error doctrine is inapplicable to the claims in the Second Amended Petition. First, there were no errors committed at Knox's trial. So there are no errors to cumulate in these proceedings. Second, the individual errors that Knox complains about involve violations of state law. Third, the claims in Knox's Second Amended Petition are procedurally barred. And Fourth, Knox fails to show any error "so infected the entire trial that the resulting conviction violates due process." *See id.* at 1454. Consequently, Knox cannot obtain relief for Claim Five. *See id.* at 1454.

For the reasons above, Knox cannot obtain relief for Claim Five in his Second Amended Petition. Claim Five is time-barred, unexhausted, procedurally defaulted, barred by section 2254(d)'s re-litigation bar, and otherwise without merit. Therefore, the Court should deny Claim Five.

## CONCLUSION

The Court should deny Knox's Second Amended Petition because the grounds in it are untimely, technically exhausted, subject to the adequate and independent state law grounds rule, subject to AEDPA's re-litigation bar, and without merit. So Respondents ask the Court to:

- *deny* Knox's grounds for relief and *dismiss* his Amended Petition for Writ of Habeas Corpus with prejudice;

- *deny* Knox's unwarranted and unspecified requests, including those for discovery and an evidentiary hearing; and

- *deny* Knox a Certificate of Appealability to appeal this matter to the United States Court of Appeals for the Fifth Circuit.

THIS, the 30th day of October, 2023.

Respectfully submitted,

LYNN FITCH
Attorney General of Mississippi

by: /s/  *Brad A. Smith*

BRAD A. SMITH
Special Assistant Attorney General
Miss. Bar No. 104321
Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3680
Email: Brad.Smith@ago.ms.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

This is to certify that, on this day, undersigned electronically filed this Answer in Opposition to Steve Knox's Second Amended Petition using the Court's ECF system, which sent notification to all counsel of record.

THIS, the 30th day of October, 2023.

by: /s/ *Brad A. Smith*

BRAD A. SMITH
Special Assistant Attorney General
Miss. Bar No. 104321
Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3680
Email: Brad.Smith@ago.ms.gov

*Counsel for Respondents*